UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

URMILA LAMA,

                  Plaintiff,

      vs.

JOGINDER ("SHAMMI") MALIK, NEERU
MALIK, KAMALJIT ("MINU") SINGH, and
HARSIMRAN SINGH,

              Defendants.

------------------------------------------------------------- X

Case No.  CV 13-2846 (LDW)(ARL)

---

## MEMORANDUM OF LAW IN SUPPORT OF THE SINGH DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

---

**GORDON & REES, LLP**
ATTORNEYS FOR DEFENDANTS
**KAMALJIT SINGH AND HARSIMRAN SINGH**
90 BROAD STREET, 23RD FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269.5500
FAX:  (212) 269.5505

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

LEGAL ARGUMENT ........................................................................................ 7

I.    THE STANDARD .................................................................................... 7

II.   PLAINTIFF'S FOURTH CLAIM FOR RELIEF UNDER THE FLSA AGAINST
      THE SINGH DEFENDANTS IS UNTIMELY, AS IT WAS FILED WELL AFTER
      THE LIMITATIONS PERIOD HAD EXPIRED. ............................................... 9

III.  PLAINTIFF'S FIFTH, SIXTH, SEVENTH AND EIGHTH CLAIMS FOR RELIEF
      UNDER THE NEW YORK LABOR LAW ARE UNTIMELY AS TO THE
      SINGH DEFENDANTS. ......................................................................... 11

IV.   PLAINTIFF'S NINTH CLAIM FOR RELIEF, CONVERSION, FAILS TO
      STATE A CLAIM, AND IN ANY EVENT IT IS BARRED BY THE
      APPLICABLE STATUTE OF LIMITATIONS. ............................................... 12

      A.    Plaintiff Has Failed To State A Claim Against The Singh Defendants For
            Conversion. ............................................................................. 12

      B.    Plaintiff's Claim For Conversion Is Barred By The Applicable Statute Of
            Limitations. ............................................................................. 14

V.    PLAINTIFF'S ELEVENTH CLAIM FOR RELIEF FOR UNJUST
      ENRICHMENT/*QUANTUM MERUIT* IS UNTIMELY. .................................... 15

VI.   PLAINTIFF'S AMENDED COMPLAINT DOES NOT PLEAD FACTS THAT
      WOULD WARRANT THE APPLICATION OF THE EQUITABLE TOLLING
      DOCTRINE AS A MATTER OF LAW ...................................................... 16

CONCLUSION ............................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP,*
 464 F.3d 328 (2d Cir. 2006) ................................................................................ 7

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)........................................................................... 7, 8, 13

*Baird v. Kessler,*
 172 F. Supp. 2d 1305 (E.D. Cal. 2001) ................................................. 10

*Barbagallo v. Marcum LLP,*
 820 F. Supp. 2d 429 (E.D.N.Y. 2011) ..................................................... 15

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007).............................................................................. 7, 8

*Brooklyn Savings Bank v. O'Neil,*
 324 U.S. 697 (1945)................................................................................ 10

*Chen v. St. Beat Sportswear, Inc.,*
 364 F. Supp. 2d 269 (E.D.N.Y. 2005) ..................................................... 11

*Cortec Indus., Inc. v. Sum Holding, L.P.,*
 949 F.2d 42 (2d Cir. 1991), *cert. denied*, 50 U.S. 960 (1992).................... 9

*D'Amico v. First Union Nat'l Bank,*
 728 N.Y.S.2d 146 (2001)....................................................................... 14

*Desilva v. N. Shore-Long Island Jewish Health Sys.,*
 No. 10-CV-1341 (JFB) (ETB), 2012 U.S. Dist. LEXIS 30597 (E.D.N.Y. 2012) .................. 13

*Ehrlich v. Howe,*
 848 F. Supp. 482 (S.D.N.Y. 1994) ......................................................... 13

*ESI, Inc. v. Coastal Power Prod. Co.,*
 995 F. Supp. 419 (S.D.N.Y. 1998) ......................................................... 12

*Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.,*
 288 F. Supp. 2d 473 (S.D.N.Y 2003) ..................................................... 13

*Godlewska v. HDA, Human Dev. Ass'n., Inc.,*
 No. 03-CV-3985 (DGT) (JMA), 2006 U.S. Dist. LEXIS 30519 (E.D.N.Y. 2006)............ 11

*Gustafson v. Bell Atl. Corp.,*
 171 F. Supp. 2d 311 (S.D.N.Y. 2001) ..................................................... 17

ii

*Herman v. RSR Sec. Servs.*,
  172 F.3d 132 (2d Cir. 1999) ........................................................................................ 9

*In re J.P. Jeanneret Associates*,
  769 F. Supp. 2d 340 (S.D.N.Y. 2011) ........................................................................ 9

*In re Rezulin Prods. Liab. Litig.*,
  390 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................... 15

*Johnson v. Nyack Hosp.*,
  86 F.3d 8 (2d Cir. 1996) ........................................................................................... 16

*Kaye v. Grossman*,
  202 F.3d 611 (2d Cir. 2000) ..................................................................................... 15

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*,
  558 F. Supp. 2d 378 (E.D.N.Y. 2008) ...................................................................... 15

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d. Cir. 2011) ...................................................................................... 8

*Learning Annex Holdings, LLC v. Rich Global, LLC*,
  860 F. Supp. 2d 237 (S.D.N.Y. 2012) ...................................................................... 15

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006) ................................................................................ 9

*Luther v. Z. Wilson, Inc.*,
  528 F. Supp. 1166 (S.D. Ohio 1981) ........................................................................ 10

*MacDonnell v. Buffalo Loan, Trust and Safe Deposit Co.*,
  193 N.Y. 92 (1908) .................................................................................................... 14

*Manliguez v. Joseph*,
  226 F. Supp. 2d 377 (E.D.N.Y. 2002) ................................................................ 12, 14

*Meese v. Miller*,
  436 N.Y.S.2d 496 (1981) ........................................................................................... 12

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
  723 F.3d 192 (2d Cir. 2013) ..................................................................................... 11

*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998), *cert. denied* 525 U.S. 1103 (1999) ................................. 9

*Ruston v. Town Board for the Town of Skaneateles*,
  610 F.3d 55 (2d Cir. 2010) ......................................................................................... 8

*Soler v. G & U, Inc.*,
  86 F.R.D. 524 (S.D.N.Y. 1980) ............................................................................ 9, 10

*St. John's Univ. v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) ..................................................................... 9

*United States v. Klinghoffer Bros. Realty Corp.*,
    285 F.2d 487 (2d Cir. 1960) ............................................................................... 10

*United States v. Kubrick*,
    444 U.S. 111 (1979)......................................................................................... 17

*Upadhyay v. Sethi*,
    No. 10 Civ. 8462 (NRB), 2012 U.S. Dist. LEXIS 107084 (S.D.N.Y. 2012) ........... 17

*Wallace v. Kato*,
    549 U.S. 384 (2007)......................................................................................... 17

*Zerilli-Edelglass v. New York City Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003) ................................................................................ 16

**Statutes**

29 United States Code
    section 255 .................................................................................................... 9

New York Labor Law
    Article 19, Sections 650, *et seq.*........................................................................ 11

New York Labor Law
    Section 191 ................................................................................................... 11

New York Labor Law
    Section 198(3)................................................................................................ 11

New York Labor Law
    Section 663(3)................................................................................................ 11

**Rules**

Federal Rules of Civil Procedure
    Rule 12................................................................................................. 1, 7, 9, 13

New York Civil Practice Laws and Rules
    Section 213 ................................................................................................... 15

New York Codes, Rules and Regulations
    Section 142.2.4 ............................................................................................... 11

## PRELIMINARY STATEMENT

In this case, the Plaintiff, Urmila Lama ("Plaintiff"), has filed a patchwork of time-barred state and federal claims against Defendants Kamaljit and Harsimran Singh (the "Singh Defendants"), and Joginder and Neeru Malik (the "Malik Defendants") (collectively, "Defendants").  Insofar as the Singh Defendants are concerned, Plaintiff's Amended Complaint alleges:  (i) minimum wage violations under the Fair Labor Standards Act ("FLSA") (Fourth Claim for Relief); (ii) minimum wage, overtime, spread of hours and frequency of payment violations under the New York State Labor Law and/or its regulations ("NYLL") (Fifth through Eighth Claims for Relief); (iii) conversion (Ninth Claim for Relief); and (iv) unjust enrichment/*quantum meruit* (Eleventh Claim for Relief).

All of these claims are based upon Plaintiff's assertion that she is owed money by the Singh Defendants for work she performed in their employ as a "housekeeper" or "domestic worker" between 1996 and 2000, during which time Plaintiff resided in the same residence as Defendants.  Aside from this period of time – which concluded more than 12 years before the instant litigation was filed – the only other contact Plaintiff allegedly had with the Singh Defendants was when she visited them briefly in their home in Arizona, once in 2002 and once in 2006.

Pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, the Singh Defendants now move to dismiss all claims asserted by Plaintiff against them.  First, all of these claims are barred by the applicable statutes of limitations.  The longest limitations period for any of Plaintiff's claims against the Singh Defendants is six years, and all contact and conduct alleged by Plaintiff with respect to the Singh Defendants terminated more than six years before she filed her Complaint.  Additionally, the Amended Complaint fails to assert any factual basis for conversion, because that claim against the Singh Defendants is based solely on their alleged

1

failure to pay Plaintiff wages she asserts she was owed, which does not satisfy the requirement that converted property must have first been specifically identified and segregated. Finally, to the extent Plaintiff seeks to circumvent the statutes of limitations using the doctrine of equitable tolling, that attempt must fail. The essence of Plaintiff's argument in this regard is that she was not aware of her legal rights; however, it has been long established that ignorance of the law is not a defense and will not toll the applicable limitations period. Accordingly, Plaintiff's Amended Complaint should be dismissed in its entirety as against the Singh Defendants.

## STATEMENT OF FACTS[1]

Plaintiff alleges that she began working for the Singh Defendants, as well as the Malik Defendants in Nepal and India prior to 1996. *See* Exhibit 2 (Amended Complaint) at ¶ 13.[2] According to the Amended Complaint, on or about September 22, 1996, Plaintiff moved to the United States with Defendants to work as a housekeeper for their families. *Id.* at ¶ 15. During her trip to the United States, Plaintiff was allegedly chaperoned by Mr. Pritam Singh ("Mr. Singh"),[3] who is not a party to this action. *Id.* at ¶ 16. According to Plaintiff, Mr. Singh filled out Plaintiff's immigration forms prior to her arrival and "maintained control of her passport throughout the Plaintiff's journey to the United States." *Id.* Upon their arrival in the United

---

[1]    When presented with a motion to dismiss for failure to state a cause of action, the facts alleged in the Complaint are presumed to be true by the court. For this reason (and only this reason), the factual recitation set forth herein will be based strictly upon the allegations set forth in the Amended Complaint. However, the Singh Defendants specifically reserves the right to challenge the veracity of these allegations in the future, should this litigation proceed past the instant motion.

[2]    All exhibits are annexed to the Declaration of Diane Krebs dated October 9, 2013. Please note that Plaintiff filed a complaint in this matter on or about May 14, 2013 (Ex. 1). She then filed an Amended Complaint as a matter of right on or about September 25, 2013 (Ex. 2), after the Court held a pre-motion conference and set a briefing schedule. However, the amendments merely provided a few additional factual allegations and did not change the nature or substance of any of the causes of action against the Singh Defendants. Accordingly, the Singh Defendants are proceeding with their motion pursuant to the original briefing order set by the Court.

[3]    Mr. Singh is the father of sisters Kamaljit Singh and Neeru Malik.

States, Mr. Singh alleged "gave Plaintiff's passport to the Malik Defendants, who held Ms. Lama's passport in their possession while she was in their employ. She did not regain possession of her passport until 2009." *Id.* at ¶ 17.   At no point in time were the Singh Defendants ever in possession of Plaintiff's passport – it was allegedly held by the Malik Defendants alone. *Id.*

Upon her arrival to the United States, Plaintiff resided with Defendants in a home located at 9 Broadfield Place, Glen Cove, NY 115420-2005 (the "Long Island House").  *Id.* at ¶ 18. Between September 1996 and some point in 2000, Plaintiff's alleged duties consisted of cooking, cleaning, laundry, and childcare for the Malik Defendants' children and the Singh Defendants' daughter (born in 1997). *Id.* at ¶¶ 21-23.  By no later than 1997, after Kamaljit Singh returned to work following the birth of her daughter, Plaintiff alleges she was left alone in the home with the children during the day to attend to these duties. *Id.* at ¶ 22.   Plaintiff alleges that she was employed by all Defendants during this time period. *Id.* at ¶¶ 8-11.

According to the Amended Complaint, however, the Singh Defendants moved out of the Long Island House in or around 2000.  *Id.* at ¶ ¶ 24-25.  Notably, Plaintiff does not allege that either of the Singh Defendants made any representation to Plaintiff that she was their "employee" during the window within which they both resided in the Long Island Home (1996-2000), or that Plaintiff would be compensated by the Singh Defendants for any activity performed during this time frame.  In fact, Plaintiff does not even allege that she even raised, discussed or otherwise communicated with the Singh Defendants about her employment situation before, during or after the time period in which they co-inhabited the Long Island House.  Rather, according to the express allegations of the Amended Complaint, all communications regarding the terms and conditions of Plaintiff's employment were between Plaintiff and one or both of the Malik Defendants. *Id.* at ¶¶ 45, 48-50.

3

After the Singh Defendants moved out of the Long Island House in 2000, Plaintiff continued to reside with the Malik Defendants, where she alleges she "continued to cook, clean, do laundry, and provide childcare for the Malik Defendants and their children." *Id.* at ¶ 24. For the 13-year period between the Singh's departure from the Long Island Home in 2000 and the date on which the instant litigation was commenced (May 14, 2013), the only other contact Plaintiff allegedly had with the Singh Defendants was on two out-of-state trips she took with the Malik Defendants to visit the Singh Defendants at their residence in Arizona. *Id.* at ¶¶ 40-42. The first trip occurred in 2002, while the second took place in 2006. *Id.*

During her first visit to the Singh Defendants' home in Arizona in 2002, Plaintiff alleges that her "schedule and duties remained virtually unchanged from her schedule and duties in New York," although she acknowledges that the Singh Defendants already had a housekeeper performing those same job duties. *Id.* at ¶ 41. However, Plaintiff does not allege that the Singh Defendants expressed or implied to Plaintiff that she was their employee for the duration of her 2002 visit to their home in Arizona. *Id.* at ¶¶ 40-42. Rather, Plaintiff merely alleges that she took a trip with the Malik Defendants to visit two individual with whom she shared a residence for five years, and then, upon her arrival, she "made breakfast for the children, prepared tea for the Malik and Singh Defendants and their parents, took care of the Malik Defendants' children, and assisted the Singh Defendants' housekeeper in her cooking and cleaning duties." *Id.* at ¶ 41. Notably, Plaintiff does not allege that she requested that the Singh Defendants compensate her for pitching in around the house during her trip to Arizona. *Id.* at ¶¶ 40-42.

Following her first trip to Arizona in 2002, Plaintiff is not alleged to have had any further contact with either of the Singh Defendants until 2006. *Id.* at ¶¶ 40-42. During this four year window, Plaintiff alleges that she was employed exclusively by the Malik Defendants. *Id.*

Plaintiff's second and final visit to the Singh Defendants' home in Arizona allegedly occurred in 2006, when the Singh Defendants had just welcomed the birth of their twin baby boys. *Id.* at ¶ 42. According to Plaintiff, she remained in Arizona for a grand total of four weeks, during which she allegedly undertook household cleaning and cooking for four adults and three children." *Id.* As was the case with her first trip to Arizona, Plaintiff does not allege that she requested that the Singh Defendants compensate her for any of the alleged work she performed during her four week stay in Arizona in 2006. *Id.* at ¶¶ 40-42.

Following her trip to the Singhs' Arizona residence in 2006, no further communication between Plaintiff and the Singh Defendants is even alleged to have taken place. Thus, the last day on which Plaintiff is even alleged to have performed any work for, or have any communication with, the Singh Defendants was 2006. *Id.* The Amended Complaint does not allege that either of the Singh Defendants made any representations to Plaintiff – before, during or after her 2006 trip to Arizona – regarding her compensation for any work performed during the time period in which Plaintiff alleges she was employed by the Singh Defendants.

Following her visit with the Singh Defendants in 2006, Plaintiff alleges she continued to be employed by the Malik Defendants. During this time, Plaintiff alleges she either "raised the issue of her compensation with Defendant Shammi Malik," *id.* at ¶ 50, or was informed by one of the Malik Defendants that she would be receiving differing amounts of compensation for her services. *Id.* at ¶¶ 45, 48-50.

Nevertheless, according to the express allegations of the Amended Complaint, in August 2008, while on a trip in Nepal with the Malik Defendants, Plaintiff "asked the Malik Defendants for compensation for her services. The Malik Defendants told [Plaintiff] she would be paid one million Indian rupees and explained that the payment was to cover all of Ms. Lama's unpaid

earnings. As stated above, this sum, in addition to the sporadic payments her family received during the 12-year period, amounted to approximately $0.41 per hour." *Id.* at ¶¶ 60-61.

According to Plaintiff, following this conversation in August 2008, Plaintiff "felt mistreated and taken advantage of by Defendants." *Id.* at ¶ 62. Yet, the Amended Complaint does not allege that Plaintiff took a single action between August 2008 and July 2012 to assert her rights against what she perceived to be "mistreatment" concerning her compensation, or even inquire as to what rights she had. Plaintiff did not file a lawsuit, contact any state or federal regulatory body, or even pick up the telephone and contact an attorney upon allegedly being informed by the Malik Defendants that she would only be compensated at a rate of $0.41 per hour for all work performed between 1996 and August 2008. Rather, according to the express allegations of the Amended Complaint, Plaintiff simply quit her job and "refused to return to the United States." *Id.* at ¶ 62. She never again performed any work for Defendants. *Id.* at ¶¶ 62, 64.

Following this alleged encounter in August 2008, Plaintiff claims that "[i]n January or February 2009, approximately six months after her conversation with the Malik Defendants and Ms. Lama's decision to leave their employ, Ms. Lama received a check for the payment of one million Indian rupees, as well as her green card and passport." *Id.* at ¶ 63. Thus, according to her own express allegations, the last payment Plaintiff ever received as compensation for work performed between 1996 and August 2008 was the exact amount the Malik Defendants allegedly told her she would receive for work performed and was received by Plaintiff in or around January or February 2009. *Id.* at ¶¶ 61-63.

Finally, Plaintiff alleges that, "[i]n the fall of 2009," while going through the process of applying for a social security card, "she learned, for the first time, that her green card had in fact been issued in 2006, not in 2009 as the Malik Defendants had previously represented." *Id.* ¶ 66.

However, according to Plaintiff, upon discovering that she had allegedly been lied to by the Malik Defendants about her green card, Plaintiff did not perform a single action designed to assert a claim, protect her rights or even investigate what her legal options were.   Rather, following the allegation regarding Plaintiff's remarkable and dramatic "discovery" of the Malik Defendants alleged deceitful conduct, the Amended Complaint simply fast forwards three full years – *i.e.,* the duration of the extended statute of limitations on a FLSA claim and a conversion claim – to July of 2012, at which point Plaintiff allegedly "met with an attorney" and learned about "her right to seek unpaid wages." *Id.* at ¶ 66.

On September 9, 2012, Plaintiff allegedly filed a complaint with the New York State Department of Labor. *Id.* at ¶ 67.  However, Plaintiff did not file the instant lawsuit until May 29, 2013 – almost seven years after her last interaction with the Singh Defendants and almost five years since she allegedly quit her employment with the Malik Defendants upon concluding that she felt "mistreated and taken advantage of" when she learned she was going to only be compensated at a rate of approximately "$ 0.41 per hour" for the entirety of her employment with Defendants. *Id.* at ¶¶ 42, 61-63.

## LEGAL ARGUMENT

### I.    THE STANDARD

On a Rule 12(b)(6) motion, the Court must accept as true the factual allegations in the Complaint and draw all inferences in Plaintiff's favor. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  In order to withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

When presented with a motion to dismiss, the court is to undertake a two-step analysis in order to determine whether the complaint in question satisfies the "plausibility" standard. First, the court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of the truth." *Iqbal,* 556 U.S. at 678. Second, once the complaint has been stripped of its conclusory assertions, the court must determine if the remaining allegations "plausibly give rise to an entitlement to relief." *Id.* at 679.

Under this two-pronged approach, "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Iqbal*, 556 U.S. at 677 (citations omitted) (alterations in original). "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' … Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement … Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 677-78 (internal citations omitted). "[A]llegations must be sufficient to support necessary legal conclusions." *Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678-80).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d. Cir. 2011) (citation omitted). In that regard, plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render [the] plaintiff's inferences unreasonable." *Id.*

In deciding whether Plaintiff has alleged sufficient facts to "nudge[ ] [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, a court's review is generally confined to "the allegations contained within the four corners of [the] complaint." *Pani v.*

*Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir. 1998), *cert. denied,* 525 U.S. 1103 (1999).   However, a plaintiff cannot avoid a Rule 12(b)(6) dismissal by omitting from his Complaint facts that would doom his claims.   "[I]n deciding a motion to dismiss, a court may consider ... documents that the plaintiff either possessed or knew about and relied upon in bringing the suit."   *In re J.P. Jeanneret Associates,* 769 F. Supp. 2d 340, 354 (S.D.N.Y. 2011) (citation omitted).   "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim – and which they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on the motion."   *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 44 (2d Cir. 1991), *cert. denied,* 50 U.S. 960 (1992).

"To establish that the statute of limitations bars Plaintiff's claims on a motion to dismiss, Defendants must establish that Plaintiff's own allegations of fact clearly establish that its claims are untimely."   *St. John's Univ. v. Bolton,* 757 F. Supp. 2d 144 (E.D.N.Y. 2010).   When this standard is applied in the facts at hand, it becomes readily apparent that Plaintiff's claims against Singh Defendants must be dismissed.

## II.   PLAINTIFF'S FOURTH CLAIM FOR RELIEF UNDER THE FLSA AGAINST THE SINGH DEFENDANTS IS UNTIMELY, AS IT WAS FILED WELL AFTER THE LIMITATIONS PERIOD HAD EXPIRED.

Generally, the statute of limitations that governs FLSA claims is two years, except in cases of "willful violations," in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a); *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 198 (S.D.N.Y. 2006); *Herman v. RSR Sec. Servs.,* 172 F.3d 132, 141 (2d Cir. 1999).   "[F]or the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period."   *Lee,* 236 F.R.D. at 198 (citations omitted); *see also Soler v. G & U, Inc.,* 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (same).   Thus, where the plaintiff in a FLSA case is seeking to recover unpaid wages for work already performed, the latest possible date on

which the plaintiff could file her lawsuit would be three years from "the regular pay day[4] immediately following the work period during which the services were rendered and for which additional compensation is claimed." *Soler*, 86 F.R.D. at 528.

In this case, Plaintiff's FLSA claim against the Singh Defendants is undoubtedly time-barred. The Amended Complaint alleges that the Singh Defendants were Plaintiff's "employer" for purposes of the FLSA during three specifically-pled time frames: (1) September 1996 through 2000, when the Singh Defendants resided at the Long Island Home with Plaintiff and the Malik Defendants; (2) the brief period of time in 2002 when Plaintiff allegedly visited the Singh Defendants at their Arizona residence; and (2) a four week period of time in 2006 during which Plaintiff allegedly stayed with the Singh Defendants at their Arizona residence. Ex. 1 at ¶¶ 10-11, 40-42. According to her own Amended Complaint, Plaintiff had no further contact with the Singh Defendants following her 2006 trip to Arizona. *Id.* Thus, even if Plaintiff could be considered an employee of the Singh Defendants for purposes of her FLSA claim (a notion the Singh Defendants firmly dispute), her own pleading states that the latest period of time within which Plaintiff's "service were rendered [to the Singh Defendants] and for which additional compensation is claimed," *Soler*, 86 F.R.D. at 528, took place in 2006. Even if this trip concluded on December 31, 2006, Plaintiff's FLSA claim would be far outside either of the

---

4       Under the FLSA, "[t]he term 'pay period' refers to the regular period for which employers pay wages." *Baird v. Kessler*, 172 F. Supp. 2d 1305, 1307 (E.D. Cal. 2001). Generally, in the absence of state law to the contrary, "an employer and an employee are free to contract for any regular pay period." *Luther v. Z. Wilson, Inc.*, 528 F. Supp. 1166, 1173-74 (S.D. Ohio 1981) (citing Wage and Hour Opinion Letter No. 63 (November 30, 1961)). However, the policy underlying the FLSA requires that payment for work performed be "prompt." *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960). For this reason, although courts have approved weekly, semi-monthly, and monthly payroll periods as being consistent with the FLSA, courts have repeatedly rejected the concept of an "annual pay period" as inconsistent with the "Act's basic policy that minimum wage payments should be regularly and promptly made." *Luther*, 528 F. Supp. at 1174 (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945); *see also Klinghoffer Brothers*, 285 F.2d at 491 (agreement that payment would be made "at some indefinite future date" was not a permissible "pay period" under the FLSA).

statute of limitations applicable to FLSA claims, since her original Complaint in this matter was not filed until May 14, 2013 – more than six years later.  Consequently, Plaintiff's FLSA claim against the Singh Defendants must be dismissed as untimely.

Plaintiff's FLSA claim is time-barred, having been filed more than six years too late. Consequently, the Singh Defendants respectfully request that this Court dismiss Plaintiff's Fourth Claim for Relief.

**III.    PLAINTIFF'S FIFTH, SIXTH, SEVENTH AND EIGHTH CLAIMS FOR RELIEF UNDER THE NEW YORK LABOR LAW ARE UNTIMELY AS TO THE SINGH DEFENDANTS.**

Claims under New York Labor Law ("NYLL"), Article 19, §§ 650, *et seq.*, are subject to a six year statute of limitations. *See, e.g.*, N.Y. Lab. Law §§ 198(3), 663(3); *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 277 (E.D.N.Y. 2005); *Godlewska v. HDA, Human Dev. Ass'n., Inc.*, No. 03-CV-3985 (DGT) (JMA), 2006 U.S. Dist. LEXIS 30519, *12 (E.D.N.Y. 2006).  Like their federal counterparts, NYLL claims accrue "on the next regular payday following the work period when services are rendered." *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 198 (2d Cir. 2013) (citations omitted).

Plaintiff's Fifth, Sixth, Seventh and Eighth Claims for Relief assert various causes of action against the Defendants under the NYLL.  Ex. 1 at ¶¶ 101-29.[5]  Insofar as these claims pertain to the Singh Defendants, they all are premised upon the work Plaintiff allegedly performed for their benefit between 1996 and 2000, and then during the two brief trips to the

---

[5]     Specifically, Plaintiff's Fifth Claim for Relief alleges a minimum wage violation under the NYLL; her Sixth Claim for Relief is for unpaid overtime compensation under the NYLL; her Seventh Claim for Relief asserts a "spread of hours" claim under the 12 N.Y.C.R.R. § 142.2.4; and her Eighth Claim for Relief alleges that Defendants failed to pay Plaintiff on a weekly basis pursuant to NYLL § 191.

Singh Defendants' home in Arizona in 2002 and 2006.[6]  As all of these claims accrued no later than the conclusion of Plaintiff's visit to the Singh Defendants' Arizona residence in 2006, they fall outside the limitations period, which begins on or about May 14, 2007 (*i.e.*, six years prior to May 14, 2013).  Consequently, all of these claims against the Singh Defendants must be dismissed as untimely.

IV.     **PLAINTIFF'S NINTH CLAIM FOR RELIEF, CONVERSION, FAILS TO STATE A CLAIM, AND IN ANY EVENT IT IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

A.     <u>**Plaintiff Has Failed To State A Claim Against The Singh Defendants For Conversion.**</u>

"Conversion is defined as 'any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'"  *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 387 (E.D.N.Y. 2002) (quoting *Meese v. Miller*, 436 N.Y.S.2d 496, 500 (1981)).  In order to state a cause of action for conversion, a plaintiff must have ownership, possession or control of the property before it is converted.  *See, e.g., ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998).

Additionally, where the property in question is money, in order to state a valid cause of action for conversion, "'the money must be described or identified in the same as a specific chattel.  In other words, the money must be specifically identified and segregated.'"  *Desilva v. N. Shore-Long Island Jewish Health Sys.*, No. 10-CV-1341 (JFB) (ETB), 2012 U.S. Dist. LEXIS

---

[6]     Plaintiff does not specify the exact dates of her last alleged trip to Arizona.  In addition, Plaintiff's Amended Complaint demonstrates that the last alleged employment she held with the Singh Defendants within the State of New York was sometime in the year 2000, and all other alleged work occurred outside of New York, with the Singh Defendants residing outside of New York.  Nevertheless, solely for the purposes of the instant motion, the Singh Defendants will proceed on the assumption that Plaintiff's alleged work for the Singh Defendants in 2002 and 2006 may form the foundation of a NYLL claim, and moreover that Plaintiff's last Arizona trip concluded on December 31, 2006 – the latest possible date according to Plaintiff's Amended Complaint.

30597, at *34-36 (E.D.N.Y. 2012) (quoting *Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 480 (S.D.N.Y 2003)).  Thus, a claim for conversion should be dismissed under Rule 12(b)(6) where the plaintiff has "failed to specifically identify the tangible funds that were converted, but instead seek[s] to enforce an obligation to pay money owed in the form of wages owed." *Desilva*, 2012 U.S. Dist. LEXIS 30597, at *36 (citations omitted).  It is well-settled that "[a]n action of conversion does not lie to enforce a mere obligation to pay money." *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (citation omitted).

In this case, Plaintiff does not "specifically identify" in her Amended Complaint any "tangible funds" that were segregated and/or allegedly converted by the Singh Defendants.  Ex. 1 at ¶¶ 135-39.  Instead, Plaintiff appears to have literally cut and pasted the elements of the claim into her Amended Complaint without any supporting factual allegations whatsoever.  She merely alleges that: (a) "The Malik [and] Singh Defendants otherwise maintained exclusive control of the funds earned by [Plaintiff] through her labor"; and (b) "[t]he Malik and Singh Defendants exercised dominion over identifiable funds belonging to [Plaintiff], in violation of her rights to those funds." *Id.* at ¶¶136-37.  Notably, the Amended Complaint does not actually identify the funds to which these allegations are referring, nor is there any indication that such unidentified funds were ever segregated. *Id.*  To the contrary, Plaintiff makes perfectly clear that the funds to which she is referring are the wages she claims she is owed.

Plaintiff cannot satisfy a requirement that she "specifically identify the tangible funds that were converted," *Desilva*, 2012 U.S. Dist. LEXIS 30597, at *36, by merely reciting comparable language by rote and in conclusory form. *See, e.g., Iqbal*, 556 U.S. at 677-78 ("a pleading that offers … 'a formulaic recitation of the elements of a cause of action will not do.' … Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice") (internal citations omitted). Yet, that is precisely what the Plaintiff has attempted to do in this matter in a not-so-subtle attempt to assert a claim for conversion based upon the unpaid wages she claims to have been owed as a result of her employment with Defendants – exactly the sort of claim that has already been expressly rejected by the courts.

Stated simply, as a matter of settled law, Plaintiff's conclusory allegations are insufficient to state a claim for conversion, and the facts she asserts contradict the elements of such a claim. For this reason, Plaintiff's Ninth Claim for Relief against the Singh Defendants must be dismissed for failure to state a claim upon which relief can be granted.

**B.** **Plaintiff's Claim For Conversion Is Barred By The Applicable Statute Of Limitations.**

Based on the clear precedent stated above, this Court need not proceed any further in its examination of Plaintiff's conversion claim. Nevertheless, were this Court, in the exercise of caution, to analyze the claim as if the property at issue was identifiable and segregated, it would still have to be dismissed as untimely.

In New York, claims for conversion are subject to a three-year statute of limitations. *Manliguez*, 226 F. Supp. 2d at 387. "In situations where the defendant's initial possession was lawful, the three-year statute of limitations begins to run when the true owner becomes aware that the possessor's actions are hostile to her rights." *Id.* (citing *D'Amico v. First Union Nat'l Bank*, 728 N.Y.S.2d 146, 151 (2001)). "Such hostility may be demonstrated by the true owner's demand for the return of her property and the possessor's refusal to return it." *Manliguez*, 226 F. Supp. 2d at 387 (citing *MacDonnell v. Buffalo Loan, Trust and Safe Deposit Co.*, 193 N.Y. 92, 101 (1908)).

In this case, assuming, *arguendo*, that Plaintiff has otherwise stated a claim for conversion against the Singh Defendants, that claim would have accrued on either: (a) the last day on which Plaintiff resided with the Singh Defendants in Arizona and was not compensated

for her alleged services, Ex. 1 at ¶ 42; or (b) the day in August 2008 on which Plaintiff requested that the Malik provide her with compensation for her past services, and was specifically informed that she would be paid one million Indian rupees, and no more. *Id.* at ¶¶ 60-63. Seeing that the Complaint in this case was not filed until May 14, 2013, Plaintiff's claim for conversion against the Singh Defendants is barred by the above-referenced statute of limitation. Consequently, the Ninth Claim for Relief against the Singh Defendants must be dismissed.

## V.   PLAINTIFF'S ELEVENTH CLAIM FOR RELIEF FOR UNJUST ENRICHMENT/*QUANTUM MERUIT* IS UNTIMELY.

Claims for unjust enrichment are governed by the law of the State in which the action arises. *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 341-44 (S.D.N.Y. 2005). "'To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution.'" *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 443 (E.D.N.Y. 2011) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

In New York, claims for unjust enrichment (a.k.a., *"quantum meruit"*[7]) are subject to a six-year statute of limitations, N.Y. C.P.L.R. § 213, which "begins to run when a defendant accepts the benefits bestowed upon him ... or upon occurrence of the wrongful act giving rise to the duty of restitution." *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 558 F. Supp. 2d 378, 409 (E.D.N.Y. 2008) (internal citations omitted).

---

[7]   When a plaintiff brings both a claim for unjust enrichment and quantum meruit seeking restitution or payment for services rendered, the courts have analyzed such claims as a single cause of action. *See, e.g., Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F. Supp. 2d 237 (S.D.N.Y. 2012) ("The issue here, however, is whether quantum meruit and unjust enrichment are distinct grounds for recovery in the context of a claim for services rendered in the absence of an enforceable contract.  Unless and until binding case law holds otherwise, I conclude that they are not distinct grounds for recovery. ... [Where] both theories seek to recover the reasonable value of the services rendered, ... [the] court may analyze quantum meruit and unjust enrichment together as a single quasi contract claim, or as a single claim for unjust enrichment.") (internal & external citations omitted).

In this case, for the same reasons that Plaintiff's claims under the NYLL are untimely, so too is her claim against the Singh Defendants for unjust enrichment, regardless of whether the statute of limitations accrued on the date on which the Singh Defendants allegedly "accepted the benefits" bestowed upon them by Plaintiff or upon the "occurrence of the wrongful act giving rise to restitution." Both result in an accrual of 2006 at the latest, since no further contact is alleged between Plaintiff and the Singh Defendants following her second trip to Arizona, and that is when Plaintiff claims she was not timely or properly compensated by the Singh Defendants for the alleged duties she performed for them. In either scenario, the statute of limitations began to run more than six years before the Complaint was filed on May 14, 2013. As such, the Court should dismiss Plaintiff's unjust enrichment/*quantum meruit* claim against the Singh Defendants as untimely.

## VI. PLAINTIFF'S AMENDED COMPLAINT DOES NOT PLEAD FACTS THAT WOULD WARRANT THE APPLICATION OF THE EQUITABLE TOLLING DOCTRINE AS A MATTER OF LAW

Based on Plaintiff's July 12, 2013 letter to the Court in connection with the Singh Defendants' request for a pre-motion to dismiss conference, the Singh Defendants anticipate Plaintiff's sole argument in opposition to the statute of limitations barrier for each cause of action will be that the doctrine of "equitable tolling" should apply. However, as explained below, Plaintiff has not demonstrated that this rarely-applied doctrine saves her claim.

In extreme cases, the doctrine of "equitable tolling" may be invoked by the court to extend the applicable statute of limitations beyond the time of expiration "as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). This doctrine, however, is an extreme remedy reserved for only those "rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003). It is

16

"not a cure-all for an entirely common state of affairs." *Wallace v. Kato,* 549 U.S. 384, 393 (2007).

Importantly, equitable tolling is not available in those cases where the Plaintiff's failure to file a complaint within the subject statute of limitations is based upon his/her own ignorance of the law, as opposed to ignorance of the facts underlying his/her claim. *Upadhyay v. Sethi*, No. 10 Civ. 8462 (NRB), 2012 U.S. Dist. LEXIS 107084, at *4 (S.D.N.Y. 2012) (where plaintiff has acquired or reasonably should have acquired "actual knowledge of the *facts* that comprise her cause of action," the doctrine of equitable estoppel is inapplicable) (citing *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001)). The reasoning behind the distinction between a plaintiff's "ignorance of the law" and his/her "ignorance of the facts" in the context of a statute of limitations analysis was succinctly articulated in *United States v. Kubrick*, 444 U.S. 111 (1979):

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

*Id.* at 122.

In this case, Plaintiff's entire argument regarding the equitable tolling doctrine is premised upon her own ignorance of the law. Plaintiff does not allege that she took any action to inquire about her legal rights at any time between September 2000 and July of 2012, notwithstanding the fact that she was allegedly informed "[o]n several occasions" by the Malik Defendants that she would be compensated at "the amounts ... far below a legal wage." Ex. 1 at ¶ 49. As the Supreme Court stated in *Kubrick*, when a plaintiff is in possession of the facts that

form the basis of his/her claim, the law does not permit the tolling of the statute of limitations, because "[t]here are others who can tell [her] if [s]he has been wronged, and [s]he need only ask." *Id.* The doctrine of equitable tolling was designed to avoid the harsh result of a rigid application of a statute of limitations to a plaintiff who is prevented from discovering the underlying facts of his/her claim due to "extraordinary circumstances" – it was not intended as a tool by which parties could escape their legal obligation to file a claim within the applicable statute of limitations by simply taking no action to discover their legal rights. *Id.*

Even if the allegations asserted in the Amended Complaint were true, the doctrine of equitable tolling would not save Plaintiff's otherwise time-barred claims against the Singh Defendants. Plaintiff's sole foundation is ignorance of the law, which is simply not a defense. Accordingly, this Court should grant the Singh Defendants' motion to dismiss in its entirety.[8]

---

[8] For the sake of judicial economy and to avoid unnecessary repetition, any arguments contained in the Malik Defendants' motion to dismiss papers that are applicable to the Singh Defendants as well are incorporated herein by reference.

18

## CONCLUSION

For the foregoing reasons, this Court should grant the Singh Defendants' Motion to Dismiss Plaintiff's claims, dismissing with prejudice all causes of action asserted against the Singh Defendants and for such further relief as this Court deems just and proper.

Dated: New York, New York
      October 9, 2013

                    Respectfully Submitted,

                    GORDON & REES, LLP

          By:    /s/ *Diane Krebs*
                    Diane Krebs, Esq. (DK 8280)
                    Attorneys for the Singh Defendants
                    90 Broad Street, 23rd Floor
                    New York, New York 10004
                    Phone: (212) 269-5500