UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

URMILA LAMA,

               Plaintiff,

      vs.

JOGINDER ("SHAMMI") MALIK, NEERU
MALIK, KAMALJIT ("MINU") SINGH, and
HARSIMRAN SINGH,

             Defendants.

------------------------------------------------------------X

Case No.  CV 13-2846 (LDW)(ARL)

**NOTICE OF THE SINGH
DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO
RULE 12(b)(6)**

**PLEASE TAKE NOTICE** that, in accordance with the electronic order of the Honorable Leonard D. Wexler dated September 4, 2013, the undersigned attorneys for Defendants Kamaljit Singh and Harsimran Singh (collectively, "Singh Defendants") shall move before the Honorable Leonard D. Wexler, U.S.D.J., of the United States District Court for the Eastern District of New York, Long Island Courthouse, 944 Federal Plaza, Central Islip, New York, 11722, for an Order dismissing Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure with prejudice.

**PLEASE TAKE FURTHER NOTICE** that the Singh Defendants shall rely on the enclosed Memorandum of Law and Declaration of Counsel, with exhibits, in support of this Motion.

**PLEASE TAKE FURTHER NOTICE** that opposition papers, if any, are due on or before October 30, 2013, and reply papers, if any, are due on November 9, 2013 (which, by operation of Fed. R. Civ. P. 6(a)(1)(C), becomes November 12, 2013).

**PLEASE TAKE FURTHER NOTICE** that the Singh Defendants respectfully request oral argument on this Motion.

GORDON & REES, LLP

By: ___/s/ Diane Krebs___
        Diane Krebs, Esq. (DK 8280)
        Attorneys for the Singh Defendants
        90 Broad Street, 23rd Floor
        New York, New York 10004
        Phone: (212) 269-5500

Dated: New York, New York
       October 9, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

URMILA LAMA,

              Plaintiff,

      vs.

JOGINDER ("SHAMMI") MALIK, NEERU
MALIK, KAMALJIT ("MINU") SINGH, and
HARSIMRAN SINGH,

              Defendants.

-------------------------------------------------------------- X

Case No.  CV 13-2846 (LDW)(ARL)

**DECLARATION OF DIANE KREBS**

     **DIANE KREBS**, an attorney duly admitted to practice law before the Courts of the State of New York, and before the United States District Court for the Eastern District of New York, hereby declares that the following statements are true under the penalties of perjury:

     1.     I am a Partner with Gordon & Rees LLP, attorneys for Defendants Kamaljit Singh and Harsimran Singh (collectively, "Singh Defendants"), and am fully familiar with the facts stated herein. I respectfully submit this Declaration in support of the Singh Defendants' Motion to Dismiss all claims asserted in the Amended Complaint against the Singh Defendants pursuant to Rule 12(6)(b) of the Federal Rules of Civil Procedure.

     2.     Attached as Exhibit 1 is a true and correct copy of Plaintiff's Complaint, dated May 14, 2013.

     3.     Attached as Exhibit 2 is a true and correct copy of Plaintiff's Amended Complaint, dated September 25, 2013.

4.      I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: New York, New York
       October 9, 2013


                                        /s/ Diane Krebs
                                        Diane Krebs, Esq. (DK 8280)

# Exhibit 1

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

CV 13        2846

WEXLER, J

LINDSAY, M.J

| | |
|---|---|
| Umila Lama | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| JOGINDER ("SHAMMI") MALIK, NEERU MALIK, KAMALJIT ("MINU") SINGH, and HARSIMRAN SINGH | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Kamaljit ("Minu") Singh
21655 N. 53rd Drive
Glendale, AZ 85308-6299

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Lori A. Martin
Wilmer Cutler Pickering Hale and Dorr LLP
7 WTC, 250 Greenwich Street
New York, NY 10007

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER

*CLERK OF COURT*

Date: __MAY 14 2013__

_____
*Signature of Clerk or Deputy Clerk*

05/15/2013 20:28 FAX  6235053188          Meenu & Simran                    ☒0002/0013

COPY

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| URMILA LAMA, *Plaintiff*, | CV 13  WEXLER 2846 |
| JOGINDER ("SHAMMI") MALIK, NEERU MALIK, KAMALJIT ("MINU") SINGH, and HARSIMRAN SINGH, *Defendants.* | Civil Action No. LINDSAY M. PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

Plaintiff Urmila Lama brings this action against Defendants Joginder ("Shammi") Malik and Neeru Malik ("Malik Defendants") and Kamaljit ("Minu") Singh and Harsimran Singh ("Singh Defendants") (collectively, "Defendants"), and alleges as follows:

### I.    INTRODUCTION

1.    This is an action for damages brought by Urmila Lama ("Ms. Lama" or "Plaintiff"), who devoted nearly 12 years of her life as a domestic worker for Defendants and their family members in the United States for little to no compensation. Ms. Lama asks this Court to vindicate her rights to fair and reasonable remuneration under the Fair Labor Standards Act ("FLSA"), the New York Labor Law, and the common law of the State of New York.

2.    Ms. Lama also seeks compensation under the Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008 for additional injuries suffered while employed by

Defendants.  Defendants underpaid her and coerced her to remain in their employ by isolating her, withholding her passport and green card, and concealing the issuance of her green card for approximately three years.

3.      Ms. Lama further seeks a determination by this Court that her claims against Defendant Shammi Malik were not discharged by Mr. Malik's 2009 bankruptcy.

## II.      JURISDICTION AND VENUE

4.      This Court has original jurisdiction pursuant to 18 U.S.C. § 1595 (the TVPRA of 2008), 29 U.S.C. § 216(b) (the Fair Labor Standards Act), and 28 U.S.C. § 1334(b).

5.      This Court has supplemental jurisdiction over the related state law claims under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367.  Supplemental jurisdiction over these claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (1) substantially all of the events giving rise to the claims in the Complaint occurred in the Eastern District of New York, and (2) the Malik Defendants reside in the Eastern District of New York.

## III.     PARTIES

7.      Plaintiff worked for Defendants and resided in their home at 9 Broadfield Place, Glen Cove, NY 11542-2005 between 1996 and 2008.  Plaintiff left the United States in or around August 2008.  She has since returned to the United States and now lives in Queens, New York.

8.      Defendant Shammi Malik has resided at 9 Broadfield Place, Glen Cove, NY 11542-2005 since February 1989.  Defendant Shammi Malik employed Plaintiff in the State of

2

New York from approximately September 1996 until sometime in or around August 2008. At all relevant times, Defendant Shammi Malik was Ms. Lama's employer pursuant to the FLSA, 29 U.S.C, §§ 201 *et seq.*, and the New York Labor Law, § 652.

9.      Defendant Neeru Malik, wife of Defendant Shammi Malik, has resided at 9 Broadfield Place, Glen Cove, NY 11542-2005 since approximately February 1989. Defendant Neeru Malik employed Plaintiff in the State of New York from approximately September 1996 until approximately August 2008.

10.     Defendant Kamaljit Singh (also known as "Minu"); sister of Defendant Neeru Malik, currently resides at 21655 N. 53rd Drive, Glendale, AZ 85308-6299. Defendant Minu Singh lived at 9 Broadfield Place, Glen Cove, NY 11542-2005 from 1996 until in or around 2000. During this time and during other periods during 2002 and 2006, Defendant Minu Singh was Plaintiff's employer pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law, § 652.

11.     Defendant Harsimran Singh, husband of Defendant Minu Singh, currently resides at 21655 N. 53rd Drive, Glendale, AZ 85308-6299. Defendant Harsimran Singh lived at 9 Broadfield Place, Glen Cove, NY 11542-2005 from 1996 until in or around 2000. During this time and during other periods during 2002 and 2006, Defendant Harsimran Singh was Plaintiff's employer pursuant to the FLSA, 29 U.S.C, §§ 201 *et seq.*, and the New York Labor Law, § 652.

## IV.   FACTS

A.   Plaintiff's Prior Employment with Defendants and Travel to the United States

12.     In 1991, Ms. Lama began working for Mr. Pritam Singh, the father of Defendants Neeru Malik and Minu Singh, as a housekeeper. In or around 1992, Mr. Singh gifted Ms. Lama's services to Defendants Minu Singh and Harsimran Singh, as part of Ms. Singh's dowry.

3

13.   Plaintiff worked for the Defendants' families in Nepal and India between 1991 and 1996.  During this period Defendants and their families controlled her working conditions. They determined where she would work, the conditions of her employment, and her compensation.

14.   While working for Defendants and their families for this five-year period, Ms. Lama received room and board and monetary compensation for her services.  She understood that if she undertook in good faith the tasks assigned to her by the Defendants and their families, the Defendants would continue to pay her for her labor.

15.   In or around 1996, Defendants procured a visa for Ms. Lama so that they could bring Plaintiff to the United States to work for their family.

16.   Plaintiff arrived in New York on or around September 22, 1996.  She was chaperoned by Mr. Pritam Singh, who filled out Ms. Lama's immigration forms prior to arrival and who maintained control of her passport throughout the Plaintiff's journey to the United States.

17.   Upon arrival in the United States, Mr. Pritam Singh gave Plaintiff's passport to the Malik Defendants, who held Ms. Lama's passport in their possession while she was in their employ.  She did not regain possession of her passport until 2009.

B.   Plaintiff's Labor in the Long Island House and Working Conditions

18.   Starting in approximately September 1996, Plaintiff worked in a home shared by all Defendants at 9 Broadfield Place, Glen Cove, NY 11542-2005 ("the Long Island house").

19.   This four-bedroom, three-bathroom home housed the Malik Defendants and their minor children, as well as the Singh Defendants and, after the birth of their first child in or around 1997, the Singh Defendants' minor daughter.

4

ActiveUS 108376554v.4

20. Ms. Lama worked seven days per week and had no days off. Her workday started at approximately 7:00 a.m. and ended between approximately 10:00 p.m. and 11:00 p.m., with three short breaks for meals.

21. Ms. Lama's duties consisted of cooking, cleaning, laundry, and childcare for the Malik Defendants' children and the Singh Defendants' daughter.

22. Defendant Minu Singh returned to work three months after giving birth to her daughter in or around 1997. After this time, all Defendants either studied or worked during the day, leaving Plaintiff responsible for a newborn and two other children. All Defendants supervised and controlled Ms. Lama's work.

23. The Singh Defendants lived in the Long Island house until around 2000, after which they moved to another home which was also located in Long Island.

24. After the Singh Defendants moved out of the Long Island house, Ms. Lama's daily work schedule in the Long Island house for the Malik Defendants remained generally the same. Ms. Lama continued to cook, clean, do laundry, and provide childcare for the Malik Defendants and their children.

25. Defendants did not permit Ms. Lama to sleep in any of the bedrooms in the Long Island house. Even though there was a guestroom that stayed unoccupied most nights, Ms. Lama was made to sleep in the living room for the majority of the time that she worked for Defendants. This proved to be very difficult because the rest of the family members often remained in the living room watching television or talking late into the night. In or around 2006, the Malik Defendants constructed a platform bed in the laundry room and permitted Ms. Lama to sleep there.

5

ActiveUS 103376554v.4

**C.**   **Plaintiff's Isolation in the Long Island House**

26.   Defendants ensured that Ms. Lama remained isolated and dependent on them for virtually every aspect of her life in the United States.

27.   Ms. Lama was not permitted to leave Defendants' house unaccompanied.

28.   Ms. Lama did not speak or read English. The Defendants required Ms. Lama to communicate with Defendants and their children only in Hindi.

29.   Ms. Lama knew no one other than Defendants in the United States and had only sporadic and fleeting contact with friends and relatives in Nepal.

30.   She spoke to virtually no one other than the Defendants, their children, and the family's visitors. Defendants controlled access to the phones in the house and permitted her to make periodic but supervised phone calls to her family in Nepal. Defendants controlled the means and the manner in which she communicated, by purchasing the phone card, dialing the numbers for her, and limiting the frequency and length of Ms. Lama's calls.

31.   On several occasions, Plaintiff's family called from Nepal, and Defendants knowingly and falsely told them that Ms. Lama was not at home. Upon information and belief, Defendants acted in this manner to minimize her contact with the outside world.

32.   Ms. Lama often told Defendants that she missed her home, but Defendants simply told her a good cry would make her feel better.

33.   By limiting Ms. Lama's contact with others and retaining possession of Ms. Lama's passport and other travel documents, Defendants ensured that Ms. Lama was isolated and remained in their employ in the United States.

**D.**   **Plaintiff's Labor in the Malik Defendants' Business**

34.   The Malik Defendants had an export-import business that operated between New York and India. They employed at least two employees through that business.

6

35.    In the 2002 to 2006 period, Plaintiff was made to assist in the Malik Defendants'
import-export business, in addition to her all-consuming duties in the Malik Defendants'
household.

36.    On a quarterly basis during this four-year period, Defendant Shammi Malik took
Ms. Lama to the Malik Defendants' offices in Manhattan, where for a period of a few days she
ironed clothes in preparation for trade and fashion shows.

37.    She also accompanied the Malik Defendants to the multi-day trade shows in Las
Vegas on three occasions in this period. While at these trade shows, she assisted in preparation
for the show itself, and subsequently took care of the Malik Defendants' children.  Defendant
Minu Singh joined Plaintiff and the Malik Defendants during one of these Las Vegas trips.

E.    Plaintiff's Labor for the Singh Defendants in Arizona

38.    The Malik Defendants took Plaintiff to Arizona to stay with and work for the
Singh Defendants on two occasions.  The first trip took place in or around 2002.  While in
Arizona, Plaintiff's schedule and duties remained virtually unchanged from her schedule and
duties in New York, despite the fact that the Singh Defendants had a housekeeper of their own.

39.    Ms. Lama made breakfast for the children, prepared tea for the Malik and Singh
Defendants and their parents, took care of the Malik Defendants' children, and assisted the Singh
Defendants' housekeeper in her cooking and cleaning duties.  While in Arizona, Plaintiff took
direction primarily from the Singh Defendants.

40.    Plaintiff traveled to Arizona to work for the Singh Defendants for a second time
in or around 2006.  On this occasion, she traveled to Arizona with the Malik Defendants and
their parents to assist Defendant Minu Singh after the birth of her twins.  The Malik Defendants
left after one week and Plaintiff remained for three more weeks.  During this time, Defendant
Minu Singh continued her real estate practice from her home office, leaving the three Singh

7

05/15/2013 20:31 FAX   6235053188          Meenu @ Simran                    ☑0009/0013

children entirely in Plaintiff's care. Plaintiff also undertook household cleaning and cooking for four adults and three children. She was not permitted to leave the home. While in Arizona, Ms. Lama worked under the supervision and control of the Singh Defendants.

**F.     Defendants' Failure to Lawfully Pay for Plaintiff's Services and Related Deceit and Manipulation**

41.     During the 12-year period of Plaintiff's employment in the United States for the Defendants, Plaintiff expected to be fairly compensated for the work she undertook in the Long Island house, in Arizona, and for the Malik Defendants' business.

42.     During the entire period of her employment in the United States, Defendants required Plaintiff to work long days and nights, but paid Ms. Lama only if and when they wanted, in patent violation of federal and state law.

43.     Even so, Defendants Shammi Malik and Neeru Malik each represented to Ms. Lama that she would be paid a fair wage for her services. Defendant Shammi Malik also represented that they were saving her earnings for her.

44.     Ms. Lama received no payments directly from Defendants while she lived in the United States. To the extent she was paid for her services while working in the United States, such compensation was tendered directly to members of her family in Nepal by wire transfer and other means.

45.     Ms. Lama ultimately received a total of approximately 2 million Nepalese rupees (approximately U.S. $23,378 at current exchange rates) for nearly 12 years in Defendants' employ, disbursed in small and sporadic payments while she was working for them, and one larger payment thereafter. Given the long hours Ms. Lama worked over the 12 years, these wages amounted to approximately $0.41 per hour.

ActiveUS 108376554v.4

46.   In 1997, Defendant Neeru Malik and Ms. Lama had a conversation in the Malik Defendants' bedroom. During this conversation Defendant Neeru Malik told Ms. Lama that she would receive compensation just like the Malik Defendants' other employees. Neeru told Ms. Lama that other employees received $500, but she did not specify the frequency of these payments. Defendant Neeru Malik made this representation to induce Ms. Lama to continue working, though she and her husband Defendant Shammi Malik never intended to pay Ms. Lama.

47.   On several occasions during Ms.. Lama's tenure, Defendant Shammi Malik warranted that Ms. Lama would be paid a certain sum for the first six years of her employment, and that she would receive a raise after the first six years. Despite the fact that the amounts quoted were far below a legal wage, Defendant Shammi Malik used Ms. Lama's ignorance of the law to make representations that would create the appearance of good faith and would thus induce her to continue working.

48.   On several occasions between 2002 and 2006, Ms. Lama raised the issue of her compensation with Defendant Shammi Malik. These conversations occurred in Defendant Shammi Malik's car during the drive from the Long Island house to the office in Manhattan. On these occasions, Defendant Shammi Malik represented to Plaintiff that he was saving her portion for her, and that Ms. Lama did not need to be paid her compensation immediately because she lived with them and had no expenses.

49.   In or around 2008, Ms. Lama once again asked Defendant Shammi Malik why she had not been compensated for her work. Defendant Shammi Malik attempted to postpone the discussion to a later date, and got angry with Plaintiff when she posed the question.

9

ActiveUS 103376554v.4

50.     Isolated in a new country, with little contact with the outside world, no interaction with persons other than the Defendants or her family in Nepal (the latter of which occurred only via brief phone conversations); no knowledge or means to acquire knowledge of either relevant immigration requirements or United States or New York State labor laws, and no access whatsoever to any financial resources, Ms. Lama was made to believe she had no choice but to continue to work for Defendants and that she would receive fair compensation for her services.

51.     The Malik Defendants had the means to compensate Ms. Lama in accordance with the law, but intentionally exploited her isolation.  The Malik Defendants bought expensive cars for themselves and gave extravagant gifts to their family members during the same time period they refused to pay Ms. Lama for her work.

**G.  .  Defendants' Deceit and Manipulation Relating to Plaintiff's Green Card and End of Plaintiff's Employment with Defendants**

52.     In or around 2001, the Malik Defendants falsely told Ms. Lama that she needed to get a green card because five years had passed since her arrival in 1996. Defendant Neeru Malik falsely told Ms. Lama that the green card would cost the family about $35,000.  Defendant Shammi Malik falsely told Ms. Lama that her green card would cost the family about $40,000. He also said that she would have to wait about five years for her green card to be approved.

53.     Isolated in Defendants' home, unable to speak English and prohibited from learning it, and with no knowledge of the immigration laws of the United States, Ms. Lama believed what the Malik Defendants told her about the green card process.

54.     Around the same time, Ms. Lama learned that her mother had died in Nepal.  She expressed an interest in going home, but the Malik Defendants told her that she should wait for her green card.

10

ActiveUS 108376554v.A

55.     Defendant Shammi Malik and Defendant Neenu Malik, of their own volition, applied for a green card for Ms. Lama.

56.     Ms. Lama's green card was issued on August 14, 2006.

57.     During 2006, 2007, and 2008, Ms. Lama regularly asked the Malik Defendants if her green card had been issued. Each time, they falsely told her that it had not yet arrived.

58.     Unable to verify the truth of the Malik Defendants' statements about her green card, Ms. Lama trusted that her employers were telling the truth and continued to work for them while she waited for her green card to arrive.

59.     In August 2008, Ms. Lama traveled with Defendant Shammi Malik to Nepal. At that time, the Malik Defendants informed her that her green card had arrived, but when Ms. Lama asked to see her green card after they arrived in Nepal, Defendant Shammi Malik claimed it had not arrived and that he had merely been referring to a "special travel document" that had allowed her to travel. During their travel from the United States to Nepal, Defendant Shammi Malik continued to maintain possession of Ms. Lama's travel documents.

60.     Once home in Nepal, Ms. Lama asked the Malik Defendants for compensation for her services. The Malik Defendants told Ms. Lama she would be paid one million Indian rupees and explained that the payment was to cover all of Ms. Lama's unpaid earnings. As stated above, this sum amounted to approximately $0.41 per hour.

61.     After receiving such a paltry sum, Ms. Lama felt mistreated and taken advantage of by Defendants and refused to return to the United States with her only to continue working for them for little to no pay.

11

ActiveUS 108376554v.4

05/15/2013 20:32 FAX  6235053188          Meenu @ Simran                    ☑0013/0013

62.     In January or February 2009, approximately six months after her conversation with the Malik Defendants and Ms. Lama's decision to leave their employ, Ms. Lama received a check for the payment of one million Indian rupees, as well as her green card and passport.

63.     Around the same time, Defendant Shammi Malik asked if she would return to work for his family, once again promising her a monthly salary. Ms. Lama refused this offer.

**H.     Ms. Lama's Discovery of Her Rights**

64.     Defendants ensured that Ms. Lama was kept in complete isolation from any person or other source of information that could enable her to learn that Defendants were violating her rights.

65.     In the fall of 2009, Ms. Lama was told to register for a social security card as proof that she was eligible for employment. It was in the process of making the application for a social security card that she learned, for the first time, that her green card had in fact been issued in 2006, not in 2009 as the Malik Defendants had previously represented.

66.     In July 2012, Ms. Lama met with an attorney for the first time, learning of her right to seek her unpaid wages.

67.     On September 9, 2012, Ms. Lama filed a complaint with the New York State Department of Labor. The Department of Labor's investigation is still ongoing.

**I.      Defendant Shammi Malik's 2009 Bankruptcy Proceedings**

68.     On February 12, 2009, Defendant Shammi Malik filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), Case No. 8-09-70819-ast.

ActiveUS 103376554v.4

12

69.     Defendant Shammi Malik did not schedule any debts owed to Ms. Lama, did not list Ms. Lama as a creditor on his schedule of liabilities, and did not otherwise provide her with notice of his bankruptcy case.

70.     On June 2, 2009, the Bankruptcy Court entered an order granting Defendant Shammi Malik a discharge under 11 U.S.C. § 727.  Also on June 2, 2009, Mr. Malik's bankruptcy case was closed.

71.     Ms. Lama did not have knowledge or actual notice of Defendant Shammi Malik's bankruptcy case until a background check conducted by undersigned counsel in connection with the preparation of the instant Complaint revealed the fact of Defendant Shammi Malik's bankruptcy.

### FIRST CLAIM FOR RELIEF
**Forced Labor under Trafficking Victims Protection Reauthorization Act ("TVPRA")**
**(18 U.S.C. §§ 1589, 1595)**
**(Against the Malik Defendants)**

72.     Plaintiff incorporates each of the foregoing paragraphs by reference.

73.     Malik Defendants knowingly obtained Ms. Lama's labor and services by "abuse of law or legal process" and a pattern of abusive and coercive behavior designed to make Plaintiff believe that she would be harmed if she left their employ, in violation of the forced labor provisions of 18 U.S.C. § 1589.

74.     The Malik Defendants abused the legal process by maintaining possession of Ms. Lama's passport for the duration of her employment and by repeatedly deceiving Ms. Lama about their procurement of a green card on her behalf.

75.     The Malik Defendants caused Ms. Lama to believe that if she did not perform such labor or services, she would suffer serious harm.

76.     Malik Defendants committed Plaintiff to a position of forced labor by consistently

ActiveUS 108376554v.A

13

promising but in fact failing to pay her adequate wages between 1996 and 2008.

77.   Ms. Lama believed that she had no choice but to continue to work for Defendants, both in their home and for their business.

78.   As a result of Malik Defendants' actions, Plaintiff was forced to continue laboring for Defendants and suffered damages, including emotional distress, humiliation, embarrassment, and lost wages.  Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial, for Malik Defendants' wrongful conduct.

### SECOND CLAIM FOR RELIEF
Sale into Involuntary Servitude under TVPRA
(18 U.S.C. §§ 1584, 1595)
(Against the Malik Defendants)

79.   Plaintiff incorporates each of the foregoing paragraphs by reference.

80.   Ms. Lama brings this claim for relief under the private cause of action created at 18 U.S.C. § 1584, which prohibits "knowingly and willfully hold[ing] to involuntary servitude . . . , any other person for any term, . . . ."

81.   Malik Defendants held Ms. Lama to involuntary servitude by first isolating her and then using legal coercion to force her to continue to labor for their benefit against her will.

82.   Ms. Lama was isolated from the outside world when she was forbidden from leaving Defendants' home unaccompanied, allowed only limited and supervised access to the telephone, and barred from learning English.

83.   Ms. Lama's isolation made her vulnerable to the Malik Defendants' abuse; Malik Defendants exploited this vulnerability by refusing to pay her for her work, even though Plaintiff worked unceasingly in their household and assisted in their business.

84.   Malik Defendants sought to further secure Plaintiff's labor for their benefit by

14

ActiveUS 108376554v.4

telling Ms. Lama that she needed a green card to remain in the United States, and on at least two occasions they told her they were paying tens of thousands of dollars to procure the green card on her behalf.

85.    Malik Defendants further abused the legal process by subsequently deceiving Ms. Lama about the issuance of her green card and withholding the green card for a period of almost three years after its issuance.  As a result, Plaintiff remained in Defendants' employ.

86.    Through Malik Defendants' isolation and use of legal coercion, Plaintiff was held to involuntary servitude and suffered damages, including emotional distress, humiliation, embarrassment, and lost wages.  Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

### THIRD CLAIM FOR RELIEF
#### Unlawful Conduct with Respect to Documents under the TVPRA
#### (18 U.S.C. §§ 1592, 1595)
#### (Against the Malik Defendants)

87.    Plaintiff incorporates each of the foregoing paragraphs by reference.

88.    Malik Defendants knowingly confiscated and maintained possession of Ms. Lama's passport throughout the period of her employment and concealed the fact that she had been granted a green card for nearly three years before finally giving Ms. Lama her green card for the first time, and doing so only after she had left their employ.

89.    Malik Defendants did so "to prevent or restrict or to attempt to prevent or restrict, without lawful authority, [Ms. Lama's] liberty to move or travel, in order to maintain [her] labor or services," in violation of 18 U.S.C. § 1592.

90.    Plaintiff suffered damages, including emotional distress, humiliation, embarrassment, and lost wages, as a result of Malik Defendants' conduct.  Pursuant to 18 U.S.C.

15

ActiveUS 108376554v.4

§ 1595, Plaintiff is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### Minimum Wage under Fair Labor Standards Act ("FLSA")
### (29 U.S.C. §§ 201 et seq.)
### (Against Shammi Malik and Singh Defendants)

91.     Plaintiff incorporates each of the foregoing paragraphs by reference.

92.     Defendants violated the provisions of the FLSA, 29 U.S.C. §§ 201 et seq., by failing to pay Ms. Lama, a live-in domestic worker, the greater of the federal or state minimum wage. 29 U.S.C. § 206(f); 29 C.F.R. § 552.102; 29 U.S.C. § 218(a).

93.     The federal minimum wage from October 1, 1996 to August 31, 1997 was $4.75 per hour. From September 1, 1997 to July 23, 2007, the wage was $5.15 per hour. Beginning on July 24, 2007, the hourly rate was $5.85 through to July 23, 2008, when the rate was raised to $6.55 per hour. From July 24, 2008 through the end of Ms. Lama's employment, the wage rate was $7.25 per hour. 29 U.S.C. § 206(a)(1).

94.     The New York minimum wage was $4.25 per hour as of April 1, 1991, $5.15 as of March 31, 2000, $6.00 as of January 1, 2005, $6.75 as of January 1, 2006, $7.15 as of January 1, 2007, and $7.25 as of July 24, 2009 through the end of Ms. Lama's employment. N.Y. Lab. Law § 652(1).

95.     Defendants were Plaintiff's employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

96.     Defendants were aware or should have been aware of the requirement to pay Plaintiff the statutorily defined minimum wage for her labor.

97.     Defendants knowingly failed to pay Plaintiff the minimum wage for hours worked as required under federal law for her work in New York or at the Singh's residence in Arizona.

ActiveUS 108376554v.4

98.   Defendants' failure to pay the minimum wage was willful.

99.   As a result of Defendants' willful violations of the FLSA, under 29 U.S.C. § 216(b), Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, an additional equal amount in liquidated damages, and reasonable attorneys' fees and costs, including post-judgment interest, in amounts to be proven at trial.

### FIFTH CLAIM FOR RELIEF
Minimum Wage under New York State Labor Law ("N.Y. Labor Law")
(N.Y. Labor Law § 652)
(Against Shammi Malik and Singh Defendants)

100.   Plaintiff incorporates each of the foregoing paragraphs by reference.

101.   Under N.Y. Labor Law § 652, Plaintiff was entitled to be paid a lawful minimum wage for all hours worked in Defendants' employ.

102.   Defendants were Plaintiff's employers within the meaning of the New York Labor Law, § 651.

103.   During the period of Plaintiff's employment with Defendants, the minimum wage in New York ranged from $5.15 to $7.25 per hour. N.Y. Lab. Law § 652(1).

104.   Defendants were aware of or should have been aware of the requirement to pay Plaintiff the statutorily defined minimum wage for her labor.

105.   Defendants knowingly failed to compensate Plaintiff at the wage rate prescribed by law at the relevant times.

106.   Defendants' failure to pay Plaintiff the minimum wage was willful.

107.   As a result of Defendants' willful violations of the New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

17

ActiveUS 108376554v.4

05/15/2013 20:34 FAX  8235053188          Meenu @ Simran                            Ø0008/0018

### SIXTH CLAIM FOR RELIEF
Overtime under N.Y. Labor Law
(12 N.Y.C.R.R. § 142-3.2)
(Against Shammi Malik and Singh Defendants)

108.    Plaintiff incorporates each of the foregoing paragraphs by reference.

109.    Under 12 N.Y.C.R.R. § 142-3.2, Plaintiff was entitled to time and a half of the minimum wage for all hours worked in excess of 44 hours per week.

110.    Defendants were Plaintiff's employers within the meaning of the New York Labor Law.  Defendants were therefore obligated to pay Ms. Lama time and a half of the New York State minimum wage, which ranged from $5.15 to $7.25 per hour while she was employed by Defendants.  N.Y. Lab. Law § 652(1).

111.    Defendants required Plaintiff to work approximately 14 hours per day, seven days a week, in both their home and business, but failed to pay Ms. Lama any overtime wages.

112.    Defendants were aware or should have been aware of the requirement to pay Plaintiff time and a half of the statutorily defined minimum wage for hours worked in excess of 44 hours per week.

113.    Defendants' failure to pay Plaintiff overtime wages was willful.

114.    As a result of Defendants' willful violations of the New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
Spread of Hours under N.Y. Lab. Law
(12 N.Y.C.R.R. § 142-2.4)
(Against Shammi Malik and Singh Defendants)

115.    Plaintiff incorporates each of the foregoing paragraphs by reference.

ActiveUS 108376554v.4

116.   Under 12 N.Y.C.R.R. § 142-2.4, Plaintiff should have received an extra hour of pay at the minimum wage for each day in which her "spread of hours" (the interval between the beginning and end of an employee's workday) exceeded ten hours.

117.   Defendants were Plaintiff's employers within the meaning of the New York Labor Law, § 652(1).

118.   During the period of Plaintiff's employment with Defendants, the minimum wage in New York ranged from $5.15 to $7.25 per hour.

119.   Defendants required Plaintiff's workday to begin at approximately 7:00 a.m. and end between approximately 10:00 p.m. and 11:00 p.m., which well exceeded ten hours per day. As a result, Plaintiff was eligible for an extra hour of pay at the New York minimum wage for every day of her employment with Defendants.

120.   Defendants were aware or should have been aware of the requirement to pay Plaintiff in accordance with the New York Labor Law.

121.   Defendants' failure to provide Plaintiff with such compensation was willful.

122.   As a result of Defendants' willful violations of New York Labor Law, §§ 109 and 663, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### Frequency of Payments under N.Y. Lab. Law
### (N.Y. Labor Law § 191)
### (Against Shammi Malik and Singh Defendants)

123.   Plaintiff incorporates each of the foregoing paragraphs by reference.

124.   Defendants were aware or should have been aware of the requirement to pay Plaintiff in accordance with the New York Labor Law.

19

ActiveUS 108376554v.4

125.    Defendants failed to pay Ms. Lama on at least a "weekly" basis, in violation of N.Y. Labor Law § 191.

126.    During the 12-year period of Ms. Lama's employment, Defendants made only a handful of grossly inadequate payments, and one additional payment to Ms. Lama after she left their employ.  The time between each payment clearly exceeded the one-week interval mandated by New York Labor Law § 191-1.

127.    The amount of time following her final payment also clearly exceeded the one-week interval mandated by New York Labor Law § 191-3.

128.    As a result of Defendants' willful violations of New York Labor Law § 191, Plaintiff is entitled to recover her unpaid damages, liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

### NINTH CLAIM FOR RELIEF
### Conversion
### (Against the Malik and Singh Defendants)

129.    Plaintiff incorporates each of the foregoing paragraphs by reference.

130.    The Malik Defendants unlawfully possessed Ms. Lama's passport and green card -- her physical property -- and intentionally exercised control over them, thereby interfering with Plaintiff's right of possession.

131.    The Malik Defendants unlawfully maintained possession of Ms. Lama's passport for the entire period of Ms. Lama's employ and unlawfully maintained possession of Ms. Lama's green card for almost three years.

132.    With these actions, the Malik Defendants exercised control over Ms. Lama's passport and green card in violation of her personal property rights.

133.    By actively denying that Ms. Lama's green card had been issued on at least one occasion, the Malik Defendants acted with willful and reckless disregard of Ms. Lama's rights.

20

05/15/2013 20:35 FAX  6235053188          Meenu @ Simran                    ☑0009/0016

134.   The Malik and Singh Defendants represented to Ms. Lama that she was earning a reasonable salary in return for her labor and that they were saving the earnings for her.

135.   The Malik Singh Defendants otherwise maintained exclusive control of the funds earned by Ms. Lama through her labor.

136.   The Malik and Singh Defendants exercised dominion over identifiable funds belonging to Ms. Lama, in violation of her rights to those funds.

137.   By denying Ms. Lama possession of her funds, the Malik and Singh Defendants acted with willful and reckless disregard of Ms. Lama's rights.

138.   Ms. Lama is entitled to compensatory and punitive damages for Defendants' willful and reckless disregard of her personal property rights.

### TENTH CLAIM FOR RELIEF
Fraudulent Misrepresentation
(Against the Malik Defendants)

139.   Plaintiff incorporates each of the foregoing paragraphs by reference.

140.   Malik Defendants fraudulently induced Plaintiff to remain in their employ by making false statements and falsely representing that they were saving her wages for her, keeping them safe until such time as she needed them or when the employment relationship ended.

141.   Malik Defendants misrepresented the fact of saving her wages for her in order to induce Ms. Lama to continue working.

142.   Ms. Lama reasonably relied on Malik Defendants' false statements and misrepresentations about her wages and savings and continued to work long hours for Defendants.

21

ActiveUS 108376554v.A

143.   Malik Defendants also fraudulently induced Ms. Lama to remain in their employ by first telling Ms. Lama that she needed a green card to remain legally in the country and then concealing the fact that her green card had arrived.

144.   Malik Defendants misrepresented the fact of her green card arriving in order to induce Ms. Lama to continue working for them for unlawfully low wages.

145.   Because she believed she needed a green card to comply with the law and that she had to remain in Malik Defendants' employ to receive her green card, she continued to labor for Malik Defendants' benefit for a period of almost three years after her green card had been issued. Ms. Lama reasonably relied on Malik Defendants' false statements and misrepresentations about the green card.

146.   Due to her limited English skills, her almost complete isolation from the outside world, and her long relationship of trusting the Defendants, Ms. Lama had not only no reason to suspect that the Defendants' statements about the issuance of her green card and the saving of her wages were false, but was unable until 2012 to learn that the Defendants had misled her.

147.   Ms. Lama is entitled to recover the damages she suffered as a result of Malik Defendants' fraudulent misrepresentations.

### ELEVENTH CLAIM FOR RELIEF
#### Unjust Enrichment/*Quantum Meruit*
#### (Against the Malik and Singh Defendants)

148.   Plaintiff incorporates each of the foregoing paragraphs by reference.

149.   Defendants were unjustly enriched when they accepted Ms. Lama's services, rendered in good faith and with the expectation of fair compensation, and failed to remunerate her for her labor.

150.   Ms. Lama worked for Defendants as a live-in domestic worker for twelve years in the United States.

22

ActiveUS 108376554v.4

151.   During that time, she worked up to approximately 14 hours per day, seven days per week, with only three short breaks for meals.

152.   Ms. Lama received only paltry compensation at highly irregular intervals.

153.   Defendants obtained substantial benefits at Ms. Lama's expense in the form of inexpensive household labor, although upon information and belief they were aware of the prevailing and minimum rates for such labor.

154.   The benefits that Defendants derived from Ms. Lama's labor came at enormous expense to Ms. Lama, who could have been fairly compensated for domestic work elsewhere and who was forced by the circumstances of her employment to make enormous personal sacrifices.

155.   Defendants created a power imbalance through isolation, manipulation, and other means described herein, in order to prevent Ms. Lama from either learning that she was entitled to a fair wage or challenging the circumstances of her employment.

156.   Fairness and good conscience mandate that Ms. Lama receive fair compensation for the benefit she conferred upon Defendants at her expense.

### TWELFTH CLAIM FOR RELIEF
Debts to Plaintiff Are Non-Dischargeable – Debts for Services Obtained By False Pretenses, False Representation, or Actual Fraud
(11 U.S.C. § 523(a)(2)(A); 11 U.S.C. § 523(a)(3)(B))
(Against Defendant Shammi Malik)

157.   Plaintiff incorporates each of the foregoing paragraphs by reference.

158.   Defendant Shammi Malik did not list or schedule any debts owed to Ms. Lama and did not otherwise provide her with notice of his bankruptcy case in sufficient time to permit Ms. Lama to file a complaint seeking a determination of nondischargeability in that case. In addition, Ms. Lama did not have actual knowledge of Mr. Malik's bankruptcy case in sufficient time to permit Ms. Lama to file a complaint seeking a determination of dischargeability in that

23

case. Therefore, this Court has the authority to enter the relief requested herein pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 523(a)(2), 11 U.S.C. § 523(a)(3)(B), and 11 U.S.C. § 523(c)(1). 11 U.S.C. § 523(a)(2)(A) provides that "a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt...for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

159.    Defendant Shammi Malik incurred a debt to Plaintiff through his fraudulent misrepresentations and fraud while acting as Plaintiff's employer by, among other things, (a) willfully and intentionally circumventing minimum wage, overtime, spread-of-hours, and frequency-of-payment laws; (b) willfully and intentionally retaining Plaintiff's earnings to which she was entitled; and (c) willfully and intentionally retaining Plaintiff's green card and passport.

160.    As explained in more detail herein, despite never having any intention to comply with labor laws or pay Plaintiff lawful wages, Mr. Malik represented to Plaintiff that he would pay her a fair wage and that he was holding her money in savings.  Mr. Malik made these statements to Plaintiff so that he could retain amounts lawfully owed to Plaintiff for his own personal use and to coerce Plaintiff to stay in his employ despite the fraud and unlawful conditions.  Justifiably relying on these misrepresentations and believing that the full and fair amount of wages was being held in savings, Plaintiff continued to provide services for Mr. Malik for little or no payment.

161.    In addition, Defendant Shammi Malik incurred a debt to Plaintiff through misrepresentation and fraud when he willfully made false statements to Plaintiff Ms. Lama about needing a green card, and when he made further false statements to her in order to withhold her

24

ActiveUS 108376554v.4

green card for several years and continue to benefit from Ms. Lama's labor.  With the intention of coercing Plaintiff to stay in Defendants' employ under unlawful conditions, Mr. Malik intentionally misrepresented to Plaintiff that her green card had not been issued and that she would receive her green card "soon." Justifiably relying on these intentional misrepresentations, Plaintiff continued to provide services for Defendant Shammi Malik for little or no payment.

162.    As such, Defendant Shammi Malik's debts to Plaintiff arising from the causes of action asserted herein are nondischargeable pursuant to 11 U.S.C. § 523(a)(2).  Because Plaintiff did not receive or otherwise obtain timely notice of Mr. Malik's bankruptcy case, those claims were not discharged in Mr. Malik's bankruptcy case.

## THIRTEENTH CLAIM FOR RELIEF
### Debts to Plaintiff Are Non-Dischargeable – Debts for Willful and Malicious Injury
### (11 U.S.C. § 523(a)(6); 11 U.S.C. § 523(a)(3)(B))
### (Against Defendant Shammi Malik)

163.    Plaintiff incorporates each of the foregoing paragraphs by reference.

164.    Defendant Shammi Malik did not list or schedule any debts owed to Ms. Lama and did not otherwise provide her with notice of his bankruptcy case in sufficient time to permit Ms. Lama to file a complaint seeking a determination of dischargeability in that case.  In addition, Ms. Lama did not have actual knowledge of Mr. Malik's bankruptcy case in sufficient time to permit Ms. Lama to file a complaint seeking a determination of nondischargeability in that case.  Therefore, this Court has authority to enter the relief requested herein pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 523(a)(6), 11 U.S.C. § 523(a)(3)(B), and 11 U.S.C. § 523(c)(1).

165.    11 U.S.C. § 523(a)(6) provides that "a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt …

25

for willful and malicious injury by the debtor to another entity or to the property of another entity."

166.   Defendant Shammi Malik incurred a debt to Plaintiff for willful and malicious injury by, among other things, (a) intentionally or knowingly, through coercive actions, forcing Plaintiff to remain in his employment in violation of the laws prohibiting human trafficking, including forced labor and involuntary servitude; (b) intentionally or knowingly circumventing minimum wage, overtime, spread-of-hours, and frequency-of-payment laws; (c) intentionally or knowingly retaining Plaintiff's earnings to which she was entitled; and (d) intentionally or knowingly retaining Plaintiff's green card and passport in an effort to coerce her to stay in Defendants' employ.

167.   As explained in more detail herein, Defendant Malik's actions injured Plaintiff because she was forced into continued employment and deprived of compensation to which she was entitled.  In addition, Mr. Malik willfully injured Plaintiff by maintaining possession of Ms. Lama's green card while simultaneously representing to Plaintiff that the green card had not been issued.  Mr. Malik profited from his conduct because he was able to coerce Plaintiff into continued employment at substandard wages and divert amounts owed to Plaintiff for his own personal use.

168.   Defendant Shammi Malik's injury of Plaintiff was malicious because it was wrongful and without just cause or excuse.  Mr. Malik's conduct was wrongful because it was without lawful authority, in violation of applicable labor laws, and in violation of Ms. Lama's personal property rights.  No cause or excuse existed for Mr. Malik's injury of Plaintiff; instead, Mr. Malik's injurious acts were expressly prohibited by applicable laws.

169.  As such, Defendant Shammi Malik's debts to Plaintiff arising from the causes of action asserted herein are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  Because Plaintiff did not receive or otherwise obtain timely notice of Mr. Malik's bankruptcy case, those claims were not discharged in Mr. Malik's bankruptcy case.

## V.    JURY DEMAND

170.  Plaintiff requests a trial by jury.

## VI.    PRAYER

WHEREFORE, Plaintiff prays that this Court:

1.  Enter an order determining that Defendant Shammi Malik's debts arising from the causes of action identified herein were not discharged by Mr. Malik's bankruptcy;

2.  Enter judgment in favor of Plaintiff in each and every cause of action asserted in the Complaint;

3.  Award such damages as may be appropriate, including compensatory, punitive and liquidated damages;

4.  Award Plaintiff her attorneys' fees and costs;

5.  Award Plaintiff pre- and post-judgment interest; and

6.  Award any such other and further relief as the Court deems just and proper.

DATED this 14th day of May, 2013.

Respectfully submitted,

WilmerHale LLP

*Lori A. Martin*

Lori A. Martin
Wilmer Cutler Pickering Hale and Dorr LLP
7 WTC, 250 Greenwich Street
New York, NY  10007
212 230 8800 (phone)
212 230 8888 (fax)

Isley Markman
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue
Washington, DC  20007
202 663 6000 (phone)
202 663 6363 (fax)

Nicole Hallett
Amy Tai
Urban Justice Center
123 William Street, 16th Floor
New York, NY  10038
646 459 3003 (phone)
212 533 4598 (fax)

*Attorneys for Plaintiff*

28

ActiveUS 108376554v.4

Exhibit 2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| URMILA LAMA,<br>　　　　　　*Plaintiff,*<br><br>v.<br><br>JOGINDER ("SHAMMI") MALIK,<br>NEERU MALIK, KAMALJIT ("MINU") SINGH,<br>and HARSIMRAN SINGH,<br><br>　　　　　　*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)　Case No. CV 13-2846 (LDW)(ARL)<br>)<br>)<br>)<br>)<br>)<br>) |

### <u>FIRST AMENDED COMPLAINT</u>

Plaintiff Urmila Lama brings this action against Defendants Joginder ("Shammi") Malik and Neeru Malik ("Malik Defendants") and Kamaljit ("Minu") Singh and Harsimran Singh ("Singh Defendants") (collectively, "Defendants"), and alleges as follows:

## I.　INTRODUCTION

1. This is an action for damages brought by Urmila Lama ("Ms. Lama" or "Plaintiff"), who devoted nearly 12 years of her life as a domestic worker for Defendants and their family members in the United States for little to no compensation. Ms. Lama asks this Court to vindicate her rights to fair and reasonable remuneration under the Fair Labor Standards Act ("FLSA"), the New York Labor Law, and the common law of the State of New York.

2. Ms. Lama also seeks compensation under the Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008 for additional injuries suffered while employed by Defendants. Defendants underpaid her and coerced her to remain in their employ by isolating

1

her, withholding her passport and green card, and concealing the issuance of her green card for approximately three years.

3.      Ms. Lama further seeks a determination by this Court that her claims against Defendant Shammi Malik were not discharged by Mr. Malik's 2009 bankruptcy.

## II.      JURISDICTION AND VENUE

4.      This Court has original jurisdiction pursuant to 18 U.S.C. § 1595 (the TVPRA of 2008), 29 U.S.C. § 216(b) (the Fair Labor Standards Act), and 28 U.S.C. § 1334(b).

5.      This Court has supplemental jurisdiction over the related state law claims under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction over these claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (1) substantially all of the events giving rise to the claims in the Complaint occurred in the Eastern District of New York, and (2) the Malik Defendants reside in the Eastern District of New York.

## III.      PARTIES

7.      Plaintiff worked for Defendants and resided in their home at 9 Broadfield Place, Glen Cove, NY 11542-2005 between 1996 and 2008. Plaintiff left the United States in or around August 2008. She has since returned to the United States and now lives in Queens, New York.

8.      Defendant Shammi Malik has resided at 9 Broadfield Place, Glen Cove, NY 11542-2005 since February 1989. Defendant Shammi Malik employed Plaintiff in the State of New York from approximately September 1996 until sometime in or around August 2008. At all

2

relevant times, Defendant Shammi Malik was Ms. Lama's employer pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law, § 652.

9. Defendant Neeru Malik, wife of Defendant Shammi Malik, has resided at 9 Broadfield Place, Glen Cove, NY 11542-2005 since approximately February 1989. Defendant Neeru Malik employed Plaintiff in the State of New York from approximately September 1996 until approximately August 2008.

10. Defendant Kamaljit Singh (also known as "Minu"), sister of Defendant Neeru Malik, currently resides at 21655 N. 53rd Drive, Glendale, AZ 85308-6299. Defendant Minu Singh lived at 9 Broadfield Place, Glen Cove, NY 11542-2005 from 1996 until in or around 2000. During this time and during other periods during 2002 and 2006, Defendant Minu Singh was Plaintiff's employer pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law, § 652.

11. Defendant Harsimran Singh, husband of Defendant Minu Singh, currently resides at 21655 N. 53rd Drive, Glendale, AZ 85308-6299. Defendant Harsimran Singh lived at 9 Broadfield Place, Glen Cove, NY 11542-2005 from 1996 until in or around 2000. During this time and during other periods during 2002 and 2006, Defendant Harsimran Singh was Plaintiff's employer pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law, § 652.

## IV.    FACTS

A.    **Plaintiff's Prior Employment with Defendants and Travel to the United States**

12. In 1991, Ms. Lama began working for Mr. Pritam Singh, the father of Defendants Neeru Malik and Minu Singh, as a housekeeper. In or around 1992, Mr. Singh gifted Ms. Lama's services to Defendants Minu Singh and Harsimran Singh, as part of Ms. Singh's dowry.

3

13.     Plaintiff worked for the Defendants' families in Nepal and India between 1991 and 1996.  During this period Defendants and their families controlled her working conditions. They determined where she would work, the conditions of her employment, and her compensation.

14.     While working for Defendants and their families for this five-year period, Ms. Lama received room and board and monetary compensation for her services.  She was not paid regularly during this time period, but rather when she returned home to visit her family or, on occasion, when she requested to be paid.  She understood that if she undertook in good faith the tasks assigned to her by the Defendants and their families, the Defendants would eventually pay her for her labor.

15.     In or around 1996, Defendants procured a visa for Ms. Lama so that they could bring Plaintiff to the United States to work for their family.

16.     Plaintiff arrived in New York on or around September 22, 1996.  She was chaperoned by Mr. Pritam Singh, who filled out Ms. Lama's immigration forms prior to arrival and who maintained control of her passport throughout the Plaintiff's journey to the United States.

17.     Upon arrival in the United States, Mr. Pritam Singh gave Plaintiff's passport to the Malik Defendants, who held Ms. Lama's passport in their possession while she was in their employ.  She did not regain possession of her passport until 2009.

B.     Plaintiff's Labor in the Long Island House and Working Conditions

18.     Starting in approximately September 1996, Plaintiff worked in a home shared by all Defendants at 9 Broadfield Place, Glen Cove, NY 11542-2005 ("the Long Island house").

4

19.     This four-bedroom, three-bathroom home housed the Malik Defendants and their minor children, as well as the Singh Defendants and, after the birth of their first child in or around 1997, the Singh Defendants' minor daughter.

20.     Ms. Lama worked seven days per week and had no days off.  Her workday started at approximately 7:00 a.m. and ended between approximately 10:00 p.m. and 11:00 p.m., with three short breaks for meals.

21.     Ms. Lama's duties consisted of cooking, cleaning, laundry, and childcare for the Malik Defendants' children and the Singh Defendants' daughter.

22.     Defendant Minu Singh returned to work three months after giving birth to her daughter in or around 1997.  After this time, all Defendants either studied or worked during the day, leaving Plaintiff responsible for a newborn and two other children.   All Defendants supervised and controlled Ms. Lama's work.

23.     The Singh Defendants lived in the Long Island house until around 2000, after which they moved to another home which was also located in Long Island.

24.     After the Singh Defendants moved out of the Long Island house, Ms. Lama's daily work schedule in the Long Island house for the Malik Defendants remained generally the same.  Ms. Lama continued to cook, clean, do laundry, and provide childcare for the Malik Defendants and their children.

25.     Defendant Shammi Malik would yell at her when the groceries ran out, suggesting she had eaten or stolen all the food.

26.     On a few occasions during the 12-year period, Defendant Shammi Malik required Ms. Lama to give him massages.

ActiveUS 116109705v.1

27.     In addition, Defendants did not permit Ms. Lama to sleep in any of the bedrooms in the Long Island house.  Even though there was a guestroom that stayed unoccupied most nights, Ms. Lama was made to sleep in the living room for the majority of the time that she worked for Defendants.  This proved to be very difficult because the rest of the family members often remained in the living room watching television or talking late into the night.  In or around 2006, the Malik Defendants constructed a platform bed in the laundry room and permitted Ms. Lama to sleep there.

**C.     Plaintiff's Isolation in the Long Island House**

28.     Defendants ensured that Ms. Lama remained isolated and dependent on them for virtually every aspect of her life in the United States.

29.     Ms. Lama was not permitted to leave Defendants' house unaccompanied.

30.     Ms. Lama did not speak or read English.  The Defendants required Ms. Lama to communicate with Defendants and their children only in Hindi.

31.     Ms. Lama knew no one other than Defendants in the United States and had only sporadic and fleeting contact with friends and relatives in Nepal.

32.     She spoke to virtually no one other than the Defendants, their children, and the family's visitors.  Defendants controlled access to the phones in the house and permitted her to make periodic but supervised phone calls to her family in Nepal.  Defendants controlled the means and the manner in which she communicated, by purchasing the phone card, dialing the numbers for her, and limiting the frequency and length of Ms. Lama's calls.

33.     On several occasions, Plaintiff's family called from Nepal, and Defendants knowingly and falsely told them that Ms. Lama was not at home.  Upon information and belief, Defendants acted in this manner to minimize her contact with the outside world.

6

34.    Ms. Lama often told Defendants that she missed her home, but Defendants simply told her a good cry would make her feel better.

35.    By limiting Ms. Lama's contact with others and retaining possession of Ms. Lama's passport and other travel documents, Defendants ensured that Ms. Lama was isolated and remained in their employ in the United States.

**D.    Plaintiff's Labor in the Malik Defendants' Business**

36.    The Malik Defendants had an export-import business that operated between New York and India.  They employed at least two employees through that business.

37.    In the 2002 to 2006 period, Plaintiff was made to assist in the Malik Defendants' import-export business, in addition to her all-consuming duties in the Malik Defendants' household.

38.    On a quarterly basis during this four-year period, Defendant Shammi Malik took Ms. Lama to the Malik Defendants' offices in Manhattan, where for a period of a few days she ironed clothes in preparation for trade and fashion shows.

39.    She also accompanied the Malik Defendants to the multi-day trade shows in Las Vegas on three occasions in this period. While at these trade shows, she assisted in preparation for the show itself, and subsequently took care of the Malik Defendants' children.  Defendant Minu Singh joined Plaintiff and the Malik Defendants during one of these Las Vegas trips.

**E.    Plaintiff's Labor for the Singh Defendants in Arizona**

40.    The Malik Defendants took Plaintiff to Arizona to stay with and work for the Singh Defendants on two occasions.  The first trip took place in or around 2002.  While in Arizona, Plaintiff's schedule and duties remained virtually unchanged from her schedule and duties in New York, despite the fact that the Singh Defendants had a housekeeper of their own.

7

41.     Ms. Lama made breakfast for the children, prepared tea for the Malik and Singh Defendants and their parents, took care of the Malik Defendants' children, and assisted the Singh Defendants' housekeeper in her cooking and cleaning duties.  While in Arizona, Plaintiff took direction primarily from the Singh Defendants.

42.     Plaintiff traveled to Arizona to work for the Singh Defendants for a second time in or around 2006.  On this occasion, she traveled to Arizona with the Malik Defendants and their parents to assist Defendant Minu Singh after the birth of her twins.  The Malik Defendants left after one week and Plaintiff remained for three more weeks.  During this time, Defendant Minu Singh continued her real estate practice from her home office, leaving the three Singh children entirely in Plaintiff's care.  Plaintiff also undertook household cleaning and cooking for four adults and three children.  She was not permitted to leave the home.  While in Arizona, Ms. Lama worked under the supervision and control of the Singh Defendants.

F.     **Defendants' Failure to Lawfully Pay for Plaintiff's Services and Related Deceit and Manipulation**

43.     During the 12-year period of Plaintiff's employment in the United States for the Defendants, Plaintiff expected to be fairly compensated for the work she undertook in the Long Island house, in Arizona, and for the Malik Defendants' business.

44.     During the entire period of her employment in the United States, Defendants required Plaintiff to work long days and nights, but paid Ms. Lama only if and when they wanted, in patent violation of federal and state law.

45.     Even so, Defendants Shammi Malik and Neeru Malik each represented to Ms. Lama that she would be paid a fair wage for her services.  Defendant Shammi Malik also represented that they were saving her earnings for her.

8

46.    Ms. Lama received no payments directly from Defendants while she lived in the United States. To the extent she was paid for her services while working in the United States, such compensation was tendered directly to members of her family in Nepal by wire transfer and other means.

47.    Ms. Lama ultimately received a total of approximately 2 million Nepalese rupees (approximately U.S. $23,378 at current exchange rates) for nearly 12 years in Defendants' employ, disbursed in small and sporadic payments while she was working for them, and one larger payment thereafter. Given the long hours Ms. Lama worked over the 12 years, these wages amounted to approximately $0.41 per hour.

48.    In 1997, Defendant Neeru Malik and Ms. Lama had a conversation in the Malik Defendants' bedroom. During this conversation Defendant Neeru Malik told Ms. Lama that she would receive compensation just like the Malik Defendants' other employees. Neeru told Ms. Lama that other employees received $500, but she did not specify the frequency of these payments. Defendant Neeru Malik made this representation to induce Ms. Lama to continue working, though she and her husband Defendant Shammi Malik never intended to pay Ms. Lama.

49.    On several occasions during Ms. Lama's tenure, Defendant Shammi Malik warranted that Ms. Lama would be paid a certain sum for the first six years of her employment, and that she would receive a raise after the first six years. Despite the fact that the amounts quoted were far below a legal wage, Defendant Shammi Malik used Ms. Lama's ignorance of the law to make representations that would create the appearance of good faith and would thus induce her to continue working.

9

50.     On several occasions between 2002 and 2006, Ms. Lama raised the issue of her compensation with Defendant Shammi Malik.  These conversations occurred in Defendant Shammi Malik's car during the drive from the Long Island house to the office in Manhattan.  On these occasions, Defendant Shammi Malik represented to Plaintiff that he was saving her portion for her, and that Ms. Lama did not need to be paid her compensation immediately because she lived with them and had no expenses.

51.     In or around 2008, Ms. Lama once again asked Defendant Shammi Malik why she had not been compensated for her work.  Defendant Shammi Malik attempted to postpone the discussion to a later date, and got angry with Plaintiff when she posed the question.

52.     Isolated in a new country, with little contact with the outside world, no interaction with persons other than the Defendants or her family in Nepal (the latter of which occurred only via brief phone conversations), no knowledge or means to acquire knowledge of either relevant immigration requirements or United States or New York State labor laws, and no access whatsoever to any financial resources, Ms. Lama was made to believe she had no choice but to continue to work for Defendants and that she would receive fair compensation for her services.

53.     The Malik Defendants had the means to compensate Ms. Lama in accordance with the law, but intentionally exploited her isolation.  The Malik Defendants bought expensive cars for themselves and gave extravagant gifts to their family members during the same time period they refused to pay Ms. Lama for her work.

**G.     Defendants' Deceit and Manipulation Relating to Plaintiff's Green Card and End of Plaintiff's Employment with Defendants**

54.     In or around 2001, Ms. Lama learned that her mother had died in Nepal.  She expressed an interest in going home, but the Malik Defendants falsely told Ms. Lama that she needed to get a green card to return home to Nepal because five years had passed since her

ActiveUS 116109705v.1

arrival in 1996. Defendants Neeru Malik and Shammi Malik, along with Mr. Pritam Singh, falsely told Ms. Lama that the green card would cost the family an amount ranging from $25,000 to $40,000. Ms. Lama was also told that she would have to wait about five years for her green card to be approved.

55.     Isolated in Defendants' home, unable to speak English and prohibited from learning it, and with no knowledge of the immigration laws of the United States, Ms. Lama believed what the Malik Defendants told her about the green card process.

56.     Defendant Shammi Malik and Defendant Neeru Malik, of their own volition, applied for a green card for Ms. Lama.

57.     Ms. Lama's green card was issued on August 14, 2006.

58.     During 2006, 2007, and 2008, Ms. Lama regularly asked the Malik Defendants if her green card had been issued. Each time, they falsely told her that it had not yet arrived.

59.     Unable to verify the truth of the Malik Defendants' statements about her green card, Ms. Lama trusted that her employers were telling the truth and continued to work for them while she waited for her green card to arrive.

60.     In August 2008, Ms. Lama traveled with Defendant Shammi Malik to Nepal. At that time, the Malik Defendants informed her that her green card had arrived, but when Ms. Lama asked to see her green card after they arrived in Nepal, Defendant Shammi Malik claimed it had not arrived and that he had merely been referring to a "special travel document" that had allowed her to travel. During their travel from the United States to Nepal, Defendant Shammi Malik continued to maintain possession of Ms. Lama's travel documents.

61.     Once home in Nepal, Ms. Lama asked the Malik Defendants for compensation for her services. The Malik Defendants told Ms. Lama she would be paid one million Indian rupees

ActiveUS 116109705v.1

and explained that the payment was to cover all of Ms. Lama's unpaid earnings. As stated above, this sum, in addition to the sporadic payments her family received during the 12-year period, amounted to approximately $0.41 per hour.

62.    After being told she would receive such a paltry sum, Ms. Lama felt mistreated and taken advantage of by Defendants and refused to return to the United States with her only to continue working for them for little to no pay.

63.    In January or February 2009, approximately six months after her conversation with the Malik Defendants and Ms. Lama's decision to leave their employ, Ms. Lama received a check for the payment of one million Indian rupees, as well as her green card and passport.

64.    Around the same time, Defendant Shammi Malik asked if she would return to work for his family, once again promising her a monthly salary. Ms. Lama refused this offer.

**H.    Ms. Lama's Discovery of Her Rights**

65.    Defendants ensured that Ms. Lama was kept in complete isolation from any person or other source of information that could enable her to learn that Defendants were violating her rights.

66.    In the fall of 2009, Ms. Lama was told to register for a social security card as proof that she was eligible for employment. It was in the process of making the application for a social security card that she learned, for the first time, that her green card had in fact been issued in 2006, not in 2009 as the Malik Defendants had previously represented.

67.    In July 2012, Ms. Lama met with an attorney for the first time, learning of her right to seek her unpaid wages.

68.    On September 9, 2012, Ms. Lama filed a complaint with the New York State Department of Labor. The Department of Labor's investigation is still ongoing.

ActiveUS 116109705v.1

I.      **Defendant Shammi Malik's 2009 Bankruptcy Proceedings**

69.      On February 12, 2009, Defendant Shammi Malik filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), Case No. 8-09-70819-ast.

70.      Defendant Shammi Malik did not schedule any debts owed to Ms. Lama, did not list Ms. Lama as a creditor on his schedule of liabilities, and did not otherwise provide her with notice of his bankruptcy case.

71.      On June 2, 2009, the Bankruptcy Court entered an order granting Defendant Shammi Malik a discharge under 11 U.S.C. § 727. Also on June 2, 2009, Mr. Malik's bankruptcy case was closed.

72.      Ms. Lama did not have knowledge or actual notice of Defendant Shammi Malik's bankruptcy case until a background check conducted by undersigned counsel in connection with the preparation of the instant Complaint revealed the fact of Defendant Shammi Malik's bankruptcy.

### FIRST CLAIM FOR RELIEF
Forced Labor under Trafficking Victims Protection Reauthorization Act ("TVPRA")
(18 U.S.C. §§ 1589, 1595)
(Against the Malik Defendants)

73.      Plaintiff incorporates each of the foregoing paragraphs by reference.

74.      Malik Defendants knowingly obtained Ms. Lama's labor and services by "abuse of law or legal process" and a pattern of abusive and coercive behavior designed to make Plaintiff believe that she would be harmed if she left their employ, in violation of the forced labor provisions of 18 U.S.C. § 1589.

75.      The Malik Defendants abused the legal process by maintaining possession of Ms.

13

Lama's passport for the duration of her employment and by repeatedly deceiving Ms. Lama about their procurement of a green card on her behalf.

76.    The Malik Defendants caused Ms. Lama to believe that if she did not perform such labor or services, she would suffer serious harm.

77.    Malik Defendants committed Plaintiff to a position of forced labor by consistently promising but in fact failing to pay her adequate wages between 1996 and 2008.

78.    Ms. Lama believed that she had no choice but to continue to work for Defendants, both in their home and for their business.

79.    As a result of Malik Defendants' actions, Plaintiff was forced to continue laboring for Defendants and suffered damages, including emotional distress, humiliation, embarrassment, and lost wages.  Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial, for Malik Defendants' wrongful conduct.

**SECOND CLAIM FOR RELIEF**
Sale into Involuntary Servitude under TVPRA
(18 U.S.C. §§ 1584, 1595)
(Against the Malik Defendants)

80.    Plaintiff incorporates each of the foregoing paragraphs by reference.

81.    Ms. Lama brings this claim for relief under the private cause of action created at 18 U.S.C. § 1584, which prohibits "knowingly and willfully hold[ing] to involuntary servitude . . . , any other person for any term, . . . ."

82.    Malik Defendants held Ms. Lama to involuntary servitude by first isolating her and then using legal coercion to force her to continue to labor for their benefit against her will.

83.    Ms. Lama was isolated from the outside world when she was forbidden from leaving Defendants' home unaccompanied, allowed only limited and supervised access to the

14

telephone, and barred from learning English.

84.     Ms. Lama's isolation made her vulnerable to the Malik Defendants' abuse; Malik Defendants exploited this vulnerability by refusing to pay her for her work, even though Plaintiff worked unceasingly in their household and assisted in their business.

85.     Malik Defendants sought to further secure Plaintiff's labor for their benefit by telling Ms. Lama that she needed a green card to remain in the United States, and on at least two occasions they told her they were paying tens of thousands of dollars to procure the green card on her behalf.

86.     Malik Defendants further abused the legal process by subsequently deceiving Ms. Lama about the issuance of her green card and withholding the green card for a period of almost three years after its issuance. As a result, Plaintiff remained in Defendants' employ.

87.     Through Malik Defendants' isolation and use of legal coercion, Plaintiff was held to involuntary servitude and suffered damages, including emotional distress, humiliation, embarrassment, and lost wages. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

**THIRD CLAIM FOR RELIEF**
Unlawful Conduct with Respect to Documents under the TVPRA
(18 U.S.C. §§ 1592, 1595)
(Against the Malik Defendants)

88.     Plaintiff incorporates each of the foregoing paragraphs by reference.

89.     Malik Defendants knowingly confiscated and maintained possession of Ms. Lama's passport throughout the period of her employment and concealed the fact that she had been granted a green card for nearly three years before finally giving Ms. Lama her green card for the first time, and doing so only after she had left their employ.

15

90.     Malik Defendants did so "to prevent or restrict or to attempt to prevent or restrict, without lawful authority, [Ms. Lama's] liberty to move or travel, in order to maintain [her] labor or services," in violation of 18 U.S.C. § 1592.

91.     Plaintiff suffered damages, including emotional distress, humiliation, embarrassment, and lost wages, as a result of Malik Defendants' conduct. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### Minimum Wage under Fair Labor Standards Act ("FLSA")
### (29 U.S.C. §§ 201 *et seq.*)
### (Against the Malik and Singh Defendants)

92.     Plaintiff incorporates each of the foregoing paragraphs by reference.

93.     Defendants violated the provisions of the FLSA, 29 U.S.C. §§ 201 *et seq.*, by failing to pay Ms. Lama, a live-in domestic worker, the greater of the federal or state minimum wage. 29 U.S.C. § 206(f); 29 C.F.R. § 552.102; 29 U.S.C. § 218(a).

94.     The federal minimum wage from October 1, 1996 to August 31, 1997 was $4.75 per hour. From September 1, 1997 to July 23, 2007, the wage was $5.15 per hour. Beginning on July 24, 2007, the hourly rate was $5.85 through to July 23, 2008, when the rate was raised to $6.55 per hour. From July 24, 2008 through the end of Ms. Lama's employment, the wage rate was $7.25 per hour. 29 U.S.C. § 206(a)(1).

95.     The New York minimum wage was $4.25 per hour as of April 1, 1991, $5.15 as of March 31, 2000, $6.00 as of January 1, 2005, $6.75 as of January 1, 2006, $7.15 as of January 1, 2007, and $7.25 as of July 24, 2009 through the end of Ms. Lama's employment. N.Y. Lab. Law § 652(1).

96.     Defendants were Plaintiff's employers within the meaning of the FLSA.

16

29 U.S.C. § 203(d).

97.     Defendants were aware or should have been aware of the requirement to pay Plaintiff the statutorily defined minimum wage for her labor.

98.     Defendants knowingly failed to pay Plaintiff the minimum wage for hours worked as required under federal law for her work in New York or at the Singh's residence in Arizona.

99.     Defendants' failure to pay the minimum wage was willful.

100.    As a result of Defendants' willful violations of the FLSA, under 29 U.S.C. § 216(b), Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, an additional equal amount in liquidated damages, and reasonable attorneys' fees and costs, including post-judgment interest, in amounts to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
Minimum Wage under New York State Labor Law ("N.Y. Labor Law")
(N.Y. Labor Law § 652)
(Against the Malik and Singh Defendants)

101.    Plaintiff incorporates each of the foregoing paragraphs by reference.

102.    Under N.Y. Labor Law § 652, Plaintiff was entitled to be paid a lawful minimum wage for all hours worked in Defendants' employ.

103.    Defendants were Plaintiff's employers within the meaning of the New York Labor Law, § 651.

104.    During the period of Plaintiff's employment with Defendants, the minimum wage in New York ranged from $5.15 to $7.25 per hour.  N.Y. Lab. Law § 652(1).

105.    Defendants were aware of or should have been aware of the requirement to pay Plaintiff the statutorily defined minimum wage for her labor.

106.    Defendants knowingly failed to compensate Plaintiff at the wage rate prescribed by law at the relevant times.

17

107.    Defendants' failure to pay Plaintiff the minimum wage was willful.

108.    As a result of Defendants' willful violations of the New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

### SIXTH CLAIM FOR RELIEF
Overtime under N.Y. Labor Law
(12 N.Y.C.R.R. § 142-3.2)
(Against the Malik and Singh Defendants)

109.    Plaintiff incorporates each of the foregoing paragraphs by reference.

110.    Under 12 N.Y.C.R.R. § 142-3.2, Plaintiff was entitled to time and a half of the minimum wage for all hours worked in excess of 44 hours per week.

111.    Defendants were Plaintiff's employers within the meaning of the New York Labor Law.  Defendants were therefore obligated to pay Ms. Lama time and a half of the New York State minimum wage, which ranged from $5.15 to $7.25 per hour while she was employed by Defendants.  N.Y. Lab. Law § 652(1).

112.    Defendants required Plaintiff to work approximately 14 hours per day, seven days a week, in both their home and business, but failed to pay Ms. Lama any overtime wages.

113.    Defendants were aware or should have been aware of the requirement to pay Plaintiff time and a half of the statutorily defined minimum wage for hours worked in excess of 44 hours per week.

114.    Defendants' failure to pay Plaintiff overtime wages was willful.

115.    As a result of Defendants' willful violations of the New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages,

18

liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
Spread of Hours under N.Y. Lab. Law
(12 N.Y.C.R.R. § 142-2.4)
(Against the Malik and Singh Defendants)

116.    Plaintiff incorporates each of the foregoing paragraphs by reference.

117.    Under 12 N.Y.C.R.R. § 142-2.4, Plaintiff should have received an extra hour of pay at the minimum wage for each day in which her "spread of hours" (the interval between the beginning and end of an employee's workday) exceeded ten hours.

118.    Defendants were Plaintiff's employers within the meaning of the New York Labor Law, § 652(1).

119.    During the period of Plaintiff's employment with Defendants, the minimum wage in New York ranged from $5.15 to $7.25 per hour.

120.    Defendants required Plaintiff's workday to begin at approximately 7:00 a.m. and end between approximately 10:00 p.m. and 11:00 p.m., which well exceeded ten hours per day. As a result, Plaintiff was eligible for an extra hour of pay at the New York minimum wage for every day of her employment with Defendants.

121.    Defendants were aware or should have been aware of the requirement to pay Plaintiff in accordance with the New York Labor Law.

122.    Defendants' failure to provide Plaintiff with such compensation was willful.

123.    As a result of Defendants' willful violations of New York Labor Law, §§ 109 and 663, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

19

### EIGHTH CLAIM FOR RELIEF
Frequency of Payments under N.Y. Lab. Law
(N.Y. Labor Law § 191)
(Against the Malik and Singh Defendants)

124.    Plaintiff incorporates each of the foregoing paragraphs by reference.

125.    Defendants were aware or should have been aware of the requirement to pay Plaintiff in accordance with the New York Labor Law.

126.    Defendants failed to pay Ms. Lama on at least a "weekly" basis, in violation of N.Y. Labor Law § 191.

127.    During the 12-year period of Ms. Lama's employment, Defendants made only a handful of grossly inadequate payments, and one additional payment to Ms. Lama after she left their employ.  The time between each payment clearly exceeded the one-week interval mandated by New York Labor Law § 191–1.

128.    The amount of time following her final payment also clearly exceeded the one-week interval mandated by New York Labor Law § 191–3.

129.    As a result of Defendants' willful violations of New York Labor Law § 191, Plaintiff is entitled to recover her unpaid damages, liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

### NINTH CLAIM FOR RELIEF
Conversion
(Against the Malik and Singh Defendants)

130.    Plaintiff incorporates each of the foregoing paragraphs by reference.

131.    The Malik Defendants unlawfully possessed Ms. Lama's passport and green card – her physical property – and intentionally exercised control over them, thereby interfering with Plaintiff's right of possession.

20

132.    The Malik Defendants unlawfully maintained possession of Ms. Lama's passport for the entire period of Ms. Lama's employ and unlawfully maintained possession of Ms. Lama's green card for almost three years.

133.    With these actions, the Malik Defendants exercised control over Ms. Lama's passport and green card in violation of her personal property rights.

134.    By actively denying that Ms. Lama's green card had been issued on at least one occasion, the Malik Defendants acted with willful and reckless disregard of Ms. Lama's rights.

135.    The Malik and Singh Defendants represented to Ms. Lama that she was earning a reasonable salary in return for her labor and that they were saving the earnings for her.

136.    The Malik Singh Defendants otherwise maintained exclusive control of the funds earned by Ms. Lama through her labor.

137.    The Malik and Singh Defendants exercised dominion over identifiable funds belonging to Ms. Lama, in violation of her rights to those funds.

138.    By denying Ms. Lama possession of her funds, the Malik and Singh Defendants acted with willful and reckless disregard of Ms. Lama's rights.

139.    Ms. Lama is entitled to compensatory and punitive damages for Defendants' willful and reckless disregard of her personal property rights.

### TENTH CLAIM FOR RELIEF
Fraudulent Misrepresentation
(Against the Malik Defendants)

140.    Plaintiff incorporates each of the foregoing paragraphs by reference.

141.    Malik Defendants fraudulently induced Plaintiff to remain in their employ by making false statements and falsely representing that they were saving her wages for her, keeping them safe until such time as she needed them or when the employment relationship ended.

21

142.    Malik Defendants misrepresented the fact of saving her wages for her in order to induce Ms. Lama to continue working.

143.    Ms. Lama reasonably relied on Malik Defendants' false statements and misrepresentations about her wages and savings and continued to work long hours for Defendants.

144.    Malik Defendants also fraudulently induced Ms. Lama to remain in their employ by first telling Ms. Lama that she needed a green card to remain legally in the country and then concealing the fact that her green card had arrived.

145.    Malik Defendants misrepresented the fact of her green card arriving in order to induce Ms. Lama to continue working for them for unlawfully low wages.

146.    Because she believed she needed a green card to comply with the law and that she had to remain in Malik Defendants' employ to receive her green card, she continued to labor for Malik Defendants' benefit for a period of almost three years after her green card had been issued. Ms. Lama reasonably relied on Malik Defendants' false statements and misrepresentations about the green card.

147.    Due to her limited English skills, her almost complete isolation from the outside world, and her long relationship of trusting the Defendants, Ms. Lama had not only no reason to suspect that the Defendants' statements about the issuance of her green card and the saving of her wages were false, but was unable until 2012 to learn that the Defendants had misled her.

148.    Ms. Lama is entitled to recover the damages she suffered as a result of Malik Defendants' fraudulent misrepresentations.

### ELEVENTH CLAIM FOR RELIEF
#### Unjust Enrichment/*Quantum Meruit*
#### (Against the Malik and Singh Defendants)

149.    Plaintiff incorporates each of the foregoing paragraphs by reference.

22

150.     Defendants were unjustly enriched when they accepted Ms. Lama's services, rendered in good faith and with the expectation of fair compensation, and failed to remunerate her for her labor.

151.     Ms. Lama worked for Defendants as a live-in domestic worker for twelve years in the United States.

152.     During that time, she worked up to approximately 14 hours per day, seven days per week, with only three short breaks for meals.

153.     Ms. Lama received only paltry compensation at highly irregular intervals.

154.     Defendants obtained substantial benefits at Ms. Lama's expense in the form of inexpensive household labor, although upon information and belief they were aware of the prevailing and minimum rates for such labor.

155.     The benefits that Defendants derived from Ms. Lama's labor came at enormous expense to Ms. Lama, who could have been fairly compensated for domestic work elsewhere and who was forced by the circumstances of her employment to make enormous personal sacrifices.

156.     Defendants created a power imbalance through isolation, manipulation, and other means described herein, in order to prevent Ms. Lama from either learning that she was entitled to a fair wage or challenging the circumstances of her employment.

157.     Fairness and good conscience mandate that Ms. Lama receive fair compensation for the benefit she conferred upon Defendants at her expense.

### TWELFTH CLAIM FOR RELIEF
Debts to Plaintiff Are Non-Dischargeable – Debts for Services Obtained By False Pretenses,
False Representation, or Actual Fraud
(11 U.S.C. § 523(a)(2)(A); 11 U.S.C. § 523(a)(3)(B))
(Against Defendant Shammi Malik)

158.     Plaintiff incorporates each of the foregoing paragraphs by reference.

23

159.   Defendant Shammi Malik did not list or schedule any debts owed to Ms. Lama and did not otherwise provide her with notice of his bankruptcy case in sufficient time to permit Ms. Lama to file a complaint seeking a determination of nondischargeability in that case.  In addition, Ms. Lama did not have actual knowledge of Mr. Malik's bankruptcy case in sufficient time to permit Ms. Lama to file a complaint seeking a determination of dischargeability in that case.  Therefore, this Court has the authority to enter the relief requested herein pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 523(a)(2), 11 U.S.C. § 523(a)(3)(B), and 11 U.S.C. § 523(c)(1). 11 U.S.C. § 523(a)(2)(A) provides that "a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt…for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

160.   Defendant Shammi Malik incurred a debt to Plaintiff through his fraudulent misrepresentations and fraud while acting as Plaintiff's employer by, among other things, (a) willfully and intentionally circumventing minimum wage, overtime, spread-of-hours, and frequency-of-payment laws; (b) willfully and intentionally retaining Plaintiff's earnings to which she was entitled; and (c) willfully and intentionally retaining Plaintiff's green card and passport.

161.   As explained in more detail herein, despite never having any intention to comply with labor laws or pay Plaintiff lawful wages, Mr. Malik represented to Plaintiff that he would pay her a fair wage and that he was holding her money in savings.  Mr. Malik made these statements to Plaintiff so that he could retain amounts lawfully owed to Plaintiff for his own personal use and to coerce Plaintiff to stay in his employ despite the fraud and unlawful conditions.  Justifiably relying on these misrepresentations and believing that the full and fair

amount of wages was being held in savings, Plaintiff continued to provide services for Mr. Malik for little or no payment.

162.   In addition, Defendant Shammi Malik incurred a debt to Plaintiff through misrepresentation and fraud when he willfully made false statements to Plaintiff Ms. Lama about needing a green card, and when he made further false statements to her in order to withhold her green card for several years and continue to benefit from Ms. Lama's labor.  With the intention of coercing Plaintiff to stay in Defendants' employ under unlawful conditions, Mr. Malik intentionally misrepresented to Plaintiff that her green card had not been issued and that she would receive her green card "soon."  Justifiably relying on these intentional misrepresentations, Plaintiff continued to provide services for Defendant Shammi Malik for little or no payment.

163.   As such, Defendant Shammi Malik's debts to Plaintiff arising from the causes of action asserted herein are nondischargeable pursuant to 11 U.S.C. § 523(a)(2).  Because Plaintiff did not receive or otherwise obtain timely notice of Mr. Malik's bankruptcy case, those claims were not discharged in Mr. Malik's bankruptcy case.

### THIRTEENTH CLAIM FOR RELIEF
Debts to Plaintiff Are Non-Dischargeable – Debts for Willful and Malicious Injury
(11 U.S.C. § 523(a)(6); 11 U.S.C. § 523(a)(3)(B))
(Against Defendant Shammi Malik)

164.   Plaintiff incorporates each of the foregoing paragraphs by reference.

165.   Defendant Shammi Malik did not list or schedule any debts owed to Ms. Lama and did not otherwise provide her with notice of his bankruptcy case in sufficient time to permit Ms. Lama to file a complaint seeking a determination of dischargeability in that case.  In addition, Ms. Lama did not have actual knowledge of Mr. Malik's bankruptcy case in sufficient time to permit Ms. Lama to file a complaint seeking a determination of nondischargeability in

25

that case. Therefore, this Court has authority to enter the relief requested herein pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 523(a)(6), 11 U.S.C. § 523(a)(3)(B), and 11 U.S.C. § 523(c)(1).

166.    11 U.S.C. § 523(a)(6) provides that "a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt … for willful and malicious injury by the debtor to another entity or to the property of another entity."

167.    Defendant Shammi Malik incurred a debt to Plaintiff for willful and malicious injury by, among other things, (a) intentionally or knowingly, through coercive actions, forcing Plaintiff to remain in his employment in violation of the laws prohibiting human trafficking, including forced labor and involuntary servitude; (b) intentionally or knowingly circumventing minimum wage, overtime, spread-of-hours, and frequency-of-payment laws; (c) intentionally or knowingly retaining Plaintiff's earnings to which she was entitled; and (d) intentionally or knowingly retaining Plaintiff's green card and passport in an effort to coerce her to stay in Defendants' employ.

168.    As explained in more detail herein, Defendant Malik's actions injured Plaintiff because she was forced into continued employment and deprived of compensation to which she was entitled. In addition, Mr. Malik willfully injured Plaintiff by maintaining possession of Ms. Lama's green card while simultaneously representing to Plaintiff that the green card had not been issued. Mr. Malik profited from his conduct because he was able to coerce Plaintiff into continued employment at substandard wages and divert amounts owed to Plaintiff for his own personal use.

169.    Defendant Shammi Malik's injury of Plaintiff was malicious because it was wrongful and without just cause or excuse. Mr. Malik's conduct was wrongful because it was

26

without lawful authority, in violation of applicable labor laws, and in violation of Ms. Lama's personal property rights.  No cause or excuse existed for Mr. Malik's injury of Plaintiff; instead, Mr. Malik's injurious acts were expressly prohibited by applicable laws.

170.    As such, Defendant Shammi Malik's debts to Plaintiff arising from the causes of action asserted herein are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  Because Plaintiff did not receive or otherwise obtain timely notice of Mr. Malik's bankruptcy case, those claims were not discharged in Mr. Malik's bankruptcy case.

## V.    JURY DEMAND

171.    Plaintiff requests a trial by jury.

## VI.    PRAYER

WHEREFORE, Plaintiff prays that this Court:

1.  Enter an order determining that Defendant Shammi Malik's debts arising from the causes of action identified herein were not discharged by Mr. Malik's bankruptcy;

2.  Enter judgment in favor of Plaintiff in each and every cause of action asserted in the Complaint;

3.  Award such damages as may be appropriate, including compensatory, punitive and liquidated damages;

4.  Award Plaintiff her attorneys' fees and costs;

5.  Award Plaintiff pre- and post-judgment interest; and

6.  Award any such other and further relief as the Court deems just and proper.

ActiveUS 116109705v.1

DATED this 25th day of September, 2013.

Respectfully submitted,

WilmerHale LLP

/s/ Lori A. Martin

Lori A. Martin
**Wilmer Cutler Pickering Hale and Dorr LLP**
7 WTC, 250 Greenwich Street
New York, NY  10007
212 230 8800 (phone)
212 230 8888 (fax)

Isley Markman
**Wilmer Cutler Pickering Hale and Dorr LLP**
1875 Pennsylvania Avenue
Washington, DC  20007
202 663 6000 (phone)
202 663 6363 (fax)

Amy Tai
**Urban Justice Center**
123 William Street, 16th Floor
New York, NY  10038
646 459 3026 (phone)
212 533 4598 (fax)

*Attorneys for Plaintiff*

ActiveUS 116109705v.1