Lori A. Martin
Chavi Keeney Nana
Larkin Reynolds
Andrew Sokol
WilmerHale LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Phone:  (212) 230-8800

Amy Tai
Urban Justice Center
123 William Street, 16th Floor
New York, NY  10038

*Attorneys for Plaintiff Urmila Lama*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| URMILA LAMA,<br><br>        Plaintiff,<br><br>   - against -<br><br>JOGINDER ("SHAMMI") MALIK,<br>NEERU MALIK, KAMALJIT ("MINU")<br>SINGH, and HARSIMRAN SINGH,<br><br>        Defendants. | Case No. 13-cv-02846-LDW-ARL |

## PLAINTIFF'S CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

PLAINTIFF'S ALLEGATIONS ..................................................................................4

ARGUMENT ...............................................................................................................6

I.   DEFENDANTS' MISLEADING CONDUCT EQUITABLY TOLLED THE STATUTE OF LIMITATIONS FOR PLAINTIFF'S CLAIMS UNDER THE FAIR LABOR STANDARDS ACT, THE NEW YORK LABOR LAW AND NEW YORK COMMON LAW ........................................................................................................7

II.  THE AMENDED COMPLAINT STATES A CLAIM FOR CONVERSION .................12

III. MS. LAMA HAS ADEQUATELY PLED FRAUD ........................................................13

IV.  PLAINTIFF HAS ADEQUATELY PLED HER WAGE AND HOUR CLAIMS ...........14

V.   DEFENDANT SHAMMI MALIK'S BANKRUPTCY FILING DID NOT DISCHARGE HIS DEBTS TO PLAINTIFF .........................................................................................14

CONCLUSION .............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anitora Travel, Inc. v. Lapian*,
    677 F. Supp. 209 (S.D.N.Y. 1988)........................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................7

*Bice v. Robb*,
    324 F. App'x 79 (2d Cir. 2009) ...........................................................................................7

*Campione v. Campione*,
    No. 12-CV-6028 ADS ETB, 2013 WL 1729002 (E.D.N.Y. Apr. 20, 2013).........................10

*Dillman v. Combustion Eng'g, Inc.*,
    784 F.2d 57 (2d Cir. 1986)...................................................................................................8

*Equitable Life Assurance Soc'y v. Alexander Grant & Co.*,
    627 F. Supp. 1023 (S.D.N.Y.1985)......................................................................................13

*Gee v. Hammond (In re Gee)*,
    173 B.R. 189 (B.A.P. 9th Cir. 1994)...................................................................................16

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985)...............................................................................................7

*Grogan v. Garner*,
    498 U.S. 279 (1991)............................................................................................................14

*Hernandez v. Attisha*,
    No. 09–CV–2257, 2010 WL 816160 (S.D. Cal. Mar. 5, 2010)............................................12

*In re Khafaga*,
    419 B.R. 539 (Bankr. E.D.N.Y. 2009).................................................................................16

*In re Kovler*,
    249 B.R. 238 (Bankr. S.D.N.Y. 2000).................................................................................16

*Kuper v. Spar (In re Spar)*,
    176 B.R. 321 (Bankr. S.D.N.Y. 1994).................................................................................16

*Leon v. Pelleh Poultry Corp.*,
    No. 10 Civ. 4719 (GAY), 2011 WL 4888861 (S.D.N.Y. Oct. 13, 2011).................6, 8, 10, 11

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
    711 F.3d 106 (2d Cir. 2013)................................................................................................14

*Magana v. Moore Dev. Corp. (In re Moore)*,
　　1 B.R. 52 (Bankr. C.D. Cal. 1979) .......................................................................16

*Manliguez v. Joseph*,
　　226 F. Supp. 2d 377 (E.D.N.Y. 2002) ..................................................................13

*Orr v. Marcella*,
　　463 B.R. 212 (Bankr. D. Conn. 2011) ..................................................................16

*S.E.C. v. Apolant*,
　　411 F. Supp. 2d 271 (E.D.N.Y. 2006) ..................................................................13

*Salahuddin v. Cuomo*,
　　861 F.2d 40 (2d Cir. 1988)....................................................................................7

*St. John's Univ. v. Bolton*,
　　757 F. Supp. 2d 144 (E.D.N.Y. 2010), *aff'd*, 450 F. App'x 81 (2d Cir. 2011)....................7, 8

*St. Laurent v. Ambrose (In re St. Laurent)*,
　　991 F.2d 672 (11th Cir. 1993) ..............................................................................15

*Statler v. Dell, Inc.*,
　　775 F. Supp. 2d 474 (E.D.N.Y. 2011) (Wexler, J.) ...............................................7

*United States v. Sabhnani*,
　　566 F. Supp. 2d 139 (E.D.N.Y. 2008), *vacated in part on other grounds by United
　　States v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010) .................................................11

*Veltri v. Bldg. Serv. 32B-J Pension Fund*,
　　393 F.3d 318 (2d Cir. 2004).............................................................................8, 9

*Voyatzoglou v. Hambley (In re Hambley)*,
　　329 B.R. 382 (Bankr. E.D.N.Y. 2005)..................................................................16

*Weizmann Inst. of Sci. v. Neschis*,
　　229 F. Supp. 2d 234 (S.D.N.Y. 2002)...................................................................10

*Yu G. Ke v. Saigon Grill, Inc.*,
　　595 F. Supp. 2d 240 (S.D.N.Y. 2008)...................................................................11

*Zamora v. Jacobs (In re Jacobs)*,
　　448 B.R. 453 (Bankr. N.D. Ill. 2011) ...................................................................16

*Zerilli-Edelglass v. New York City Transit Auth.*,
　　333 F.3d 74 (2d Cir. 2003)....................................................................................8

**STATE CASES**

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*,
    452 N.Y.S.2d 599 (1982) ......................................................................................12

*Simcuski v. Saeli*,
    44 N.Y.2d 442, 377 N.E.2d 713, 406 N.Y.S.2d 259 (N.Y. Ct. App. 1978) ............................9

**FEDERAL STATUTES**

11 U.S.C. § 523(a) ..........................................................................................3, 15, 16

**RULES**

Fed. R. Civ. P. 9(b) ..........................................................................................13

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 6

Plaintiff Urmila Lama ("Plaintiff" or "Ms. Lama") respectfully submits this Joint Memorandum of Law in Opposition to the Malik Defendants' Motion to Partially Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) and the Singh Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff worked nearly 12 years as a domestic worker for Defendants and their family members in the United States for little compensation. The hours were arduous, with workdays ranging from 7:00 a.m. until 10:00 p.m. or later, seven days per week.  The Malik Defendants represented that they would pay Plaintiff a fair wage for her services and that they were "saving her earnings for her."  (First Amended Complaint ("Compl.") ¶ 45 (Doc. 33).)  When the Malik Defendants paid her for her services in January or February 2009, the payment, along with a few other sporadic and small payments, amounted to approximately $0.41 per hour over the course of 12 years.  (Compl. ¶ 47.)  Although they plainly have not paid Plaintiff wages as required by law, Defendants contend that her claims for reasonable remuneration or compensation under the Fair Labor Standards Act, New York Labor Law, and the common law of the State of New York should be dismissed.[1]  Defendant Joginder ("Shammi") Malik further contends that his bankruptcy filing—which did not schedule debts to Ms. Lama in his voluntary petition and did not otherwise provide her with notice or actual knowledge of the bankruptcy filing—discharged his obligations to her.  Defendants' respective motions should be denied.

*First and foremost*, equitable doctrines toll the statutes of limitations on Ms. Lama's statutory and common law claims against the Defendants.  Under New York and federal

---

[1] Plaintiff also alleges in her complaint that the Malik Defendants violated the Trafficking Victims Protections Reauthorization Act ("TVPRA") of 2008 by holding her in forced labor and involuntary servitude, and withholding her passport and travel documents.  The Malik Defendants do not argue in their motion that such claims should be dismissed by the Court.

common law, the tolling of a statute of limitations is appropriate where the defendants' conduct concealed from the plaintiff the existence of a cause of action. Here, the Malik Defendants represented that they were saving Ms. Lama's earnings for her, and the meager sums that they had saved on her behalf were not apparent until January or February 2009, when they paid her what they asserted were her unpaid wages.

The Amended Complaint includes additional allegations sufficient to demonstrate that Defendants concealed Plaintiff's causes of action from her. The Malik and Singh Defendants did not provide Ms. Lama with notice of the Fair Labor Standards Act minimum wage protections. Defendants further isolated Ms. Lama such that she could not know about her rights under the labor laws. The Defendants did not permit her to leave the house unaccompanied. Defendants controlled her use of the telephone and her contact with the outside world. Plaintiff did not speak English.

The Malik Defendants also restricted her ability to leave their employment. In 2001, when Plaintiff expressed to the Malik Defendants that she wanted to return to Nepal upon the death of her mother, the Malik Defendants represented to her that she could not leave because she did not have a green card. The Malik Defendants told her that she would have to wait five years for her green card. After Ms. Lama's green card had been issued, the Malik Defendants concealed that information from her for more than two and a half years, in violation of federal anti-trafficking laws. The Amended Complaint includes allegations that Defendants actively prevented Ms. Lama from learning about her rights and caused the delay in bringing this action. These allegations, which are assumed to be true on a motion to dismiss, are sufficient to toll the statute of limitations because they demonstrate in total that she could not have learned that she had claims.

*Second*, the Defendants unlawfully possessed Plaintiff's property.  The Malik Defendants possessed her passport and green card and did not return them to her until January or February 2009.  The Malik Defendants represented that she was earning a reasonable salary  and that they were saving her earnings for her.  If these representations were truthful, the Amended Complaint alleges that there were identifiable funds earned by Ms. Lama, which the Defendants did not provide her.

*Third*, the Malik Defendants made false representations to Ms. Lama.  The speaker and representations are sufficiently alleged in the Amended Complaint.  The false statements include that the Defendants were saving Plaintiff's wages until she requested them or the employment relationship ended.  The Malik Defendants further misrepresented to Plaintiff that she could not leave without a green card.  They falsely told her that it had not been issued when it had, in fact, been issued almost three years earlier.  Plaintiff did not learn until the second half of 2009 that the Malik Defendants had misrepresented to her the date that her green card had been issued.

*Finally*, Defendant Shammi Malik's debts to Ms. Lama were not discharged by his bankruptcy filing.  Mr. Malik did not schedule his debts to Ms. Lama in his voluntary petition for relief and Ms. Lama did not otherwise have notice or actual knowledge of the case in time to file a claim.  Further, Mr. Malik's intentional misrepresentations to Ms. Lama regarding the wages he was allegedly saving on her behalf, and his deceit about the issuance of her green card in order to keep her in his employ, are exempted from the Bankruptcy Code's discharge for debts arising from "false pretenses, a false representation, or actual fraud . . ." 11 U.S.C. § 523(a)(2)(A).  His debts to Ms. Lama also fall within the ambit of § 523(a)(6), which is the exception for debts resulting from "willful and malicious injury,"  because Mr. Malik knowingly

failed to provide Ms. Lama with adequate compensation for her services, despite an ability to do so.

## PLAINTIFF'S ALLEGATIONS

In 1996, Defendants brought Ms. Lama to the United States to work as a servant for the Malik and Singh Defendants. Prior to Ms. Lama being Defendants' servant in the United States, Mr. Pritam Singh, father of Defendants Neeru Malik and Minu Singh, had gifted Ms. Lama services to the Singh Defendants as part of Ms. Singh's dowry.  (Compl. ¶ 12.)  Between 1991 and 1996, Plaintiff worked for the Defendants and their relatives in Nepal and India.  (Compl. ¶ 13.)  After being trafficked to the United States, Plaintiff worked for some or all of the Defendants for 12 years from 1996–2008.  (Compl. ¶ 7.)  During the entire period that Ms. Lama worked for the Defendants in the United States, they kept her passport and other travel documents.  (Compl. ¶ 16.)

Plaintiff's Working Conditions.  Upon her arrival in the United States, Ms. Lama worked for all of the Defendants at a home that they shared on Long Island.  (Compl. ¶ 18.)  She worked seven days per week and had no days off.  (Compl. ¶ 20.)  Her workday started at approximately 7:00 a.m. and ended between 10:00 p.m. and 11:00 p.m.  (Compl. ¶ 20.)  Her duties included cooking, cleaning, laundry and childcare for all of the Defendants.  (Compl. ¶ 21.)  She also provided services for the Malik Defendants' import-export business.  (Compl. ¶ 37.)  She was employed by the Malik Defendants between 1996 and 2008.  (Compl. ¶ 7.)  She was employed also by Singh Defendants from 1996 until 2000 (Compl. ¶ 10) and then at various  times after that period, including in 2002 (Compl. ¶ 40) and in 2006.  (Compl. ¶ 42.)

Plaintiff's Compensation and Deception About Her Ability To Leave Defendants' Employ.  As compensation for her services, the Malik Defendants represented that she would be paid a fair wage.  (Compl. ¶ 45).  The Malik Defendants also represented that they were saving

Ms. Lama's earnings for her.  (Compl. ¶ 45.)  Her total compensation, after 12 years of service, amount to approximately $0.41 per hour.  (Compl. ¶ 47.)  Plaintiff sought to return home to Nepal in 2001, when she learned that her mother had died.  (Compl. ¶ 54.)  At that time, the Malik Defendants represented to her that she could not return to Nepal without a green card. (Compl. ¶ 54.)  They further told her that she would need to wait five years for her green card to be approved.  (Compl. ¶ 54.)  Ms. Lama's green card was issued on August 14, 2006 (Compl. ¶ 57), but, in clear violation of federal anti-trafficking and other laws, the Malik Defendants concealed the issuance of her green card for more than two years.  (Compl. ¶¶ 58–59.)  Ms. Lama refused to return to the United States to work for Defendants in August 2008, while on a trip to Nepal with Defendants, when Defendant Shammi Malik informed her that the wages he had saved on her behalf totaled one million Indian rupees (approximately $20,350.00 U.S.). (Compl. ¶ 61–62.)  Even then, the Malik Defendants did not immediately pay Plaintiff this amount but continued to lie to her about the issuance of her green card.  They did not return Plaintiff's passport to her until January or February 2009.  (Compl. ¶ 63.)

    Concealment of Plaintiff's Causes of Action.  Defendants actively concealed Ms. Lama's causes of action from her.  None of the Defendants provided her with notice of the Fair Labor Standards Act minimum wage  protections.  As is the case in many trafficking situations, the Defendants further isolated her in ways that prevented her from learning that she had claims under federal and state law.  They did not permit her to leave the Defendants' house unaccompanied.  (Compl. ¶ 29.)  They controlled her access to the telephone and limited her contact with her family and others.  (Compl. ¶¶ 32–33.)  The Malik Defendants retained her passport and other travel documents and represented to her that she could not return to Nepal without a green card.  (Compl. ¶¶ 17, 35, 54.)  The Malik Defendants thereafter falsely told her

that her green card had not arrived, and continued that charade for more than two years after her

green card had, in fact, been issued, in order to compel her to continue working for them.

(Compl. ¶¶ 58–59.)  Ms. Lama did not speak English and the Defendants prohibited her from

learning English.  (Compl. ¶ 30, 55.)

Plaintiff learned about her rights after she ceased to work for the Malik Defendants.

While she did not know at the time that the deceit was unlawful, she learned in the fall of 2009

that the Malik Defendants had misrepresented the year in which her green card had been issued.

(Compl. ¶ 66.)  She met with counsel in July 2012 and learned about her right to receive lawfully

paid wages and to seek such unpaid wages.  (Compl. ¶ 67.)  She filed a claim with the New York

Department of Labor on September 9, 2012.  (Compl. ¶ 68.)

Defendant Shammi Malik's Bankruptcy Filing.  Defendant Shammi Malik filed for

bankruptcy in 2009.  (Compl. ¶ 69.)  He failed to schedule any debts owed to Ms. Lama, and did

not list her as a creditor on his schedule of liabilities. (Compl. ¶ 70.)  The Bankruptcy Court

closed his case in 2009.  (Comp. ¶ 71.)  Ms. Lama did not have notice of Defendant Shammi

Malik's bankruptcy case until counsel performed a background check on him in the preparation

of this action.  (Compl. ¶ 72.)

## ARGUMENT

On a Rule 12(b)(6) motion, the Court must accept as true the factual allegations in the

Complaint and draw all inferences in Plaintiff's favor.  *Leon v. Pelleh Poultry Corp.*, No. 10

Civ. 4719 (GAY), 2011 WL 4888861, at \*2 (S.D.N.Y. Oct. 13, 2011).[2]  Plaintiff need not do

more on a motion to dismiss than allege sufficient factual matter, accepted as true, "that is

---

[2]     The Defendants do not dispute the standard applicable on this motion.  *See* Memorandum of Law In Support of the Singh Defendants' Motions to Dismiss Pursuant to Rule 12(b)(6), dated October 9, 2013 ("Singh Mem.") at 7; The Malik Defendants' Memorandum of Law Supporting Motion To Partially Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6), dated October 9, 2013 ("Malik Mem.") at 3.

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should dismiss the Complaint only if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face.  *Ashcroft*, 556 U.S. at 678.  "Dismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Furthermore, because inferences are drawn in Plaintiff's favor, the New York state and federal courts disfavor resolution of equitable tolling until the conclusion of discovery.  *See Bice v. Robb*, 324 F. App'x 79, 81 (2d Cir. 2009) (vacating and remanding the district court's grant of motion to dismiss because the resolution of various issues of fact was necessary to determine whether the statute of limitations had run); *St. John's Univ. v. Bolton,* 757 F. Supp. 2d 144, 187–88 (E.D.N.Y. 2010) (denying defendant's motion to dismiss where plaintiffs had presented sufficient facts to toll the statute of limitations on conversion, unjust enrichment, and other claims), *aff'd*, 450 F. App'x 81 (2d Cir. 2011); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011) (rejecting defendant's statute-of-limitations-based affirmative defense at motion-to-dismiss stage, stating it was "simply too early to tell") (Wexler, J.).  Plaintiff has alleged facts sufficient to proceed with this action.

## I.   DEFENDANTS' MISLEADING CONDUCT EQUITABLY TOLLED THE STATUTE OF LIMITATIONS FOR PLAINTIFF'S CLAIMS UNDER THE FAIR LABOR STANDARDS ACT, THE NEW YORK LABOR LAW AND NEW YORK COMMON LAW

The Singh Defendants and the Malik Defendants separately argue that Plaintiff's claims under the common law, and for failure to pay the minimum wage and overtime in violation of the

Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), are time-barred. Singh Mem. at 9-11, 14-15; Malik Mem. at 3–4.  Well recognized doctrines of equitable tolling and/or estoppel, however, operate to extend the statute of limitations.  *See Leon*, 2011 WL 4888861, at *3 (finding that plaintiffs had alleged facts that would provide for equitable tolling under FLSA and NYLL where there was no indication that employer ever paid plaintiffs overtime; employer failed to post notices required by FLSA; and plaintiffs spoke little English and had little ability to learn of rights to overtime compensation under the FLSA and other legal rights); *St. John's Univ.* 757 F. Supp. 2d at 187 (denying defendant's motion to dismiss where plaintiffs had presented sufficient facts to toll the statute of limitations on conversion, unjust enrichment, and other claims).[3]

   "The essence of the doctrine [of equitable tolling] is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action" and "will be applied, for example, when an employer's misleading conduct is responsible for the employee's unawareness of his cause of action*."  Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986) (quotation marks omitted).  A statute of limitations is tolled where the plaintiff "acted with reasonable diligence during the time period she seeks to have tolled," and "the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003).  Circumstances are "extraordinary" if a reasonable person in the plaintiff's situation would not have been aware of the cause of action during the limitations period or if the plaintiff was "prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension*

---

[3]      Ms. Lama's NYLL claim was tolled on September 9, 2012, the day she filed her Department of Labor complaint.  (Compl. ¶ 68.)  NYLL § 663(3) (tolling statute of limitations from date employee files complaint with commissioner or commissioner  commences investigation).

*Fund*, 393 F.3d 318, 322 (2d Cir. 2004).  "The relevant question is . . . whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri*, 393 F.3d at 323.

Any assessment about the actions of a reasonable plaintiff is a fact-based determination, and whether plaintiff has discharged the responsibility of due diligence depends on all the relevant circumstances.  *Simcuski v. Saeli*, 44 N.Y.2d 442, 448–49 (N.Y. Ct. App. 1978). Defendants ignore the circumstances of Plaintiff's employment with them in their argument that Ms. Lama should have known long ago (i) the amounts to which she was entitled for her long hours, and (ii) that the Defendants were not saving her earnings as they had represented.  *See* Singh Mem. at 18.  The Defendants similarly ignore those circumstances in arguing that the statute of limitations began to run on "each payday" that Plaintiff did not receive her statutory wages.[4]

The circumstances of her employment, however, demonstrate that equitable tolling applies to Plaintiff's claims under the federal and state labor laws, and to her common law claims.  During the 12-year period that Ms. Lama was employed by the Defendants, she had no way of learning her rights under U.S. law.  The Defendants prohibited Ms. Lama from leaving their house unaccompanied by a family member (Compl. ¶¶ 28–29), retained possession of her passport and other travel documents (Compl. ¶ 35), restricted her communications with other people (Compl. ¶¶ 32-33), and represented to her that she could not leave their employment until she had a green card (Compl. ¶ 54). They required Ms. Lama to speak to them and their children in Hindi, and restricted her ability to learn to speak or read English.  (Compl. ¶ 30.) With no English skills and no knowledge of the U.S. legal system, it was not until 2012 that Ms.

---

[4]        *See* Singh Mem. at 9, 11; Malik Mem. at 3.

Lama first learned that federal and state laws protect workers like herself and that she had the ability to pursue those rights.  (Compl. ¶¶ 67–68.)

The Amended Complaint further alleges that the Defendants represented to Ms. Lama that they would pay her a reasonable wage (Compl. ¶ 45), and that they were saving her earnings for her (Compl. ¶ 45).  The first time that Plaintiff learned that the entirety of her compensation for 12 years of labor totaled $23,378, or approximately $0.41 per hour, was sometime after January or February 2009. (Compl. ¶ 61.)  The statute of limitations for Plaintiff's conversion and unjust enrichment claims did not begin to run until that time.  *See Campione v. Campione*, No. 12-CV-6028 ADS ETB, 2013 WL 1729002, at *4 (E.D.N.Y. Apr. 20, 2013) (statute of limitations for unjust enrichment accrues "only when the enrichment actually becomes unlawful"); *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002) (refusing to grant motion to dismiss based on statute of limitations for conversion and tortious interference because it was not possible or appropriate to determine Plaintiff due diligence at the motion to dismiss stage).

Thus, contrary to the Defendants' assertions, a reasonable person in Plaintiff's situation would not know that (i) she was entitled to minimum or overtime wages; or (ii) the Defendants were not saving her earnings as they had represented.[5]  On analogous facts, the district court in *Leon* equitably tolled the statute of limitations for "immigrant Latino manual workers routinely working longer than ten hours per day and forty hours per week," whose "ability to learn of this and other legal rights under the complex web of labor and social legislation that governs the modern workplace is not great." 2011 WL 4888861, at *3 (internal quotation marks omitted).

---

[5]     As alleged in the Amended Complaint, Defendants' prior practice had been to pay her in a lump sum payment when she returned home to Nepal.  (Compl. ¶ 14).

Similarly, in *Sabhnani*, the district court rejected the defendants' statute of limitations defense where the defendants had failed to provide plaintiffs with notice of their rights, the plaintiffs "could not speak English," and "were completely unaware of the FLSA or any of its minimum wage or overtime provisions." *United States v. Sabhnani*, 566 F. Supp. 2d 139, 146 (E.D.N.Y. 2008), *vacated in part on other grounds by United States v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010).

Here, too, the statute of limitations should be tolled for Plaintiff's wage and common law claims.  Defendants did not provide Ms. Lama with notice of the Fair Labor Standards Act minimum wage protections as required by law.  Their failure to disclose to her that she was entitled to minimum wage provisions concealed that Plaintiff had claims regarding the amount of her compensation.  The federal courts have tolled the statute of limitations on similar facts.  In *Leon*, for example, the district court held that the statute of limitations for plaintiffs' FLSA wage claims was tolled because defendants did not post the required notices, which "could conceivably have been the only way they would have become aware of their right to such compensation under the FLSA."  No. 10 Civ. 4719 (GAY), 2011 WL 4888861, *3 (S.D.N.Y. 2011); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 259–60 (S.D.N.Y. 2008).

Equitable tolling should be applied even after Plaintiff left her employment with the Defendants in August 2008 due to the extraordinary circumstances she endured while working for the Defendants.  Upon returning to the United States in 2009, while she was no longer employed by the Defendants, Ms. Lama still did not have the language skills or ability to access the U.S. legal system.  Ms. Lama continued to suffer from the isolation and coercion caused by Defendants, which impacted her ability to seek legal assistance in fear of reliving and having to retell her experience in open court.  In 2012, however, she was connected to an attorney who

explained to her legal rights and remedies.  (Compl. ¶ 67.)  Defendants should not be able to

escape liability for their exploitation of Ms. Lama's vulnerability and their active concealment of

her rights.  Precisely because of such circumstances, equitable tolling doctrines exist.  *Cf.*

*Hernandez v. Attisha*, No. 09–CV–2257, 2010 WL 816160 (S.D. Cal. Mar. 5, 2010).

In sum, the Defendants' representations that they were saving Ms. Lama's wages on her

behalf, the control they exercised over her communications with the outside world, and their

non-disclosure of statutory minimum wages, are sufficient to toll the statute of limitations for

plaintiff's common law and statutory claims.

## II.     THE AMENDED COMPLAINT STATES A CLAIM FOR CONVERSION

The Malik and the Singh Defendants argue that the mere obligation to pay wages is

insufficient to state a claim for conversion.  Singh Mem. at 12-14; Malik Mem. at 6.  Here,

however, the Amended Complaint refers to identifiable wages that the Malik Defendants

represented were saved on her behalf.  (Compl. ¶¶ 45, 50.)  At the pleading stage, these

allegations are sufficient to support a claim that there is an identifiable fund of wages held for the

benefit of Plaintiff and over which Defendants exercised dominion or control.  *See Peters Griffin*

*Woodward, Inc. v. WCSC, Inc.*, 452 N.Y.S.2d 599, 600 (1982) ("[m]oney, if specifically

identifiable, may also be the subject of a conversion action").

The Malik Defendants separately argue that the conversion claim with respect to Ms.

Lama's green card should be dismissed because Ms. Lama did not have possession of the green

card before the Malik Defendants exercised control over it.  Malik Mem. at 6.  Here again, the

Amended Complaint includes allegations sufficient to state a claim for conversion.  The U.S.

government issued the green card to Ms. Lama.  (Compl. ¶ 57.)  The fact that the Malik

Defendants seized the card from the mail, rather than providing it to her as addressed, does not

- 12 -

defeat the claim. *See Manliguez v. Joseph,* 226 F. Supp. 2d 377, 388 (E.D.N.Y. 2002) (concluding that employee's allegations that defendants had taken mail addressed to her were sufficient to state claim for conversion).

### III.     MS. LAMA HAS ADEQUATELY PLED FRAUD

The Malik Defendants contend that the fraud claim should be dismissed against them because it provides inadequate particulars with respect to their false statements to Ms. Lama. Malik Mem. at 6-7.  Rule 9(b) of the Federal Rules of Civil Procedure requires that Plaintiff (1) specify statements that she contends were fraudulent; (2) identify the speaker; (3) state where and when statements were made; and (4) explain why statements were fraudulent.  *S.E.C. v. Apolant*, 411 F. Supp. 2d 271 (E.D.N.Y. 2006).  The rule is "intended to ensure that each defendant is provided with reasonable detail concerning the nature of his particular involvement in the alleged fraud." *Equitable Life Assurance Soc'y v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1029 (S.D.N.Y. 1985).

The Amended Complaint satisfies this obligation.  It describes a specific conversation with Ms. Neeru Malik about the wages Ms. Lama was earning (Compl. ¶ 48), and conversations with Mr. Shammi Malik regarding payment of a sum certain for the first six years of her employment, with wage increases thereafter.  (Compl. ¶ 49.)  The Amended Complaint details communications with Mr. Malik in his car between 2002 and 2006 (Compl. ¶ 50), in which Mr. Malik represented that Ms. Lama had no current need for her wages because she was living with the Defendants at that time.  The Malik Defendants did not pay her the reasonable wages that they previously represented she would be paid.  (Compl. ¶ 47.)  These allegations are sufficient to provide the Malik Defendants with "adequate information to allow [them] to frame a response." *Anitora Travel, Inc. v. Lapian*, 677 F. Supp. 209, 215 (S.D.N.Y. 1988).

- 13 -

## IV.    PLAINTIFF HAS ADEQUATELY PLED HER WAGE AND HOUR CLAIMS

The Malik Defendants urge this Court to dismiss Plaintiff's wage and hour claims on the grounds that she has not "specified either the frequency or the duration of the hours she worked without overtime compensation or minimum wage compensation."  Malik Mem. at 6.  Here again, the allegations in the Amended Complaint satisfy Plaintiff's pleading obligation.  The Amended Complaint alleges that Ms. Lama "worked seven days per week and had no days off. Her workday started at approximately 7:00 a.m. and ended between approximately 10:00 p.m. and 11:00 p.m., with three short breaks for meals."  (Compl. ¶ 20.)  The Amended Complaint further details that she came to the United States to work for Malik Defendants ("on or around September 22, 1996," (Compl. ¶ 16) and worked continuously in their employment until August 2008.  (Compl. ¶ 59–62.)

These detailed allegations are in sharp contrast to such cases as *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  *See* Malik Mem. at 5.  In that case, plaintiff failed to allege hours over 40 hours per week.  Ms. Lama's 15+ hour days, seven days a week, for more than 12 years, provides ample itemization of her wage and hour claims.

## V.    DEFENDANT SHAMMI MALIK'S BANKRUPTCY FILING DID NOT DISCHARGE HIS DEBTS TO PLAINTIFF

Defendant Shammi Malik urges the Court to dismiss Plaintiff's claims on the grounds that his bankruptcy filing in 2009 discharged his debts to Ms. Lama.  Malik Mem. at 7-8.  Mr. Malik does not satisfy the standard for bankruptcy discharge of debts to Ms. Lama.  Under the Bankruptcy Code, discharge of debt, and the opportunity for a completely unencumbered new beginning, is limited to the "honest but unfortunate debtor."  *Grogan v. Garner*, 498 U.S. 279 (1991), quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).  In order to make sure that *only* honest debtors benefit from the benefits of discharge, Congress "evidently concluded that

the creditors' interest in recovering full payment of debts in [certain] categories outweighed the debtors' interest in a complete fresh start." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993).

Section 523(a)(3)(B) of the Bankruptcy Code provides that debts of the kind specified in §§ 523(a)(2), (4), or (6) are not discharged if such debts were neither listed nor scheduled by the debtor, with the name of the creditor to whom the debt is owed, in time to permit the creditor to timely file a proof of claim and timely request for a determination of dischargeability of such debt, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.  11 U.S.C. § 523(a)(3)(B).  Mr. Malik failed to schedule debts to Ms. Lama in his voluntary petition for relief.  Plaintiff did not have notice or actual knowledge of his bankruptcy filing in time to file a claim.  (Compl. ¶ 72.)  Mr. Malik cites no authority for the proposition that his mere assertion that he was ignorant as to his obligation to pay a household employee a statutory wage excused him from his obligation to list that employee as a creditor. *See* Malik Mem. at 7.

Mr. Malik's bankruptcy filing did not discharge his obligations to Ms. Lama for the additional reason that his actions were fraudulent, willful and malicious.  Debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial conditions" fall within § 523(a)(2)(A), and debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" fall within § 523(a)(6).

The Complaint details Mr. Malik's false statements to Plaintiff for the purpose of inducing her to continue working for him.  The statements included representations that the

Malik Defendants were saving her earnings for her (Compl. ¶ 50), and that she could not leave the Defendants' employ until she obtained a green card (Compl. ¶ 54). During the period in which the Malik Defendants represented that they were saving Plaintiff's earnings on her behalf, they "bought expensive cars for themselves and gave extravagant gifts to their family members." Compl. ¶ 53. These are the kinds of representations that the bankruptcy courts treat as willful and malicious within the meaning of § 523(a). *See, e.g., Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453 (Bankr. N.D. Ill. 2011) (debtor's representations were false representations under Section 523(a)(2)(A) where he represented to employee that [her] paychecks would be honored to induce [her] to continue working); *Kuper v. Spar (In re Spar)*, 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994); *In Re Kovler*, No. 98-5227, 2000 WL 726505 (Bankr. S.D.N.Y. 2000) (finding debts obtained by false pretenses not discharged); *In re Khafaga*, 419 B.R. 539, 2009 WL 4269441 (Bankr. E.D.N.Y. 2009) (allegations that debtor failed to pay and other acts of concealment and fraud adequately alleged willful and malicious conduct under 523(a)(6).

These false representations render Mr. Malik's obligations to Plaintiff non-dischargeable under § 523(a)(2)(A) and distinguish Mr. Malik's conduct from the mere failure to pay wages in *Voyatzoglou v. Hambley*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005) and *Orr v. Marcella*, 463 B.R. 212 (Bankr. D. Conn. 2011). *See* Malik Mem. at 8.

Finally, Plaintiff's trafficking (Counts One, Two and Three) and fraud claims (Counts Nine and Ten) are exempt from discharge under §523(a)(6). *Gee v. Hammond (In re Gee)*, 173 B.R. 189, 192 (B.A.P. 9th Cir. 1994); *Magana v. Moore Development Corp. (In re Moore)*, 1 B.R. 52, 54 (Bankr. C.D. Cal. 1979) (holding that Thirteenth Amendment violations are not dischargeable under Section 523(a)(6)). Mr. Malik's plea for discharge does not address this statutory limitation. *See* Malik Mem. at 7–8.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the motions

to dismiss by the Malik and Singh Defendants.

Dated:  October 30, 2013       WILMER CUTLER PICKERING
                            HALE AND DORR LLP

                     By:/s/_____

                       Lori A. Martin
                      Chavi Keeney Nana
                      Larkin Reynolds
                      Andrew Sokol
                      7 World Trade Center
                      250 Greenwich Street
                      New York, NY 10007
                      Tel.: (212) 230-8800
                      Fax: (212) 230-8888
                      Email: Lori.Martin@wilmerhale.com

                      URBAN JUSTICE CENTER
                      Amy Tai
                      123 William Street, 16th Floor
                      New York, NY 10038
                      Tel: (646) 459-3026
                      Fax: (212) 533-4598

                      *Attorneys for Plaintiff Urmila Lama*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 31st day of October, 2013, a true and correct copy of

Plaintiff's Corrected Memorandum Of Law In Opposition To Defendants' Motions To Dismiss

was electronically served on counsel for Defendants by e-mail and U.S.P.S.

By: /s/ Larkin Reynolds

Larkin Reynolds
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 295-6512
Fax: (212) 230-8888
Email: larkin.reynolds@wilmerhale.com

*Counsel for Plaintiff Urmila Lama*
