FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  NOV 03 2014  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
URMILA LAMA,

        Plaintiff,

  -against-

JOGINDER ("SHAMMI") MALIK, NEERU
MALIK, KAMALJIT ("MINU") SINGH, and
HARSIMARAN,

        Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 13-2846

(Wexler, J.)

APPEARANCES:

WILMER CUTLER PICKERING HALE AND DORR LLP
By:   Lori A. Martin, Esq.
       Chavi Keeney Nana, Esq.
       Larkin Reynolds, Esq.
       Andrew Sokol, Esq.
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Attorneys for Plaintiff Urmila Lama

URBAN JUSTICE CENTER
By:   Amy Tai, Esq.
123 William Street, 16th Floor
New York, NY 10038
Attorneys for Plaintiff Urmila Lama

MEYERS FRIED-GRODIN, LLP
By:   Jonathan Meyers, Esq.
350 Fifth Avenue, 59th Floor
New York, NY 10018
Attorneys for Defendants Joginder Malik and Neeru Malik

WEXLER, District Judge:

       Plaintiff Urmila Lama ("Lama" or "Plaintiff") brings this action under the Trafficking

Victims Protection Reauthorization Act ("TVPRA") of 2008, 18 U.S.C. § 1595, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the New York McKinney's Labor Law, § 190, *et. seq.* ("NYLL") seeking compensation for work she performed and injuries she allegedly suffered while working as a domestic worker for the Defendants Joginder ("Shammi") Malik ("Joginder" or "Shammi"), Neeru Malik ("Neeru") (collectively, "Malik Defendants" or "Defendants"), Kamaljit Singh and Harsimaran Singh ("Singh Defendants"). Plaintiff also brings state law claims for conversion, fraud and unjust enrichment, and seeks a determination that Plaintiff's claims were not discharged by the bankruptcy of Joginder Malik in 2009. Before the Court is the Malik Defendants' partial motion to dismiss Plaintiff's claims under the FLSA, the NYLL, for unjust enrichment, conversion and fraud, and that her claims are dischargeable. For the reasons that follow, Defendants' motion is denied in its entirety.[1]

## BACKGROUND

I. Factual Background

A. Plaintiff's Complaint

The following is a summary of the facts alleged in Plaintiff's complaint: in 1991 in Nepal and India, she began working as a housekeeper for Mr. Pritam Singh, the father of Defendant Neeru Malik and Defendant Minu Singh, who are sisters. In 1992, Pritam Singh gifted Ms. Lama to the Singh Defendants as part of Ms. Singh's dowry. See First Amended Complaint ("AC"), ¶ 12-13. From 1991 through 1996, Ms. Lama worked for the Defendants and their families in Nepal and received room and board. She did not receive regular monetary compensation for her services, but did on occasion when she requested to be paid when she was returning home to visit

---

[1] The present motion does not involve the Singh Defendants.

with her family. AC, ¶ 14.

In 1996, Defendants obtained a visa for Plaintiff and brought her to the United States to work for them. Plaintiff arrived in the United States in September 1996. AC, ¶ 15-16. Mr. Pritam Singh filled out Plaintiff's immigration papers and maintained control of Plaintiff's passport, giving it to the Malik Defendants upon arrival in the United States. AC, ¶ 16-17. Plaintiff did not get her passport back until 2009. AC, ¶ 17.

Starting in September 1996, Plaintiff lived with and worked for all four Defendants in their home in Glen Cove, New York. Also living in the home were the minor children of the Defendants. AC, ¶ 18-19. According to the amended complaint, Plaintiff worked seven (7) days per week, with no days off, working from 7:00am until 10:00 or 11:00 pm, with three (3) short breaks for meals. AC, ¶ 20. She cooked, cleaned, did laundry, and provided childcare. AC, ¶ 21. This type of work continued for the Malik Defendants after the Singh Defendants moved out of the house in 2000. AC, ¶ 24.

Plaintiff was "isolated and dependant on" the Defendants "for virtually every aspect of her life." AC, ¶ 28. She was not allowed the leave the house unaccompanied, and did not speak or read English. She did not know any other people in the United States other than Defendants and had only "sporadic and fleeting" contact with her family in Nepal. AC, ¶ 28-31. From 2002 through 2006, Plaintiff also assisted the Malik Defendants with their import-export business in addition to the work she performed for the household. AC, ¶ 37-39.

Throughout the 12-year period of her employment in the United States, the Defendants only paid Plaintiff "if and when they wanted." AC, ¶ 44. The Malik Defendants represented to Plaintiff that she would be paid a fair wage and that they were saving her earnings for her. AC, ¶

45. To the extent she was paid, it was never directly to her, but paid directly to her family members in Nepal. AC, ¶ 46. In total, Plaintiff received a total of approximately 2 million Nepalese rupees (approximately $24,378) for her nearly 12 years of employment with the Defendants, which calculates to approximately $0.41 per hour. AC, ¶ 47.

In 1997, Defendant Neeru Malik told Plaintiff she would be paid like other Malik Defendant employees, and on several other occasions, Defendant Sammi Malik informed Plaintiff she would be paid a certain sum for her first six years, and receive a raise after that time. AC, ¶ 48-49. On various occasions from 2002 through 2006 when Plaintiff asked about her compensation, Defendant Shammi Malik represented that he was saving her compensation for her and she did not need it immediately since she lived with them and her expenses were covered. AC, ¶ 50-51.

In 2001, Plaintiff wanted to go home to Nepal since her mother had died there, but the Malik Defendants told her that since 5 years had passed since she first came to the U.S., said she needed a green card to go home. AC, ¶ 54. Unbeknownst to her, the Malik Defendants applied for a green card for Plaintiff of their own volition, which was issued on August 14, 2006. AC, ¶ 56-57. Despite her regular inquiries over the status of her green card from 2006 through 2008, the Malik Defendants consistently told Plaintiff it had not arrived, and Plaintiff continued to work for them. AC, ¶ 58-59.

In August of 2008, Plaintiff traveled to Nepal with the Malik Defendants, and was told that her green card had still not arrived, but that she was traveling with a "special travel document" that permitted her to travel, with the Defendants maintaining possession of her travel documents. AC, ¶ 60. Once in Nepal, Plaintiff asked for her compensation and was told she

would be paid one million Indian rupees. This sum, in addition to the sporadic payments made to her family over the years, amounted to $0.41 per hour. AC, ¶ 61. Plaintiff then refused to return to the United States with the Defendants. AC, ¶ 62. Six months later, in January or February 2009, Plaintiff received a check for the one million Indian rupees, as well as her passport and green card. AC, ¶ 63.

In the fall of 2009, while applying for a social security card, Plaintiff learned for the first time that her green card had been issued in 2006, not 2009 as the Malik Defendants had claimed. AC, ¶ 66. In July 2012, Plaintiff met with a lawyer for the first time concerning her rights to recover unpaid wages, and in September 2012, Plaintiff filed a complaint with the New York State Department of Labor, which investigation is continuing. AC, ¶ 66-68.

In February 2009, Defendant Sammi Malik filed for bankruptcy under Chapter 7 in the Eastern District of New York. AC, ¶ 69. His schedule of debts did not include any money owed to Plaintiff, nor was Plaintiff provided notice of his bankruptcy filing. On June 2, 2009, the bankruptcy court ordered a discharge of Sammi Malik's bankruptcy and the case was closed. Plaintiff discovered the bankruptcy when her attorneys performed a background check while preparing the complaint in the instant action. AC, ¶ 70-72.

This action was filed on May 14, 2014. Docket entry ("DE"), 1. Plaintiff's complaint alleges thirteen cause of action. Plaintiff brings three claims under the TVPRA, claiming Defendants engaged in forced labor, sale into involuntary servitude, and unlawful conduct with respect to documents concerning Plaintiff's green card. Plaintiff also alleges claims for failure to pay adequate compensation in violation of the FLSA and the NYLL, conversion for interfering with Plaintiff's possession of her passport, her green card and her earnings, fraudulent

misrepresentation, unjust enrichment, and a declaration that the debts due Plaintiff are non-dischargeable by Defendant Sammi Malik's bankruptcy.

### B. Defendants' Motion

The Malik Defendants move to partially dismiss Plaintiff's action. They claim Plaintiff's claims under the FLSA, NYLL, for unjust enrichment and for conversion are at least partially time-barred, that the wage and hours claims, and claims for conversion and fraud are inadequately pled, and that the claims against Sammi Malik are discharged by his bankruptcy. For the reasons that follow, Defendants' motion is denied in its entirety.

## DISCUSSION

### I. Standards on Motion to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of Plaintiff. Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although heightened factual pleading is not the new standard, Twombley holds that a "formulaic recitation of cause of action's elements will not do... Factual allegations must be enough to raise a right to relief above the speculative level." Twombley, at 555. A pleading

need not contain "'detailed factual allegations,'" but must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, at 678, quoting Twombley, at 555 (other citations omitted). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, at 679. Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, at 679. A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, at 678-679.

II.   Equitable Tolling

The thrust of Defendants' motion is that Plaintiff's complaint, which was filed on May 14, 2013, approximately five years after she left the Defendants' employ and which seeks recovery for acts that occurred as long as 12 years ago, are time-barred. In response, Plaintiff argues that in light of Defendants' conduct, which essentially kept her from learning of and asserting her rights, the statute of limitations on her claims should be equitably tolled.

A statute of limitations may be subject to equitable tolling to prevent unfairness to a plaintiff who is late in filing through no fault of her own. Gonzalez v. Hasty, 651 F.3d 318, 322 (2d Cir. 2011). It is "an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." Gonzalez v. Hasty, 651 F.3d 318, 322 (2d Cir. 2011) (quoting Veltri v. Bldg. Serv. 32B–J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004) (holding an applicable statute of limitations tolled while a prisoner exhausts his administrative remedies)).

"To qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented [her] from filing [her] claim on time, and that [s]he acted with reasonable diligence throughout the period [s]he seeks to toll." Parada v. Banco Industrial De Venezuela, C.A., 753 F.3d 62, 71 (2d Cir. 2014) (citing Phillips v. Generations Family Health Ctr., 723 F.3d 144, 150 (2d Cir. 2013) (quotation marks and alterations omitted)).

Equitable tolling applies if defendant's fraudulent conduct causes plaintiff's lack of knowledge of a cause of action. De Sole v. Knoedler Gallery, LLC, 974 F.Supp.2d 274, 318 (S.D.N.Y. 2013) (citing Pearl v. City of Long Beach, 296 F.3d 76, 82 (2d Cir. 2002)); Statler v. Dell, Inc., 775 F.Supp.2d 474, 482 (E.D.N.Y. 2011) (citations omitted). When equitable tolling applies, the statute of limitations begins to run when "'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.'" Statler, 775 F.Supp.2d at 482 (quoting Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985)). To benefit from the tolling, the plaintiff must show he was unable, despite due diligence, to discover facts that would allow him to bring his claim in a timely manner or that defendant's actions induced plaintiff to refrain from commencing a timely action. Id., at 482-483. Thus, the toll applies when the plaintiff acts with reasonable diligence and it is justified by "extraordinary circumstances." Id.; Parada, 753 F.3d at 71.

1. The FLSA and the NYLL Claims

The statute of limitations for a claim under the FLSA is two years, and three years in the case of a willful violation. 29 U.S.C. § 255(a). The statute of limitations for a claim under the

NYLL is six years. N.Y. McKinney's Labor Law, § 198(3). Plaintiff alleges that she first learned of her rights when she met with a lawyer in July 2012. AC, ¶ 67. She filed her complaint with the New York State Department of Labor on September 9, 2012, and filed this complaint was filed on May 14, 2013.[2] The question here is whether Plaintiff's claims should be equitably tolled until she learned of her rights in July 2012 when she first met with a lawyer.

Other courts in this circuit have addressed this issue is similar contexts. In United States v. Sabhnani, 566 F.Supp.2d 139 (E.D.N.Y. 2008), vacated in part on other grounds, 599 F.3d 215 (2d Cir. 2010), the court found that the statute of limitations for FLSA restitution claims in a criminal case of forced labor and servitude was equitably tolled where the claimants could not speak English and were "completely unaware" of FLSA provisions. Id., 566 F.Supp.2d at 146. Yet, in Uupadhyay v. Sethi, 2012 WL 3100601 (S.D.N.Y. 2012), in a case involving a domestic worker, the court found that the plaintiff's FLSA, NYLL and other claims were not equitably tolled where plaintiff was not credible and through due diligence, could have learned the amount of her earnings that were deposited in her account and the extent of her legal rights. The court there found that no "exceptional circumstances" existed to warrant tolling since she was free to leave her employer's house, she associated with people who were well-versed in worker's rights, and she was given information about her pay and her rights from defendants. Id., 2012 WL 3100601, at *4-5.

Here, Plaintiff alleges that the Defendants isolated her, restricted her communications with others, did not encourage her to learn to speak or read English, retained her passport and

---

[2]Defendants do not dispute Plaintiff's assertion that her claim under the NYLL was tolled when she filed her complaint with the New York State Department of Labor on September 9, 2012. See Pl. Mem., at 8, n.3; NYLL § 198(3).

green card (which she did not know she had), did not educate her as to her rights, and represented that they were saving her compensation for her benefit when they did not. As a result of this misconduct, the various statutes of limitation should be tolled. See Plaintiff's Memorandum in Opposition ("Pl. Mem."), at 9-10. Plaintiff alleges that she did not learn of her rights until she met with an attorney in July 2012.

Defendants argue that this is disingenuous, and that clearly Plaintiff knew she was entitled to compensation because she even alleges that she asked the Maliks for her pay on various occasions. In addition, Defendants urge that since Plaintiff had "the power to quit her job" -- evidenced by the fact that she did in 2008 -- she cannot argue that she was treated as a modern-day slave. Defendants' Reply Memorandum ("Def. Reply Mem."), at 3-4.

The Court notes that merely knowing one has a general entitlement to compensation for work performed is very different from awareness of a legal right to minimum wage and overtime compensation under the FLSA or the NYLL. See United States v. Sabhnani, 566 F.Supp.2d at 146 (statute of limitation tolled where plaintiffs "were completely unaware of the FLSA"); Leon v. Pelleh Poultry Corp., 2011 WL 4888861, *3 (S.D.N.Y. 2011) (possible basis for tolling since the ability of non-English speaking immigrant manual worker plaintiffs to learn of their rights "'under the complex web'" of modern day workplace legislation "'is not great'") (citations omitted); but see Uupadhyay v. Sethi, 2012 WL 3100601, * 3 (no tolling where plaintiff associated with a group that educates it members on wage and hour rights, had friends who had brought wage and hour lawsuits, and appeared in a workers' rights documentary). According to the pleadings here, while Plaintiff may have understood she was entitled to be paid while working for Defendants, it is not clear from the pleading that she was sufficiently aware of her

-10-

rights prior to meeting with counsel in July 2012.[3]

Furthermore, Defendants' argument that Plaintiff "had the power to quit her job" since she did so in 2008 glosses over the allegations of the complaint indicating that Plaintiff was in Nepal, her home country, having been brought back there by the Defendants when she quit. Elsewhere in the complaint, Plaintiff alleges that while working for the Defendants in New York, she did not leave the house unaccompanied, she did not socialize or know other people in the United States other than Defendants, she had limited communication with her family back in Nepal, and she did not speak English. Plaintiff's ability to "quit" once back in her home country where she had family and spoke the language is not indicative of the "power to quit" that she did or did not have when she was living with and working for the Defendants in New York.

The Court finds that there is an insufficient record to determine whether Plaintiff's claims are equitably tolled. Whether tolling applies depends on what and when the Plaintiff knew or should have known, and whether "exceptional circumstances" or fraud by the Defendants prevented her to learning her rights. Since this is a motion to dismiss where the Court is bound to the pleadings, there is an inadequate factual record to determine whether equitable tolling is warranted here. Therefore, the Court denies Defendants' motion to dismiss on this basis, without prejudice to renew either by a summary judgment motion or at the time of trial. As stated by this Court previously, "it is simply too early to tell" if equitable tolling applies. Statler, 775

---

[3]Plaintiff also argues that her claims should be tolled because Defendants failed to post notices of an employee's rights under the FLSA in the workplace. The Court notes that this failure, by itself, does not necessarily justify equitable tolling. See Ramos v. Platt, 2014 WL 3639194, *4 (S.D.N.Y. 2014) (listing cases). The Court also notes that the present case is distinguishable from a situation involving a typical "workplace" where signs are posted. Instead, the Court's ruling here turns on the factual issues discussed here.

F.Supp.2d at 483. See also Matysiak v. Spectrum Services Co., Inc., 2014 WL 3819206, *3 (D.Conn. 2014) (issue of equitable estoppel to be decided on a fuller factual record); Moreno v. 194 East Second Street LLC, 2013 WL 55954, *3 (S.D.N.Y. 2013) (motion for summary judgment denied and hearing held where factual record inadequate to determine if equitable tolling is warranted); Michalow v. East Coast Restoration & Consulting Corp., 2012 WL 6962199, *4 (E.D.N.Y. 2012) (whether equitable tolling is warranted should be reviewed after discovery) (citations omitted); cf. Weizmann Institute of Science v. Neschis, 229 F.Supp.2d 234, 252 (S.D.N.Y. 2002) ("not possible or appropriate" to determine whether the plaintiff was sufficiently diligent that the defendant should be estopped from raising a statute of limitations defense based on the pleadings and "only a skeletal record") (quoting Simcuski v. Saeli, 44 N.Y.2d 442, 451, 377 N.E.2d 713, 717, 406 N.Y.S.2d 259, 264 (1978)).

2. Unjust Enrichment Claim

The statute of limitations for a claim for unjust enrichment is six years. New York Civil Practice Laws and Rules ("CPLR"), § 213. For the reasons discussed above, since the record presently before the Court is inadequate to determine what and when the Plaintiff knew or should have known she had a claim for unjust enrichment, and whether "exceptional circumstances" exist to warrant equitable tolling, the Court denies Defendants' motion to dismiss this claim on statute of limitations grounds without prejudice to renew following discovery or at the time of trial.

3. Conversion Claim

The statute of limitations for a conversion claim is three years. CPLR, § 214(3); Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex., 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342

(1995). It runs from "'the date the conversion takes place and not from discovery or the exercise of diligence to discover.'" Rye Police Ass'n v. Chittenden, 43 Misc.3d 471, 980 N.Y.S.2d 728, 732 (West.S.Ct. 2014) (citing Vigilant Ins., 87 N.Y.2d at 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121). Plaintiff's complaint alleges that Defendants "unlawfully possessed [Plaintiff's] passport and green card," "maintained exclusive control of the funds earned" by Plaintiff, and denied her "possession of her funds." AC, ¶¶ 131, 136, 138. The Court denies without prejudice Defendants' motion to dismiss this claim as untimely, without prejudice to renew following the development of a more adequate factual record to determine whether equitable tolling applies. Cf. Daisley v. FedEx Ground Package System, Inc., 376 Fed.Appx. 80, 82 (2d Cir. 2010) (affirming dismissal of conversion claim where plaintiff did not provide basis of equitable tolling).[4]

III.     Whether Plaintiff's Claims are Sufficiently Pleaded

1. Wage and Hours Claims

Defendants argue that Plaintiff's complaint contains "conclusory, wide-spanning allegation[s]" and "blanket and sweeping statements" that do not specify the frequency or duration of the hours worked to support a wage claim. The Court disagrees. The amended complaint states that Plaintiff began working for the Defendants in the United States in September 1996. AC, ¶ 15-16. She worked seven (7) days per week, with no days off, working

---

[4]The Court notes that in her opposition papers, Plaintiff states that the statute of limitations on her conversion "did not begin to run" until she received her compensation check, passport and green card in January or February 2009. See Pl. Mem., at 10. In that case, the three-year statute on Plaintiff's conversion claim ran in January or February 2012. Yet, as discussed above, the Court declines to dismiss the conversion claim at this time pending a more adequate record to determine whether equitable tolling applies to the claim.

from 7:00am until 10:00 or 11:00 pm, with three (3) short breaks for meals. AC, ¶ 20. Plaintiff no longer worked in the United States once she returned to Nepal with the Defendants in August 2008. AC, ¶ 60. For her work over those twelve years, Plaintiff was paid one million Indian rupees, which in addition to the sporadic payments made to her family over the years, amounted to $0.41 per hour. AC, ¶ 61. The Court finds that these allegations meet the pleading standards of the Second Circuit for these types of claims. Lundy v. Catholic Health System of Long Island, 711 F.3d 106, 114 (2d Cir. 2013) (to state an FLSA overtime claim, a plaintiff must allege 40 hours of work in a particular workweek and uncompensated time in excess of the 40 hours). Therefore, Defendants' motion to dismiss on this basis is denied.

2. Conversion Claim

Defendants also argue that Plaintiff has failed to sufficiently plead a claim for conversion since Plaintiff never had "possession, ownership or control" over her green card or the money due her and therefore she fails to state a claim for conversion. Def. Mem., at 6. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso, Tex., 87 N.Y.2d 36, 44, 660 N.E.2d 1121, 1126, 637 N.Y.S.2d 342, 347 (1995) (citations and internal quotation marks omitted). To state a claim for conversion, a plaintiff must show "(1) plaintiff's legal ownership or immediate superior right of possession to property; and (2) defendant's unauthorized interference with plaintiff's ownership or possession of such property." Weizmann Institute of Science v. Neschis, 229 F.Supp.2d 234, 253 (S.D.N.Y. 2002)

(citing Republic of Liberia v. Bickford, 787 F.Supp. 397, 402 (S.D.N.Y. 1992)).[5] This right of possession may include a future right to possession. Weizmann, 229 F.Supp.2d at 253 (citing Section 243 of the Restatement (Second) of Torts, Goebel v. Clark, 242 A.D. 408, 275 N.Y.S. 43 (4th Dep't 1934) and the New York Pattern Jury Instruction 3:10).

Here, while Plaintiff may not have had actual possession of her passport, green card or compensation before the Malik Defendants allegedly converted them, Plaintiff certainly had a present interest in her own travel documents, and an expectation of a future right of possession in those items. The Court finds that Plaintiff has sufficiently stated a claim for conversion.

### 3. Fraud Claim

Defendants claim that Plaintiff's fraud claim is not pleaded with the specificity required by Fed.R.Civ.P., Rule 9(b), claiming Plaintiff has not specified the particular fraudulent statements, who made them, where and when they were made, or explain why the statements were fraudulent. Def. Mem., at 6-7. The amended complaint identifies various fraudulent statements, including a conversation between Plaintiff and Defendant Neeru Malik in 1997 in the Malik's bedroom, wherein Neeru represented to Plaintiff that she would be paid $500 like the other Malik employees were. AC, ¶ 48. The complaint also alleges that "on several occassions," Defendant Shammi Malik represented to Plaintiff that she would be paid a certain sum for the first six years and receive a raise thereafter. AC, ¶ 49. Plaintiff also alleges that "on several occasions" from 2002 through 2006, while driving in the car from Long Island to the office in

---

[5]To the extent Plaintiff's conversion seeks money owed for the work she performed as opposed to property, "a plaintiff must have either possessed the money or had a right to immediate possession of the money." Barnet v. Drawbridge Special Opportunities Fund LP, 2014 WL 4393320, *21 (S.D.N.Y. 2014) (citations omitted).

Manhattan, Shammi Malik represented to Plaintiff that he was saving her pay for her, and that she did not need it right away since she lived with the Defendants and her expenses were covered. AC, ¶ 50. Finally, Plaintiff alleges that Defendants repeatedly misrepresented to her that her green card had not arrived, when in fact it had. AC, ¶ 57-60.

Fraud claims are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b), which is satisfied when the complaint specifies "the time, place, speaker, and content of the alleged misrepresentations," how the misrepresentations were fraudulent, and the details that "'give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013) (quoting Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)).

The Court finds that the allegations here sufficiently state a fraud claim. Plaintiff identifies the statements that were made, who made them and where. Plaintiff also sufficiently alleges that Defendant Shammi Malik knew the statements concerning Plaintiff's green card were false when they were made since she subsequently learned that the card had already been issued. She also adequately alleges a "strong inference" that Defendants had the intent to defraud her regarding her compensation since the payment she ultimately received was not in accordance to the statements Defendants made. The Court makes no determination on the truth of Plaintiff's allegations, but merely finds that the complaint meets the "heightened pleading standard" of Rule 9(b). Therefore, Defendants' motion to dismiss the claim on this basis is denied.

IV.   Whether Plaintiff's Claims Against Sammi Malik are Discharged by His Bankruptcy

Defendant Sammi (Joginder) Malik moves to dismiss Plaintiff's claims against him, asserting that they were discharged by his bankruptcy, filed in February 2009 and from which he

received a discharge on June 2, 2009. AC, ¶ 69, 71. Plaintiff argues that since she was not on Defendant's schedule of debts and had no notice of the bankruptcy action, (AC, ¶ 70), her claims are not discharged.

11 U.S.C. § 523 outlines the exceptions to a bankruptcy discharge. Plaintiff's complaint alleges two claims that the debts due are her are non-dischargeable. One claim is that the debt is covered by § 523(a)(2)(A), which pertains to money obtained through false pretenses, a false representation or actual fraud; and the other is that the debt is covered by § 523(a)(6), which applies to a willful and malicious injury by the debtor to another entity or property of another entity. Plaintiff alleges that both are excepted under § 523(a)(3)(B), which concerns debts that are not listed on the schedule of debts. See AC, Twelve and Thirteen Claims, ¶¶ 158-170.

There is no dispute here that Plaintiff was not listed in Defendant Shammi's schedule of debts. Defendant argues that is because he did not know of any debts owed to Plaintiff, particularly because she did not file her complaint until years later. Def. Mem., at 7-8. Defendant urges that Plaintiff should not be rewarded for sitting on her rights, and that Plaintiff's claims do not sound in fraud, nor are they sufficiently "willful and malicious" within the meaning of § 523(a)(2)(A) or § 523(a)(6) to permit the exceptions to discharge to apply. Id.

Generally, once a bankruptcy is concluded, "all debts that arose before the date of the order for relief" are discharged. In re Medaglia, 52 F.3d 451, 453 (2d Cir. 1995) (citing 11 U.S.C. § 727(b)). Exceptions to this general rule are outlined in § 523 of the Code and include

"debts 'to the extent obtained by ... false pretenses, a false representation, or actual fraud,[6]....' and debts 'for willful and malicious injury by the debtor to another entity or to the property of another entity.'" Id. (citing 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6)). Section §523(a)(3)(B) states that "such debts are not dischargeable if the debtor's failure to list them precludes 'timely filing of a proof of claim and timely request for a determination of dischargeability of such debt[s] ... unless ... creditor[s] had notice or actual knowledge of the case in time for such timely filing and request....'" Id. (citations omitted; emphasis in original); see also In re Massa, 187 F.3d 292, 296 (2d Cir. 1999) (a debt is not discharged if it was not scheduled and the creditor lacked notice or actual knowledge of the case).

According to the complaint, Plaintiff was in Nepal in January or February 2009, which is the time that Defendant Shammi filed his bankruptcy case in February 2009. Defendants do not dispute that she was not listed on Shammi's schedule of debts, and Plaintiff's complaint states that she had no knowledge of the bankruptcy until her attorneys discovered it while preparing the complaint in this action. AC, ¶ 72. Since Plaintiff was not on the schedule of debts and she alleges that she had no actual notice or knowledge of the case, Defendant's motion to dismiss Plaintiff's claims as dischargeable by the bankruptcy is denied. See In re Massa, 187 F.3d 292, 296 (2d Cir. 1999); Shu Lun Wu v. May Kwan Si, Inc., 508 B.R. 606, 614 (S.D.N.Y. 2014)

---

[6]As stated by the U.S. Supreme Court, "[t]he most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of 'any debt' respecting 'money, property, services, or ... credit' that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud." Cohen v. de la Cruz, 523 U.S. 213, 218, 118 S.Ct. 1212, 1216 (1998) (quoting Field v. Mans, 516 U.S. 59, 61, 64, 116 S.Ct. 437, 439, 441, 133 L.Ed.2d 351 (1995)). Continuing, the Court noted that "[t]he various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress 'that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start.'" Id., at 222, 1218 (quoting Grogan v. Garner, 498 U.S. 279, 287, 111 S.Ct. 654, 659-660, 112 L.Ed.2d 755 (1991)).

(motion to dismiss plaintiffs' claims of FLSA and NYLL violations as discharged by the bankruptcy denied where plaintiffs are not listed on the debtor's schedule nor had sufficient notice of the bankruptcy).[7]

## CONCLUSION

For the reasons stated above, Defendants' partial motion to dismiss Plaintiff's FLSA, NYLL, unjust enrichment, conversion, fraud, claims, and the claim that Plaintiff's claims against Defendant Shammi Malik are dischargeable by his bankruptcy, is denied in its entirety.

SO ORDERED.

s/ Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
November 3, 2014

---

[7] By letter briefs at DE 30, 31 and 32, the parties addressed the question of whether the dischargeability of Plaintiff's claims should be decided by this Court or the bankruptcy court. The Court notes that despite this order, Defendant is entitled to make a motion under 11 U.S.C. § 350(b) to reopen his bankruptcy case and seek a ruling from that court, however, in that event, no delay of the action will be permitted.