Jonathan Meyers, Esq.
**MEYERS FRIED-GRODIN, LLP**
Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10018
(646) 596-1292
JMeyers@MfgLegal.com
Attorneys for Defendants Joginder Malik and Neeru Malik

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

URMILA LAMA,

Plaintiff,

vs.

JOGINDER ("SHAMMI") MALIK and NEERU MALIK,

Defendants.

Case No. 13-civ-2846 (LDW)(ARL)

**DEFENDANTS' MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(a)**

Of Counsel and on the Brief:
Jonathan Meyers, Esq.

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ....................1

FACTS ....................3

LEGAL ARGUMENT ....................3

I. PLAINTIFF'S HUMAN TRAFFICKING CLAIMS MUST BE DISMISSED ....................3

A. Plaintiff's Trafficking Claims Are Completely Time-Barred....................3

1. Plaintiff's TVPRA Claims Were Filed Out of Time....................4

2. There Is No Basis for Equitable Tolling ....................4

B. Plaintiff's Other Wage-Based Claims Are Partially Time-Barred....................6

II. PLAINTIFF'S WAGE & HOUR RELATED CLAIMS MUST BE DISMISSED ....................8

A. Plaintiff's FLSA Claim Is Completely Time-Barred....................8

B. Plaintiff's Other Wage-Related Claims Are Partially Time-Barred....................9

1. Plaintiff's NYLL Wage Claims Must Be Partially Dismissed as Untimely ....................9

2. Plaintiff's Unjust Enrichment Claim Must Be Partially Dismissed as Untimely ....................9

3. Plaintiff's Fraud Wage Claims Must Be Partially Dismissed as Untimely....................9

4. Plaintiff's Conversion Claim Must Be Partially Dismissed as Untimely....................9

5. There Is No Basis for Tolling ....................10

C. Plaintiff Lacks a Factual Basis to Pursue Her Wage & Hour Related Claims ....................10

1. Plaintiff Is Unable to Provide Competent Evidence of the Hours She Worked or the Money She Is Allegedly Owed....................10

2. Plaintiff's Lack of Credibility Justifies Dismissal....................12

3. The Domestic Worker's Exemption Bars Plaintiff's Wage & Hour Claims ....................13

D. Plaintiff's Common Law Claims Must Be Dismissed ....................13

CONCLUSION..........14

# TABLE OF AUTHORITIES

PAGE

***CASES***

*Abarca v. Little*, -- F. Supp. 3d --,
2014 WL 4722499 (D. Minn. September 22, 2014) ..... 3,4

*DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*,
770 F.Supp.2d 497 (E.D.N.Y. 2011)(JFB) ..... 10-11

*Garcia v. AKR Corp.*, No. 11-cv-6184 (RRM),
2013 U.S. Dist. LEXIS 26610 at * 6-7 (E.D.N.Y. Jan. 10, 2013), adopted and entered by *Garcia v. AKR Corp.*, 2013 U.S. Dist. LEXIS 25201 (E.D.N.Y. Feb. 23, 2013) ..... 9

*Gelfman Int'l Enterprises v. Miami Sun Int'l Corp.*,
No. 05-cv-3826 (CPS)(RML), 2009 U.S. Dist. LEXIS 64274 at *19-20 n. 15 (E.D.N.Y. June 27, 2009) ..... 9

*Grochowski v. Phoenix Construction*,
318 F.3d 80 (2nd Cir. 2003) ..... 12

*Holaway v. Stratasys, Inc.*,
Case No. 14-1146 (8th Cir. November 6, 2014) ..... 12

*Jeffreys v. City of New York*,
426 F.3d 549, (2d Cir. 2005) ..... 12

*Kerzer v. Kingly Mfg.*,
156 F.3d 396 (2d Cir. 1998) ..... 3

*Lundy v. Catholic Health Sys. of Long Island*,
711 F.3d 106 (2d Cir. 2013) ..... 10-11

*Motley v. United States*,
295 F.3d 820 (8th Cir. 2002) ..... 4

*Shannon v. N.Y.C. Transit Auth.*,
332 F.3d 95 (2d Cir. 2003) ..... 3

*Smith v. Family Aides, Inc.*,
2007 NY Slip Op 30890(U) (N.Y. Sup. Ct. March 15, 2007) ..... 13

*Smith v. McGinnis*,
208 F.3d 13 (2d Cir. 2000) ..... 4

*Upadhyay v. Sethi*,
848 F.Supp.2d 439 (S.D.N.Y. January 25, 2012)........................................13

*Upadhyay v. Sethi*,
2012 WL 3100601 (S.D.N.Y., July 30, 2012)..............................................5

*Velez v. Sanchez*,
754 F.Supp.2d 488, (E.D.N.Y.2010) *aff'ed in part and rev'ed in part (on other grounds)*,
693 F.3d 308 (2nd Cir., 2012)..............................................................6,8

*Vigilant Insurance Co. of America v. Housing Auth. of the City of El Paso, Texas*,
87 N.Y.2d 36 (1995)...........................................................................9

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000)....................................................................3

*Zerilli-Edelglass v. New York City Transit Auth.*,
333 F.3d 74 (2d Cir.2003).....................................................................4

## *STATUTES*

Trafficking Victims Protection Reauthorization Act of 2008..............................3, 4, 6, 8

29 U.S.C. § 255(a)( F.L.S.A.)................................................................8

NYLL § 663(3)................................................................................49

N.Y. C.P.L.R. § 213...........................................................................9

## *RULES*

Fed.R.Civ.P. 56(c).............................................................................3

**PRELIMINARY STATEMENT**

Defendants Joginder Malik and Neeru Malik ("Defendants" or the "Maliks") submit this Memorandum of Law supporting their Summary Judgment Motion. Plaintiff's Complaint alleges that Defendants kept her as a slave and that she was not properly paid. Her allegations are extremely serious. They are also utterly unfounded. Plaintiff, in her deposition testimony, retreated so far from her overly-sensationalized pleadings, that there are no issues of material fact to warrant a trial.

A. **Plaintiff's Human Trafficking Claims Fail**

Plaintiff's claims under the Human Trafficking Act fail because: (i) they are time-barred; and (ii) nothing that Plaintiff experienced falls within the scope of the statute. The statute was enacted to prevent modern slavery and the horrors associated with it (such as abduction, torture and imprisonment).

Plaintiff voluntarily came to live to the United States and to work and live with the Maliks. By her own deposition testimony, Plaintiff was never mistreated, nor she was hurt, nor threatened. To the contrary, Plaintiff testified that she liked her arrangement with the Maliks and she cannot recall a time that she wanted to leave.

By her own testimony, Plaintiff was not prevented from communicating with others or from leaving the Maliks' house. The Maliks provided her with a phone. Moreover, Plaintiff went out, by herself, to the beach and shopping. Additionally, Plaintiff took trips in which she was not accompanied by Defendants. Most significantly, Plaintiff even visited the Nepali Embassy (accompanied only by her own relative) and did not take that opportunity to "escape" or even make the slightest complaint to Nepalese authorities about the Maliks.

Indeed, there was nothing to "escape" from. Plaintiff testified that she felt like part of the Maliks' family. That conclusion makes perfect sense, given Plaintiff's testimony that the Maliks provided her with high quality food, clothing, and medical care – and even gifts such as gold.

Furthermore, Plaintiff went on vacations that she described as "fun" and a "good time" to places like Disney World and Las Vegas (where she enjoyed gambling in casinos).

Ultimately, Mr. Malik's company sponsored Plaintiff for a green card. A green card is the ultimate ticket to independence for an alien living in the United States. There is no reason why an alleged "slave master" would purchase a ticket to freedom for a purported slave. This is simply not something that Defendants would do if they wanted to subjugate Plaintiff. Instead, this only serves as evidence of Defendants providing a deeply valuable benefit to a treasured, decades-long friend.

In sum, Plaintiff's human trafficking claim is totally non-sensical. That Plaintiff is persisting with this claim, serves only to diminish the legitimate concerns of *bona fide* victims of modern slavery.

**B. Plaintiff's Wage & Hour Related Claims Fail**

First, Plaintiff's claim under the Fair Labor Standards Act must be dismissed because it was filed years past the limitations period. There is no basis here for tolling the statute of limitations, especially since discovery has revealed that: (i) the Maliks did not prevent Plaintiff from filing suit; and (ii) Plaintiff testified that she knew she could pursue her legal rights in 2009 (shortly after she quit working for the Maliks in 2008). She simply failed to act diligently.

Second, Plaintiff's wage-based claims under the New York Labor Law for unjust enrichment and conversion that accrued before May 14, 2007 must dismissed because the limitations period is six years.

Third, the domestic worker's exemption was in effect during all of Plaintiff's employment. Accordingly, all of her overtime claims must be dismissed.

Fourth, all of Plaintiff's wage and hour claims must be dismissed because Plaintiff has been unable (both in her pleadings and in discovery) to: (i) identify the hours that she worked, but was not paid for, or (ii) provide a calculation of her damages. Additionally, she and the information provided on her behalf lack credibility. Consequently, her additional assorted "tack on" common law claims fail too.

## FACTS

Defendants hereby incorporate the facts set forth in their Rule 56.1 Statement, which is submitted in conjunction with this memorandum.

## LEGAL ARGUMENT

Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). To avoid dismissal, the opposing party must specific facts showing there is a genuine issue of material fact for trial. *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Unsupported allegations do not create a material issue of fact. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). For the reasons set forth below, Plaintiff's claims are untenable and do not justify a trial. They must be dismissed.

### I. PLAINTIFF'S HUMAN TRAFFICKING CLAIMS MUST BE DISMISSED

### A. Plaintiff's Trafficking Claims Are Completely Time-Barred

Plaintiff's claims under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") were filed outside the limitations period. During the time that Plaintiff lived with the Maliks, the TVPRA's statute of limitations was four years. On December 23, 2008, Congress amended the TVPRA to increase the statute of limitations to ten years. The amendment, containing the lengthened limitations period, was enacted after Plaintiff left the Maliks in August 2008.

The increased limitations period cannot be applied retroactively. *Abarca v. Little*, -- F. Supp. 3d --, 2014 WL 4722499 at *6-9 (D. Minn. September 22, 2014)(internal citations omitted). Thus, the four year limitations period applies to this case. Consequently, Plaintiff's trafficking claims are time-barred.

*1. **Plaintiff's TVPRA Claims Were Filed Out of Time***

The applicable statute of limitations is four years. *Abarca v. Little*, -- F. Supp. 3d --, 2014 WL 4722499 at *6-9 (D. Minn. September 22, 2014). Here, Plaintiff left the Maliks in August 2008, but did not file suit until May 14, 2013. Ds' Statement of Facts at ¶¶ 52 & 61.[1] This is a span of time well in excess of four years. Accordingly, Plaintiff filed too late, and her trafficking claims must be dismissed.

*2. **There Is No Basis for Equitable Tolling***

There is no basis here to equitably toll the application of the statute of limitations. "Equitable tolling applies only in the rare and exceptional circumstances [in which] exceptional circumstances prevented [plaintiff] from filing . . . on time." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); and *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir.2003)(accord). In human trafficking cases, equitable tolling is likewise only applied where: (i) plaintiff pursues her rights diligently; and (ii) exceptional circumstances prevented plaintiff from filing. *Abarca v. Little*, -- F. Supp. 3d --, 2014 WL 4722499 at *10-11 (D. Minn. September 22, 2014) citing *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002), which held: "Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling is an exception to the rule, and should therefore be used only in exceptional circumstances."

As evidenced by the record evidence, no such exceptional circumstances are present here. The Maliks did not do anything to prevent Plaintiff from filing on time. Indeed, by Plaintiff's own testimony, she: (i) was never mistreated in any way; (ii) was never prevented from leaving; (iii) was never hurt or threatened, (iv) did not think the Maliks would do something bad to her if she tried to leave; (v) was not prevented from communicating with others (and had her own phone line); (vi) was never spoken to in a way that she didn't like; (vii) liked the living arrangements she had with the Maliks;

[1] "Ds' Statement of Facts" refers to the concurrently filed Defendants' Rule 56.1 Statement.

(viii) felt like she was part of the Malik family; and (ix) cannot recall ever wanting to leave. Ds' Statement of Facts at ¶¶ 6-9 & 17-25.

Next, the Plaintiff (an adult in her mid-thirties and forties at all relevant times), was not diligent in pursuing her rights. Ds' Statement of Facts at ¶ 3. Indeed, within a year of Plaintiff leaving the Maliks (in 2008), Plaintiff was specifically advised (in 2009) about pursuing her legal rights by a social justice organization. In fact, Plaintiff was so bold that a social justice organization selected for her to be on a panel to speak about her experiences with the Maliks. Ds' Statement of Facts at ¶ 59.

Plaintiff waited years to file suit because she was considering conflicting advice from friends and because she was thinking about it. Ds' Statement of Facts at ¶¶ 59-60. This is not a legitimate justification for Plaintiff's delay in filing, and equitable tolling cannot apply.

Ultimately, this case is similar to *Upadhyay v. Sethi*, 2012 WL 3100601 (S.D.N.Y., July 30, 2012), in which the court refused to employ equitable tolling because the plaintiff had access to her financial records (and could see what she was or was not receiving), she had freedom of movement, and she lacked credibility because the "self-portrait" she alleged (as being incapable and vulnerable) was not consistent with the record facts. In the case at hand, Plaintiff – by her own testimony – knew about her own financial situation because, among other things she: (i) instructed Mr. Malik to send her pay to her relatives in Nepal (which he did for her); and (ii) always knew that the Maliks owed her money. Ds' Statement of Facts at ¶¶ 38 & 55. Additionally, Plaintiff's testimony reflect a substantial freedom of movement and communication, and – more broadly – reveals that the "portrait" painted of Plaintiff (as cowed prisoner) in her Complaint is fabricated. Thus, just like *Upadhyay*, Plaintiff is not entitled to equitable tolling.

**B. Plaintiff's Trafficking Claims Are Meritless and Do Not Warrant a Trial**

An instructive summary judgment decision, on a TVPRA claim, issued by a Court sitting in the Eastern District of New York is *Velez v. Sanchez*, 754 F.Supp.2d 488, 495–500 (E.D.N.Y.2010) *aff'ed in part and rev'ed in part (on other grounds)*, 693 F.3d 308 (2nd Cir., 2012). In a case with similar factual allegations, the Court dismissed the plaintiff's TVPRA claims on a summary judgment motion. There, the Court laid out the framework for a TVPRA claim:

> For purposes of § 1595, "forced labor" is labor obtained through one of four means: (1) force or the threat of force; (2) serious harm or threat of serious harm; (3) abuse or threatened abuse of law or the legal process; and (4) "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]" 18 U.S.C. § 1589. Since "human trafficking" is defined as "knowingly recruit[ing]... any person" for forced labor, *see id.* § 1590, it, too, requires the same showing of means.

In *Velez*, the Court found that because plaintiff lacked serious evidence required to support this kind of very serious claim, the Complaint had to be dismissed. *Velez,* 754 F.Supp.2d at 498-499. Here too, Plaintiff's claims must be dismissed, because – according to her own testimony – the Maliks did not take part in any of the elements of "forced labor."

To begin with, did not "knowingly recruit" Plaintiff. Instead, Plaintiff came to live with the Maliks voluntarily. Ds' Statement of Facts at ¶ 4. In fact, she wanted to come so badly, that she pleaded to get there faster. Ds' Statement of Facts at ¶ 5.

Next, the Maliks did not use force or harm, threats of force or harm, nor did they abuse or threaten to abuse legal process to hold Plaintiff as some kind of slave in captivity. To the contrary, Plaintiff testified that she:

- was never mistreated in any way;
- was never prevented from leaving;
- was never hurt or threatened;

- did not think the Maliks would do something bad to her if she tried to leave;
- was not prevented from communicating with others (and had her own phone line)
- was never spoken to in a way that she didn't like;
- liked the living arrangements she had with the Maliks;
- had good clothes, food, medical care, and a room with a bed;
- received gifts (including gold on several holidays);
- was taken on vacations in which she had "fun," a "good time," and gambled;
- felt like she was part of the Malik family; and
- cannot recall ever wanting to leave.

Ds' Statement of Facts at ¶¶ 6-9; 16-25; 29-34 & 37.

Moreover, the only emotional distress Plaintiff experienced was her allegedly not receiving all the money she believed was owed to her. Ds' Statement of Facts at ¶ 26.

Also significant from Plaintiff's testimony are facts she identifies which run contrary to the kinds of things a slave-master would do. These include:

- allowing Plaintiff to be unaccompanied by Defendants (*e.g.*, being daily left alone at home for hours, going to Florida accompanied only by a minor child, going out gambling to Las Vegas casinos, and going to the Nepalese Embassy in New York accompanied only by one of Plaintiff's own relatives).
- Sponsoring Plaintiff for a green card.

Ds' Statement of Facts at ¶¶ 7-16 & 39-41.

It defies logic that the Maliks would do these things if they sought to keep Plaintiff as their slave. Letting Plaintiff have freedom of movement (especially at the Nepali Embassy, where she and her relative could easily complain to authorities and effect an escape), makes no sense if the Maliks wanted to keep Plaintiff in a life of forced labor.

Likewise, if Defendants were slave-masters, they would not have sponsored Plaintiff for a green card – the ultimate ticket to freedom for an alien to remain in the U.S. without being dependent on their sponsor (or on having any employment). If the Maliks sought to force Plaintiff to stay with them involuntarily (but wanted to retain documentation to satisfy regulators), they would have sponsored Plaintiff for a visa that would afford them leverage over her (*e.g.*, an H-1B visa, which ties the alien's right to remain in the U.S. to her employment).

According to Plaintiff's own testimony, Mr. Malik decided to sponsor Plaintiff for the green card after Plaintiff got upset and was crying upon learning of her mother's death. As Plaintiff describes it, Mr. Malik's decision was based out of compassion – one that reflects his view of Plaintiff as a valued member of the family. Ds' Statement of Facts at ¶¶ 39-41.

The TVPRA exists to combat modern slavery. It does not exist to address fallings-out between employers/employees or between friends (even friends who felt like family). Allowing Plaintiff's trafficking claims to survive summary judgment would: (i) contravene the statute; and (ii) diminish the serious attention that *bona fide* victims of modern slavery deserve. Therefore, summary judgment must be granted here just like it was granted in *Velez*.

## II. PLAINTIFF'S WAGE & HOUR RELATED CLAIMS MUST BE DISMISSED

### A. Plaintiff's FLSA Claim Is Completely Time-Barred

Plaintiff left (and stopped working for) the Malik Defendants in August 2008. Ds' Statement of Facts at ¶ 52. Plaintiff's claim under the Fair Labor Standards Act ("FLSA") was filed outside the limitations period. *See* 29 U.S.C. § 255(a). Even if the FLSA's normal two-year statute of limitations could be extended to three years for willful misconduct, in this case, it would make no difference. The Complaint was filed on or about May 14, 2013 – approximately five years after she left the Maliks. Consequently, under any conceivable scenario, Plaintiff's FLSA claim is time-barred.

**B. Plaintiff's Other Wage-Related Claims Are Partially Time-Barred**

Plaintiff's three state law-based wage & hour-related causes of action are partially time-barred.

***1. Plaintiff's NYLL Wage Claims Must Be Partially Dismissed as Untimely***

Plaintiff's wage-based claims under the New York Labor Law ("NYLL") are partially barred because the applicable statute of limitations is six years. NYLL § 663(3); *Garcia v. AKR Corp.*, No. 11-cv-6184 (RRM), 2013 U.S. Dist. LEXIS 26610 at * 6-7 (E.D.N.Y. Jan. 10, 2013), adopted and entered by *Garcia v. AKR Corp.*, 2013 U.S. Dist. LEXIS 25201 (E.D.N.Y. Feb. 23, 2013). Accordingly, given the May 14, 2013 filing of Plaintiff's Complaint, the farthest back that Plaintiff's NYLL claims can reach is May 14, 2007. Consequently, Plaintiffs' decades-spanning NYLL claims must be dismissed for the entire time period prior to May 14, 2007.

***2. Plaintiff's Unjust Enrichment Claim Must Be Partially Dismissed as Untimely***

The limitation period for filing an unjust enrichment/quantum meruit claim is six years. N.Y. C.P.L.R. § 213; *Gelfman Int'l Enterprises v. Miami Sun Int'l Corp.*, No. 05-cv-3826 (CPS)(RML), 2009 U.S. Dist. LEXIS 64274 at *19-20 n. 15 (E.D.N.Y. June 27, 2009). Thus, the farthest back that Plaintiff's unjust enrichment claim can reach is May 14, 2007. Consequently, it must be dismissed for the entire time period prior to May 14, 2007.

***3. Plaintiff's Fraud Claim Must Be Partially Dismissed as Untimely***

The limitation period for filing a fraud claim is six years. N.Y. C.P.L.R. § 213. Thus, the farthest back that Plaintiff's fraud claim can reach is May 14, 2007. Consequently, it must be dismissed for the entire time period prior to May 14, 2007.

***4. Plaintiff's Conversion Claim Must Be Partially Dismissed as Untimely***

The limitation period for filing a conversion claim is three years. N.Y. C.P.L.R. § 213; *Vigilant Insurance Co. of America v. Housing Auth. of the City of El Paso, Texas*, 87 N.Y.2d 36, 44-45 (1995).

Therefore, because Plaintiff filed her conversion claim well outside the three year deadline, that claim must be dismissed.

### 5. *There Is No Basis For Tolling*

As set forth in Section I, A, 2, above, no such exceptional circumstances required for equitable tolling are present here. Nothing stopped Plaintiff from taking legal action to obtain money that she believed was owed to her for decades.

Conversely, Plaintiff's deposition testimony establishes that she failed to diligently pursue her wage and hour claims. She knew that she had legal rights (and was specifically advised of them in 2009 – shortly after leaving the Maliks). Ds' Statement of Facts at ¶¶ 55-61. She also alleges she knew that she was owed money during the entirety of her 12-year employment. Ds' Statement of Facts at ¶ 55.

Plaintiff simply waited a very, very long time to file suit. Her desire to "think about it" and to consider conflicting advice from her friends, does not excuse her late filing. Indeed, Plaintiff never told the Maliks that she believed they owed her money while she lived with them. Ds' Statement of Facts at ¶ 50. Thus, it appears that Plaintiff's filing a lawsuit was an afterthought, provoked by a long period of purposeful deliberation.

Allowing for tolling in this kind of situation would cut directly against the purposes of having a statute of limitations (*e.g.* being able to prepare a defense, knowing that it is necessary to save documents, etc.). Allowing Plaintiff to try claims that go back decades would be fundamentally unfair.

## C. **Plaintiff Lacks a Factual Basis to Pursue Her Wage & Hour and Related Claims**

### 1. ***Plaintiff Is Unable to Provide Competent Evidence of the Hours She Worked or the Money She Is Allegedly Owed***

Specific information about a wage & hour claim must be pleaded in the complaint, or the complaint fails as a matter of law and is subject to dismissal on a 12(b)(6) motion. *See DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.* 770 F.Supp.2d 497 (E.D.N.Y. 2011)(JFB). *See also Lundy*

*v. Catholic Health Sys. of Long Island*, 711 F.3d 106 (2d Cir. 2013)(applying the *DeSilva*-style analysis to FLSA cases circuit-wide). More particularly, *DeSilva* holds that the plaintiff must allege when the unpaid wages were earned and identify the number of hours allegedly worked without proper compensation – "the heart of the claim." *Id.*

Here, discovery has borne out that Plaintiff is unable to identify the number of hours that she worked each week, for which she was not paid or was not properly paid. She cannot state was she should have been paid but was not. She cannot state what the overtime, minimum wage, or unpaid overtime is that she is allegedly owed, but was allegedly not paid to her. Ds' Statement of Facts at ¶¶ 42-44.

Furthermore, Plaintiff does not know what the total amount is that the Maliks allegedly owe her. She does not know what the basis for the damages calculations in her Complaint. She does not know how the damages in her interrogatory answers were calculated and she's never heard those damages figures before. She did not have an understanding of what her interrogatory answers contained before signing them. Ds' Statement of Facts at ¶¶ 45-48.

In sum, discovery has confirmed that: (i) Plaintiff is unable to put on competent evidence of her alleged wage-related damages; and (ii) the damages calculations set forth in pleadings and interrogatory answers are not hers – they are the product of someone else. Consequently, it is clear that Plaintiff lacks that evidence that she needs to meet her burden of proof (indeed, the proof that is the "heart" of her claim). Thus, there is no need for a trial. Summary judgment should be granted.

Note that Plaintiff has injected confusion into her claims by testifying that, at times, the Maliks did provide her with pay (by sending it to her relatives, at her instruction, in a foreign currency). Ds' Statement of Facts at ¶ 49. Moreover, she never told the Maliks, while she was with them, that she believed they owed her money. Ds' Statement of Facts at ¶ 50.

The facts provided in discovery here are similar to those in another wage and hour case in which that plaintiff's claims were dismissed on summary judgment – namely, *Holaway v. Stratasys, Inc.*, Case No. 14-1146 (8th Cir. November 6, 2014). In that case, the Eighth Circuit Court of Appeals affirmed summary judgment dismissal of plaintiff's wage and hour claims (even though the employer lacked records) where the plaintiff was only able to make bare assertions of the amount and extend hours he worked. Thus, the claims did not justify a trial and were properly dismissed. Jurisprudence in this Judicial Circuit holds the same. See *Grochowski v. Phoenix Construction*, 318 F.3d 80, 88 (2nd Cir. 2003)(plaintiffs did not provide sufficient evidence where records submitted did not provide a basis for determining both the hours and wages of plaintiffs).

2. ***Plaintiff's Lack of Credibility Justifies Dismissal***

Additionally, on a summary judgment motion, the Court may take Plaintiff's lack of credibility into account where she relies exclusively or almost exclusively on her own testimony. See *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005). Here, there are strong reasons for discounting Plaintiff's account of hours worked and damages calculation:

- Plaintiff is unable to identify the hours worked or how much she should have been paid. Maliks. Ds' Statement of Facts at ¶¶ 42-48.

- the damages calculations in Plaintiff's written discovery were not prepared by Plaintiff – she does not know how her damages were calculated. Ds' Statement of Facts at ¶¶ 42-48. She didn't understand the contents of her interrogatory answers before she signed them. Ds' Statement of Facts at ¶ 48.

- Plaintiff's deposition testimony has proven her to be an incredible witness, particularly insofar as the portrait of herself in her pleadings (as a cowering prisoner) are so starkly at odds with her testimony about the good and satisfactory quality of life that she had when she lived with the Maliks;

- Plaintiff has given varying accounts about her pay from the Maliks – sometimes saying that she was not paid anything at all and sometimes saying that they paid her some money. Compare Ds' Statement of Facts at ¶ 59 with ¶¶ 49 & ; and

- Plaintiff's admission that she stole Mrs. Malik's green card (although she was unwilling or unable to explain why she took it). Ds' Statement of Facts at ¶¶ 62-64. This indicates that Plaintiff is willing to engage in wrongful, devious conduct to purse what she thinks will advance her interests.

***3. The Domestic Worker's Exemption Bars Plaintiff's Wage & Hour Claims***

The FLSA and NYLL have, at all times during Plaintiff's employment with the Maliks, operated to preclude Plaintiff from entitlement to overtime pay. See *Upadhyay v. Sethi,* 848 F.Supp.2d 439, (S.D.N.Y. January 25, 2012)(even if plaintiff performed some non-exempt work, a few times a week, that will not destroy the exemption) and *Smith v. Family Aides, Inc.*, 2007 NY Slip Op 30890(U) (N.Y. Sup. Ct. March 15, 2007)(domestic worker exemption applies to NYLL).

It is undisputed that Plaintiff was primarily engaged in domestic work during her entire employment with the Maliks, as her Complaint and disposition testimony present a laundry list of the daily domestic work that she performed for decades (with only a few stray instances of performing anything other than domestic tasks). Ds' Statement of Facts at ¶ 65.

In light of the exemption, Plaintiff's claims for overtime must be dismissed as a matter of law.

**D. Plaintiff's Common Law Claims Must Be Dismissed**

Plaintiff had tacked onto her Complaint, a variety of common law claims (for, *e.g.*, fraud, conversion, unjust enrichment). The success or failure of those claims hinge on the viability of Plaintiff's trafficking and wage and hour claims. Because the latter claims must be dismissed, so too must the former.

**CONCLUSION**

For the reasons set forth above, summary judgment should be granted and Plaintiff's Amended Complaint should be dismissed.

MEYERS FRIED-GRODIN, LLP

Dated: November 19, 2014

By: ______________________
Jonathan Meyers, Esq.