Jonathan Meyers, Esq.
**MEYERS FRIED-GRODIN, LLP**
Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10018
(646) 596-1292
JMeyers@MfgLegal.com
Attorneys for Defendants Joginder Malik and Neeru Malik

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

URMILA LAMA,

       Plaintiff,

vs.

JOGINDER ("SHAMMI") MALIK and
NEERU MALIK,

       Defendants.

Case No. 13-civ-2846 (LDW)(ARL)

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE LACK OF BASIS TO EQUITABLY TOLL THE STATUTE OF LIMITATIONS**

## *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

LEONARD D. WEXLER, Senior District Judge

Plaintiff, Urmila Lama ("Plaintiff" or "Ms. Lama") filed a Complaint against Defendants Joginder Malik and Neeru Mailk ("Defendants" or the "Maliks") on or about May 14, 2013. The Complaint (and Amended Complaint) contained claims under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), federal and state wage and hour claims, as well as several other common law claims. Plaintiff's claims stem from her experiences allegedly involving living with and performing domestic work in the Malik home between 1996 and August 2008.

After discovery, the Maliks filed a motion for Summary Judgment. That motion was provisionally denied, pending an Evidentiary Hearing on the issue of whether the statute of limitations should apply, or whether it should be equitably tolled.

The Court held an Evidentiary Hearing on the issue of the statute of limitations on October 15, 2015 and December 1, 2015.[1]

The parties have submitted proposed findings of fact and conclusions of law, as well as legal memoranda supporting their respective positions. The court has considered those submissions and this constitutes the Court's findings of fact and conclusions of law.

## *FINDINGS OF FACT*

### A. The Timing of Plaintiff's Experiences with the Maliks and Her Filing Suit

1.      Plaintiff was an adult of the age of 40 when she first came to live with the Maliks in the United States in 1996. (Tr. 11:24-12:17)("Tr." refers to the transcript of the Evidentiary Hearing).

---

[1] Even at the summary judgment stage, this Court may make credibility determination as to Plaintiff under these circumstances. *Upadhyay v. Sethi*, 2012 WL 3100601 at p. *28 (S.D.N.Y., July 30, 2012) citing *Jeffreys v. City of New York,* 426 F.3d 549, 551 (2d Cir. 2005).

2. Plaintiff left the Maliks home and stopped working for the Maliks in August 2008. (Tr. 33:4-5). However, she did not file suit until May 14, 2013. (Tr. 145:5-14).

### B. The Maliks Did Not Interfere with Plaintiff's Rights to Pursue Litigation

3. The Maliks did not do anything to prevent Plaintiff from filing on time or from seeing an attorney. (Tr. 165:6-11).

4. Indeed, when Plaintiff lived with the Maliks, she: (i) was never mistreated in any way (Tr. 24:12-23); (ii) she was not harmed (Tr. 201:8-9); (iii) was never prevented from leaving the Maliks' home (Tr. 27:5-14; Tr. 161:10-14); (iv) actually left the Malik home, unaccompanied by any of the Maliks for visits to the beach and nearby stores (Tr. 195:2-9) and to the Nepalese embassy in New York (Tr. 29:22-32:22); (v) was never threatened (Tr. 162:5-9; and Tr. 201:4-7); (vi) received gifts (including gold)(Tr. 201:15-23); (vii) was treated to vacations to places like Las Vegas and Florida (Tr. 203:1-204:2); (ix) was viewed and treated like a family member (Tr. 200:13-23; Tr. 201:13-14); and (x) never complained about her living conditions nor did she ask to leave the Maliks prior to her quitting in 2008 (Tr. 204:7-11).

5. Sheena Malik, who grew up in the Malik home as a child, credibly testified that Plaintiff was like part of the family and enjoyed comfortable living conditions. (Tr. 56:18-25).

6. Sheena Maliks also testified that Plaintiff was never mistreated and had freedom of movement (and that Plaintiff in fact, did write and wrote to her family members). (Tr. 60:61:2).

7. Sheena Malik (who is now a Medical Doctor) testified that Plaintiff was a woman of at least ordinary intelligence. (Tr. 63:1-14).

8. Moreover, Plaintiff always appeared to be happy with the rest of the family. (Tr. 63:1-14).

9. The Maliks' next-door neighbors (who lived just feet away at all relevant times) testified, similarly, that Plaintiff had good living conditions, freedom of movement and was not mistreated (but was treated as a family member). (Tr. 186:5-187:188:7; and 194:21-195:9).

10. Similarly, Sara Malik (who was a child in the Malik home when Plaintiff lived there), testified that Plaintiff had freedom of movement and Plaintiff was seen in possession and use of her own travel documents on a plane trip during which Plaintiff was unaccompanied by any adults. (Tr. 213:19-214:8).

11. Dr. Harsimran Singh (who lived in the Malik home for several years), also testified that Plaintiff was treated as part of the family and received gifts. (Tr. 73:15-74:4).

12. Dr. Singh too testified that Plaintiff was never mistreated or isolated and could (and did) freely make phone calls. (Tr. 74:5-75:6).

13. Plaintiff looked satisfied and cheerful and appeared to Dr. Singh to have the ability to make decisions for herself (Tr. 75:7-13 and 76:17-22).

14. Plaintiff's counsel has tried to insinuate that because Plaintiff had a bedroom that was off the garage, it was somehow substandard. This assertion has no merit given that: (i) witnesses testified that it was a high quality heated and air conditioned room (Tr. 72:6-73: and Tr. 193:6-194:7); (ii) another room off the garage was good enough for one of the Maliks' cousins (Tr. 211:10-22); and (iii) it was common, in the Maliks' neighborhood of small houses, for people to build bedrooms off of their garages. (Tr. 211:10-17).

### C. Plaintiff Received a Green Card and Enjoyed Freedom of Movement – A Right That She Ultimately Chose to Exercise in 2008

15. Mr. Malik's business sponsored Plaintiff for a green card (the ultimate ticket to independence for an alien in the United States). She received it in 2006. (Tr. 17:17-23; Tr. 61:16-62:26; and Tr. 162:10-163:12).

16. Plaintiff was so happy that she threw a party and proudly showed the green card to the people at the party. (Tr. 61:16-62:26; and Tr. 162:10-163:12).

17. Additionally, it is notable that the credible evidence shows that during the entire time that Plaintiff lived with the Maliks, Plaintiff had her travel documents, including her visa and green card, and she could leave whenever she wanted. (Tr. 162:5-164:1).

18. When Plaintiff told Mr. Malik that she was quitting and moving out in 2008, she did so – with no resistance whatsoever from the Maliks. (Tr. 160:22-161:9).

19. The reason Plaintiff gave for leaving was that she wanted to go back to Nepal to build a house there for her retirement. (Tr. 160:25-161:78).

### D. After Leaving the Maliks in 2008, Plaintiff Was Surrounded by Supporters Who Helped Her Consider Her Options – But Plaintiff Waited to File Because She Wanted to "Think About It"

20. In 2008 (after Plaintiff left the Maliks), Plaintiff spoke to her friends about whether to bring a legal action against the Maliks. (Tr. 140:21-25).

21. Additionally, Plaintiff testified that her friends gave her information about wage and hour laws in the United States at some point in 2008 or thereafter. (Tr. 142:16-144:14).

22. The reasons why Plaintiff did not file a lawsuit earlier than mid-2013 were because: (i) some of her friends said "you know, it's okay, you got a green card"; and (ii) she was not yet ready. (Tr. 141:1-16).

23. Plaintiff's proffered expert witness, Florence Burke (who twice interviewed Plaintiff and issued two expert reports) testified that Plaintiff allegedly knew that Plaintiff had been underpaid and exploited as early as 2008 when she returned to Nepal and then learned even more specifics about wages owed to domestic worked when she returned to the United States in 2009. (Tr. 125:13-127:1).

24. Within a year of Plaintiff leaving the Maliks (in 2008), Plaintiff was specifically advised (in 2009) by Adhikaar to get justice. (Tr. 21:10-20).

25. Adhikaar is a Nepalese social justice organization that raises awareness for rights for domestic workers, advocates for them, and provides them with "know your rights" training. (Tr. 83:14-85:2 & Tr. 93:5-9).

26. Adhikaar refers its members to lawyers if they are interested. (Tr. 85:7-21 & Tr. 97:10-16).

27. Adhikaar's website has a page entitled "Worker's Rights" which states that Adhikaar "assist workers to seek redress when their rights are violated. Our members successfully recovered hundreds of thousands of dollars of stolen wages." (Tr. 96:14-24). Clearly, by 2009, Plaintiff had found in Adhikaar, a highly-motivated organization to encourage her to initiate litigation for the wrongs that Plaintiff had believed she suffered.

28. Plaintiff completed an intake form with Adhikaar in 2009 and the intake form mentions a lawyer at MFY Legal Services as a possible contact person to discuss Ms. Lama's case. (Tr. 86:1-87:12; Tr. 95:1-15 & Plaintiff's Exhibit 1).

29. Adhikaar was welcoming to Plaintiff. (Tr. 94:20-25).

30. Plaintiff was so bold that Adhikaar selected for her to be on a panel to speak about her allegations against the Maliks. (Tr. 98:21-100:17).

31. In 2012, Plaintiff had another meeting at Adhikaar which led to Plaintiff being introduced to the team of attorneys that represent her in the instant lawsuit. (Tr. 90:1-22).

32. Plaintiff did not file her lawsuit until 2013 because she wanted to "think" about it:

> Q. Ms. Lama, by 2009 you had met with the Adhikaar organization, correct?
>
> A. Yes.
>
> Q. And they had suggested that you seek justice.
>
>   Is that right?
>
> A. Yes.
>
> Q. And did you wait until May of 2013 to file a lawsuit against the Maliks because you had to think a lot about it and rethink about it?
>
> A. Yes.

(Tr. 145:5-14).

**E. There Is Other Evidence Showing that Plaintiff Was Capable of Filing a Timely Lawsuit, But Was Simply Not Diligent**

33. After Plaintiff quit the Maliks in August 2008, she demonstrated the ability to travel (between Nepal and the United States) and to get to and from work. She also was able to interact with Nepalese-speaking friends and advocates sufficiently so that she could:

- Travel to Nepal in 2008 and come back to the United States in 2009 (Tr. 48:22-49:6);
- Find a place to live in New York (Tr. 33:10-24 and 50:1-10);
- Get a roommate (Tr. 33:10-24 and 50:1-10);
- Enjoy access to friends, family, and a roommate who all spoke her language, Nepalese (Tr. 140:3-13);
- Take English classes; (Tr. 21:1-6);
- Look for employment (Tr. 50:11-51:19);

- Go to employment agencies to obtain work (Tr. 50:11-51:19; Tr. 52:3-14; and Tr. 137:24-138:2);

- Actually obtain work, travel to and from work, and hold down jobs and take care of herself financially (Tr. 50:1-19; Tr. 52:1521; and Tr. 137:19-139:20);

- Be an active member of the Nepalese social justice organization Adhikaar (Tr. 97:25-98:12);

- Be a panelist at a conference in which she discussed her allegations against the Maliks (Tr. 98:21-100:17); and

- Be in contact with her relatives including her granddaughter Ambika Lama whom Plaintiff offered as an emergency contact to Adhikaar (Tr. 95:1-15).

**F. Plaintiff's History of Repeatedly Lying in This Case about Key Issues Demonstrates a Capacity for Well-Thought-Out Deception and Calculation and Shows that Plaintiff Was Capable of Filing Suit Earlier If She Had Wanted**

*1. Plaintiff's Changing Testimony Regarding Sex with Mr. Malik*

34. Plaintiff originally made no claims whatsoever about sexual contact with Mr. Malik – not in her 2013 pleadings, discovery responses, or at the first two days of her 2013 deposition (wherein she denied being touched in any way she did not like). (Tr. 24:24-25:8).

35. Plaintiff did not even make sex claims to her own expert witness, her attorneys, or her advocates at Adhikaar (a litigation-savvy social justice organization that was "welcoming" to Plaintiff) (Tr. 34:1-38:25; Tr. 94:20-25; and Tr. 128:4-130:4)).

36. Instead, Plaintiff came up with an allegation of having sex with Mr. Malik mid-way through her 2013-2014 deposition, when her case was going badly (and following earlier denials). (Tr. 24:24-25:8; 34:1-38:25; and Tr. 164:2-165:5).

37. At the recent Evidentiary Hearing, Plaintiff admitted that she had changed her testimony about this key issue, even though she knew she was under oath. (Tr. 24:24-25:8; 34:1-38:25).

7

38. Plaintiff waited approximately nine years after the alleged 2005 sexual contact with Mr. Malik to first allege it in 2014. (Tr. 128:4-130:4).

39. Next, at the recent Evidentiary Hearing, Plaintiff changed her testimony again. This time she claimed – for the very first time – that Mr. Malik raped her. (Tr. 39:1-14 and 46:10-47:1).

40. Plaintiff provided a reason behind why she changed her deposition testimony during the last days of her 2014 deposition. At the Evidentiary Hearing, Plaintiff testified that she reversed her deposition testimony because the Maliks "made her." *I.e*., her motivation to claim sexual contact with Mr. Malik was that she did not like the way Mr. and Mrs. Malik looked at Plaintiff when they sat in at Plaintiff's deposition. (Tr. 34:21-35:6 and 42:1-24).

41. Plaintiff's own expert witness, Florence Burke, could not rule out that Plaintiff could very well be lying at the Evidentiary Hearing as a result of her alleged feeling of being "frightened or anxious or feeling reticent..." (Tr. 118:10-120:5).

42. Ms. Burke had to "duck the question" and refuse to substantive answer a question that would require her to acknowledge Plaintiff's lack of truthfulness and Plaintiff's propensity to change her story. *Ibid*.

43. Notably, after Plaintiff's mid-deposition change in testimony was revealed to Ms. Burke, Burke had to scramble to prepare a new amended expert report to address the lying that Plaintiff had engaged in. (Tr. 37:23-38:25 & Tr. 120:6-123:24).

### 2. *Plaintiff's Wage Claims Against Third Parties*

44. The credible evidence reflects that Plaintiff fabricated wage and hour claims against Dr. Harsimran Singh. He and his wife lived as guests in the Malik home between 1994 to 2001 and never employed Plaintiff. (Tr. 69:17-70:8; Tr. 71:10-14; and Tr. 72-3-4).

45. Plaintiff filed suit against Dr. Singh and his wife, claiming that they were Plaintiff's employers and owed her wages. (Tr. 71:7-72:5).

46. Dr. Singh provided a pointed example of a false assertion that Plaintiff had made in connection with those claims. Plaintiff claimed to have not been paid for babysitting services that she provided to Dr. Singh at a wedding in Phoenix Arizona in 2007. More specifically, Plaintiff claimed to have watched Dr. Singh's two children during the wedding ceremony. However, in actuality, during the wedding ceremony, Plaintiff was a guest seated in the audience and Dr. Singh and his children were all members of the wedding party. (Tr. 77:3-79:4).

## *CONCLUSIONS OF LAW*

### I. THE SUMMARY JUDGMENT STANDARD

47. Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). To avoid dismissal, the opposing party must specific facts showing there is a genuine issue of material fact for trial. *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Unsupported allegations do not create a material issue of fact. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

48. For the reasons set forth below, most of Plaintiff's claims are untenable because they were untimely filed and there is no basis for equitable tolling. Those claims are hereby dismissed, in whole or in part, as set forth below.

### II. PLAINTIFF'S HUMAN TRAFFICKING CLAIMS MUST BE DISMISSED BECAUSE THEY ARE COMPLETELY TIME BARRED

49. Plaintiff's claims under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") were filed outside the limitations period. During the time that Plaintiff lived with the

9

Maliks, the TVPRA's statute of limitations was four years. On December 23, 2008, Congress amended the TVPRA to increase the statute of limitations to ten years. The amendment, containing the lengthened limitations period, was enacted after Plaintiff left the Maliks in August 2008.

50. The increased limitations period cannot be applied retroactively to TVPRA claims. *Abarca v. Little*, 54 F.Supp.3d 1064, 1068-1069 (2014) (D. Minn. 2014). *See also Rivers v. Roadway Express Inc.*, 511 U.S. 298 (1994)(limitations periods in general are not retroactive unless Congress manifests a very clear intent to make it retroactive). The *Abarca* decision is well-reasoned and consistent with binding authorities issued by the United States Supreme Court and the Second Circuit Court of Appeals. More specifically, the Second Circuit held that a new and longer statute of limitations for securities fraud claims (enacted in 2002 as part of the Sarbanes-Oxley statute), could not revive claims that were already time-barred under the old limitations period. *In re Enterprise Mortgage Acceptance Co., LLC, Sec. Litig.*, 391 F.3d 401 (2d Cir. 2004).

51. In that case, the Second Circuit determined that applying the statute of limitations retroactively would impair the rights of repose invested in defendants who had already seen the limitations period expire. It followed Supreme Court precedent in arriving at its decision:

> In *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court set forth a two-part test for determining whether a statute applies retroactively. At the first stage, a court must "determine whether Congress has expressly prescribed the statute's proper reach." *Id*. at 280, 114 S.Ct. 1483. If Congress has done so, the inquiry ends, and the court enforces the statute as it is written. See *id*. If the statute is ambiguous or contains no such express command, the court proceeds to the second stage of the *Landgraf* test and "determine [s] whether the new statute would have retroactive effect, *i.e*., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. If the statute, as applied, would have such an effect, it will not be applied retroactively "absent clear congressional intent" to the contrary. *Id*.
>
> In accordance with *Landgraf*, we begin by looking to the plain language of Section 804 of Sarbanes-Oxley. Because the language of Section 804 does not unambiguously revive previously stale securities fraud claims, and because Section 804's legislative history does not suggest that Congress intended to provide for retroactive application of the revised

10

statute of limitations, we next inquire whether extending the statute of limitations to revive expired claims would have a "retroactive effect." Upon review of the relevant factors, we conclude that extending the statute of limitations to revive stale claims would have such an effect. Accordingly, because neither the language nor the legislative history of Section 804 requires that we do so, we decline to apply Section 804 retroactively to revive plaintiffs' previously expired securities fraud claims and instead defer to the longstanding presumption against retroactive application.

*In re Enterprise Mortgage Acceptance Co., LLC, Sec. Litig.*, 391 F.3d at 405-406.

52. With respect to the TVPRA, there is no Congressional statement that the new limitations period should be applied retroactively. It is therefore clear that the Second Circuit Court of Appeals would apply the same reasoning in *Abarca* to this case. Thus, the four year limitations period applies to this case. Consequently, Plaintiff's trafficking claims are time-barred.

53. Moreover, as a substantive matter, the allegations made by Plaintiff are so thin that her human trafficking claim should not be able to survive a summary judgment motion, on the merits. See *Velez v. Sanchez*, 754 F.Supp.2d 488, 495–500 (E.D.N.Y.2010) *aff'ed in part and rev'ed in part (on other grounds),* 693 F.3d 308 (2nd Cir., 2012)(in case with similar factual allegations as here, plaintiff's TVPRA claims were dismissed on summary judgment motion).

### A. Plaintiff's TVPRA Claims Were Filed Out of Time

54. The applicable statute of limitations is four years. *Abarca*, 54 F. Supp. 3d at 1068 (D. Minn. 2014).

55. Here, Plaintiff left the Maliks in August 2008, but she did not file suit until May 14, 2013. (Tr. 33:4-5 and Tr. 145:5-14). This is a span of time well in excess of four years. Accordingly, Plaintiff filed too late. Her trafficking claims "died" (and cannot be revived). Therefore, they must be dismissed.

**B. There Is No Basis for Equitable Tolling Because the Maliks Did Nothing to Prevent Plaintiff from Asserting Her Rights and She Was Surrounded by Supporters and She Deliberatively Considered Her Legal Options**

56. There is no basis here to equitably toll the application of the statute of limitations. "Equitable tolling applies only in the rare and exceptional circumstances [in which] exceptional circumstances prevented [plaintiff] from filing . . . on time." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); and *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)(accord).

57. In human trafficking cases, equitable tolling is likewise only applied where: (i) plaintiff pursues her rights diligently; and (ii) exceptional circumstances prevented plaintiff from filing. *Abarca*, 54 F.Supp.3d at 1069-1070 (D. Minn. 2014) citing *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002), which held: "Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling is an exception to the rule, and should therefore be used only in exceptional circumstances."

58. As evidenced by the record evidence, no such exceptional circumstances are present here. To begin with the Maliks did not do anything to prevent her from filing a lawsuit. The credible record evidence shows that during the time that Plaintiff lived with the Maliks (1996-2008), she lived a comfortable life of freedom and could do as she pleased.

59. Next, by August 2008, when Plaintiff left the Maliks, there could be no conceivable way for the Maliks to do anything to interfere with her ability to file suit. From that point forward, they had no meaningful contact with Plaintiff.

60. Moreover, by 2008 Plaintiff was already considering her options by talking with friends about whether to bring legal claims against the Maliks. Plaintiff made the conscious and voluntary decision not to do so at that time because she had to "think" about it and she was not "ready." She also

12

considered advice from friends suggesting that she should not file suit because she had already been given enough by the Maliks, including a green card.

61. Additionally, Plaintiff'a activites all indicate that she was a comptent adult who could make decisions for herself. For example, she was able to travel back and forth between Nepal and the United States, seek and obtain employment, find a roommate and a place to live, travel to and from work in the United States, take English classes, and otherwise behave in a manner consistent with a capable and ordinary adult. Many other immigrants living in New York do not speak English well and yet adapt sufficiently to function and live normally. The evidence shows that Plaintiff too adapted and functioned normally.

62. Next, by 2009, Plaintiff became involved with Adhikaar – an organization that was perfectly suited (and highly-motivated) to help Plaintiff pursue legal action againt the Maliks. Adhikaar's efforts came as close as imaginably possible to "spoon-feeding" information to Plaintiff about pursue her legal rights.

63. Plaintiff's allegations of having sex with Mr. Maliks (or being raped, depending upon which version of Plaintiff's testimony is considered) is of no moment. Rather than justify equitable tolling, Plaintiff's multiple changes to her story (so as to enhance the shock value with each new version), reveals only that Plaintiff is a proven liar. Even if Plaintiff has, at one point, told the truth about this subject, the one certain conclusion that can be made is that on at least one or more occasions, Plaintiff lied about this key, material fact. Moreover, the timing and calculated nature of Plaintiff's changes in testimony, reveal her to have substantial guile. In light of this, it is clear that she is clever enough to have sued the Maliks earlier if she had chosen to act diligently.

64. Note that Plaintiff, in her testimony did not testify that Mr. Malik purportedly having sex with her (or raping her as she now claims) prevented her from pursuing her rights. Indeed, Plaintiff

testified that the only emotional distress she experienced resulted to allegedly not being paid properly. (Tr. 25:9-25).

65. Furthermore, there is no record evidence of expert opinion asserting that anything Mr. Malik (or anyone else) purportedly did resulted in Plaintiff being unable to timely assert her legal rights.

66. Ms. Burke is not a licensed psychologist (and has never diagnosed Plaintiff) and therefore cannot opine on such issues. (Tr. 108:8-109:13 & Tr. 109:24-110:13). Ms. Burke has been barred from testifying on those issues in the past. *Ibid*.

67. Moreover, she cannot be an expert witness in this case because her conclusions are so far removed from the reality of the facts presented in discovery and at the Evidentiary Hearing, such that she cannot be qualified as an expert in this case for any purpose. (An expert opinion is admissible only if it "is based on sufficient facts or data." Fed. R. Evid. 702(b)). Accordingly, the Court denied the admission of Ms. Burke's expert reports into evidence. Tr. 127:24-128:2.

68. Ultimately, this case is similar to *Upadhyay v. Sethi*, 2012 WL 3100601 (S.D.N.Y., July 30, 2012), in which the court refused to employ equitable tolling because the plaintiff had, *inter alia*, freedom of movement, and she lacked credibility because the "self-portrait" she alleged (as being incapable and vulnerable) was not consistent with the record facts. In the case at hand, the evidence reflects a substantial freedom of movement and communication, and – more broadly – reveals that the "portrait" painted of Plaintiff (as cowed prisoner) in her Complaint is fabricated. Thus, just like *Upadhyay*, Plaintiff here is not entitled to equitable tolling.

69. In sum, the overwhelming evidence shows that Plaintiff had ample opportunity to timely file. However, she chose not to do so because she was following the conflicting advice of friends and she was just not yet "ready." This is not a legitimate justification for Plaintiff's delay in filing, and equitable tolling cannot apply.

## II.     PLAINTIFF'S WAGE & HOUR RELATED CLAIMS MUST BE DISMISSED

### A.     Plaintiff's FLSA Claim Is Completely Time-Barred

70.     Plaintiff left (and stopped working for) the Malik Defendants in August 2008. (Tr. 33:4-5 and Tr. 145:5-14). Plaintiff's claim under the Fair Labor Standards Act ("FLSA") was filed outside the limitations period. *See* 29 U.S.C. § 255(a).

71.     Even if the FLSA's normal two-year statute of limitations could be extended to three years for willful misconduct, in this case, it would make no difference. The Complaint was filed on or about May 14, 2013 – approximately <u>five</u> years after she left the Maliks. Consequently, under any conceivable scenario, Plaintiff's FLSA claim is time-barred.

72.     Additionally, note that an employer's mere failure to post wage & hour notices does not form the basis for equitable tolling. See *Gunawan v. Sake Sushi Rest.*, 897 F.Supp.2d 76, 82-83 (E.D.N.Y. 2012). *See also, e.g., Shu Qin Xu v. Wai Mei Ho,* 2015 WL 3767185 (E.D.N.Y. June 15, 2015); *Ramirez v. CSJ & Co.*, case no. 06 Civ. 13677(LAK), 2007 WL 1040363, at *3 (S.D.N.Y. April 3, 2007)(refusing to pronounce that the failure to post a notice, in and of itself, warrants equitable tolling) and *Upadhyay v. Sethi*, 2012 WL 3100601 (S.D.N.Y., July 30, 2012)(in a case with TVPRA and wage claims, the employer's failure to post did not warrant equitable tolling). Thus – especially in light of Plaintiff's admissions that she knew she believed she was not paid properly – there is no legitimate basis to toll the limitations period in this case.

### B.     Plaintiff's Other Wage-Related Claims Are Partially Time-Barred

73.     Plaintiff's three state law-based wage & hour-related causes of action are partially time-barred.

15

      1.      *Plaintiff's NYLL Wage Claims Must Be Partially Dismissed as Untimely*

74. Plaintiff's wage-based claims under the New York Labor Law ("NYLL") are partially barred because the applicable statute of limitations is six years. NYLL § 663(3); *Garcia v. AKR Corp.*, No. 11-cv-6184 (RRM), 2013 U.S. Dist. LEXIS 26610 at * 6-7 (E.D.N.Y. Jan. 10, 2013), adopted and entered by *Garcia v. AKR Corp.*, 2013 U.S. Dist. LEXIS 25201 (E.D.N.Y. Feb. 23, 2013).

75. Accordingly, given the May 14, 2013 filing of Plaintiff's Complaint, the farthest back that Plaintiff's NYLL claims can reach is May 14, 2007. Consequently, Plaintiffs' decades-spanning NYLL claims must be dismissed for the entire time period prior to May 14, 2007.

      2.      *Plaintiff's Unjust Enrichment Claim Must Be Partially Dismissed as Untimely*

76. The limitation period for filing an unjust enrichment/quantum meruit claim is six years. N.Y. C.P.L.R. § 213; *Gelfman Int'l Enterprises v. Miami Sun Int'l Corp.,* No. 05-cv-3826 (CPS)(RML), 2009 U.S. Dist. LEXIS 64274 at *19-20 n. 15 (E.D.N.Y. June 27, 2009). Thus, the farthest back that Plaintiff's unjust enrichment claim can reach is May 14, 2007. Consequently, it must be dismissed for the entire time period prior to May 14, 2007.

      3.      *Plaintiff's Fraud Claim Must Be Partially Dismissed as Untimely*

77. The limitation period for filing a fraud claim is six years. N.Y. C.P.L.R. § 213. Thus, the farthest back that Plaintiff's fraud claim can reach is May 14, 2007. Consequently, it must be dismissed for the entire time period prior to May 14, 2007.

      4.      *Plaintiff's Conversion Claim Must Be Completely Dismissed as Untimely*

78. The limitation period for filing a conversion claim is three years. N.Y. C.P.L.R. § 213; *Vigilant Insurance Co. of America v. Housing Auth. of the City of El Paso, Texas*, 87 N.Y.2d 36, 44-45 (1995). Therefore, because Plaintiff filed her conversion claim well outside the three year deadline, that claim must be dismissed in its entirety.

### 5. *There Is No Basis For Tolling*

79. As set forth in Section I, B, above, no exceptional circumstances required for equitable tolling are present here. Nothing stopped Plaintiff from taking legal action to obtain money that she believed was owed to her. Moreover, her testimony indicates that she always knew that she was not being paid well – even before she was specifically advised about wage and hour laws. (Tr. 13:10-25). Indeed, she testified that this caused her to feel really sad most of the time during her 12 years with the Maliks. *Ibid*.

80. Next, Plaintiff's deposition testimony establishes that she failed to diligently pursue her wage and hour claims. She knew that she had legal rights (and was specifically advised of them in 2008 and 2009 – shortly after leaving the Maliks).

81. Plaintiff simply waited a very, very long time to file suit. Her desire to "think a lot about it" and to consider conflicting advice from her friends, does not excuse her late filing. Thus, it appears that Plaintiff's filing a lawsuit was an afterthought, provoked by a long period of purposeful deliberation.

82. Allowing for tolling in this kind of situation would cut directly against the purposes of having a statute of limitations (*e.g.* being able to prepare a defense, knowing that it is necessary to save documents, etc.). Allowing Plaintiff to try claims that go back decades would be fundamentally unfair. It would also set the bar for equitable tolling so low, as to virtually eliminate the entire concept of a statute of limitations.

SO ORDERED

LEONARD D. WEXLER, Senior District Judge

Dated: _____, 2016