UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
URMILA LAMA,

         Plaintiff,

  -against-

JOGINDER ("SHAMMI") MALIK, NEERU
MALIK, KAMALJIT ("MINU") SINGH, and
HARSIMARAN SINGH,

         Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 13-2846

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ JUN 21 2016 ★

LONG ISLAND OFFICE

APPEARANCES:

WILMERHALE
By:   Charles Platt, Esq.
      Lori A. Martin, Esq.
      Chavi Keeney Nana, Esq.
      Andrew Sokol, Esq.
      Eric John Galvez Paredes, Esq.
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Attorneys for Plaintiff Urmila Lama

URBAN JUSTICE CENTER
By:   David Colodny, Esq.
123 William Street, 16th Floor
New York, NY 10038
Attorneys for Plaintiff Urmila Lama

MEYERS FRIED-GRODIN, LLP
By:   Jonathan Meyers, Esq.
350 Fifth Avenue, 59th Floor
New York, NY 10018
Attorneys for Defendants Joginder Malik and Neeru Malik

WEXLER, District Judge:

      Plaintiff Urmila Lama ("Lama" or "Plaintiff") brings this action under the Trafficking

Victims Protection Reauthorization Act ("TVPRA") of 2008, 18 U.S.C. § 1595, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the New York McKinney's Labor Law, § 190, *et. seq.* ("NYLL")[1] seeking compensation for work she performed and injuries she allegedly suffered while working as a domestic worker for the Defendants Joginder (Shammi) ("Shammi Malik" or "Shammi") and Neeru Malik ("Neeru Malik" or "Neeru"), (collectively, "Defendants"). Plaintiff also brings state law claims for conversion, fraud and unjust enrichment.

Defendants moved for summary judgment, claiming, amongst other things, that many of Plaintiff's claims were time-barred. Plaintiff opposed, arguing that as a result of the circumstances of her employment and other issues in this case, her claims should be equitably tolled. This Court denied Defendants' motion for summary judgment without prejudice and directed a hearing be held[2] to determine whether Plaintiff's claims should be equitably tolled.

---

[1] Plaintiff filed a wage complaint with the New York State Department of Labor ("DOL") on September 9, 2012.

[2] It is within the ambit of the court to resolve questions of equity, including the applicability of equitable tolling to statutes of limitations, when such factual questions are separate from the merits of the case. See Upadhyay v. Sethi, 848 F.Supp.2d 439, 446-447 (S.D.N.Y. 2012) (denying defendant's motion for summary judgment and directing an evidentiary hearing to resolve factual issues regarding whether plaintiff is entitled to equitable tolling of the statute of limitations). See also Moreno v. 194 East Second Street LLC, 2013 WL 55954, *3 (S.D.N.Y. 2013) (in an FLSA case, court directs an evidentiary hearing be held where there are factual disputes relating to equitable tolling and those disputes are "separable from the merits of the underlying claims"); Sinha v. N.Y.C. Dep't of Educ., 127 F. App'x 546, 547 & n.1 (2d Cir. 2005) (district court did not abuse its discretion in holding an evidentiary hearing on whether plaintiff was entitled to equitable tolling, making credibility findings and concluding she was not); DD v. Lincoln Hall, No. 09 Civ. 861 (CS), 2010 WL 695027, at *7–8 (S.D.N.Y. Feb. 19, 2010) (directing an evidentiary hearing to resolve disputed issues of fact regarding application of equitable tolling).

Based on that hearing and the parties' post-hearing submissions as discussed below, the Court finds that application of the principle of equitable tolling is not warranted in this case.

## BACKGROUND

The following facts are from the hearing conducted before this Court on October 15 and December 1, 2015. Plaintiff came to the United States from Nepal in 1996 at the age of 40 when she came to live with the Defendants, the Maliks, in their home in Glen Cove, New York. Plaintiff performed housekeeping work, such as laundry, cooking, and taking care of the Malik's children. She was never formally educated and did not speak English. She communicated with the Maliks in Nelapese or Hindi, and spoke only occasional broken English.

Plaintiff did know anyone else when she came to the United States. She did not socialize outside the Malik family, although on occasion took walks around the neighborhood, or went shopping. She did not take trips on her own, and a couple of times traveled out of state with the Maliks, and cared for the children. Plaintiff did not have a driver's license, a social security number, bank account or a credit card.

Plaintiff had her own bedroom in the Malik's house, off the garage. During the years Plaintiff lived with the Maliks, relatives of the Malik's occasionally lived there too. Plaintiff was given access to a phone and freely communicated with her own family in Nepal.

In 2006, Shammi Malik arranged for Plaintiff to get a green card though his business, Ultimate Fashions, claiming that Plaintiff worked as a sample maker for the company. An attorney prepared that application, but Plaintiff did not interact with the attorney in any substantial way. The green card was issued in 2006.

The Maliks have two daughters who grew up with Plaintiff in their home and viewed her

as family. The Malik's neighbors viewed Plaintiff as happy and with freedom to come and go.

In August of 2008, Plaintiff wanted to return to Nepal, and she did, with her green card, and with little to no resistance from the Maliks. In Nepal, friends asked her about the wages she received while in the United States, and whether she was paid enough. Plaintiff testified this was the first time she learned she might have been underpaid while working for the Maliks. Plaintiff did not have knowledge about the Nepalese legal system or the American legal system. It is undisputed that the Maliks never advised her of her rights to certain wages under U.S. law or posted wage notices.

In 2009, Plaintiff returned to the United States on her own volition and lived in New York with a friend of a distant relative. Soon thereafter, she became affiliated with Adhikaar, a human rights social justice organization that worked primarily with Nepalese speaking immigrants. At her first meeting at Adhikaar, Plaintiff was told by a staff member (not a lawyer) that she suffered an injustice while working for the Maliks.

Through Adhikaar, Plaintiff took English classes, met other Nepalese immigrants, and had access to various other resources. At Adhikaar, Plaintiff participated as a panelist at a domestic workers forum to talk about her experience living with and working for the Maliks for twelve years. She did not request nor did she have a meeting with a lawyer about her rights to certain wages.

In New York, Plaintiff lived in an apartment in Queens with other Nepalese individuals. One such person introduced her to an employment agency in the neighborhood, and she got a job and received wages as a housekeeper and babysitter in Connecticut from 2009 to 2012. She traveled to Connecticut by train, and stayed at the home of the family she worked for. At other

times, she had other similar jobs on Long Island.

In 2012, Plaintiff met with a lawyer for the first time concerning her rights to recover unpaid wages, after being referred by Adhikaar's Executive Director, Luna Ranjot. This lawsuit was filed on May 14, 2013. Plaintiff testified that she did not file an action earlier because in response to her friends' inquiries in Nepal, she considered the green card she had gotten, and because she was "not ready" and it was a lot to think about. This action was filed on May 14, 2013.

## DISCUSSION

I. Findings of Fact and Conclusions of Law

A. Equitable Tolling

A statute of limitations may be subject to equitable tolling to prevent unfairness to a plaintiff who is late in filing through no fault of her own. Gonzalez v. Hasty, 651 F.3d 318, 322 (2d Cir. 2011). It is "an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." Gonzalez, 651 F.3d at 322 (2d Cir. 2011) (quoting Veltri v. Bldg. Serv. 32B–J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004)).

To warrant equitable tolling, a plaintiff must demonstrate "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his [or her] way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007). "To qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented [her] from filing [her] claim on time, and that [s]he acted with reasonable diligence throughout the period [s]he seeks to toll." Parada v. Banco Industrial De Venezuela, C.A., 753

F.3d 62, 71 (2d Cir. 2014) (citing <u>Phillips v. Generations Family Health Ctr.</u>, 723 F.3d 144, 150 (2d Cir. 2013) (quotation marks and alterations omitted)); <u>Zerilli-Edelglass v. New York City Transit Authority</u>, 333 F.3d 74, 80-81 (2d Cir. 2003) (to benefit from equitable tolling, a plaintiff must have (1) "'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) proved that the circumstances are so extraordinary that the doctrine should apply."). Plaintiff bears the burden of demonstrating that equitable tolling applies. <u>Upadhyay v. Sethi</u>, 848 F.Supp.2d 439, 445 (S.D.N.Y. 2012).

When equitable tolling applies, the statute of limitations begins to run when "'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.'" <u>Statler v. Dell, Inc.</u>, 775 F.Supp.2d 474, 482 (E.D.N.Y. 2011) (citing <u>Cerbone v. International Ladies' Garment Workers' Union</u>, 768 F.2d 45, 48 (2d Cir. 1985). The toll applies when the plaintiff acts with reasonable diligence and it is justified by "extraordinary circumstances." <u>Id.</u>, at 482-483; <u>Parada</u>, 753 F.3d at 71.

1. <u>Reasonable Diligence</u>

The Court first turns to whether Plaintiff acted with "reasonable diligence during the time period she seeks to toll." <u>Parada</u>, 753 F.3d at 71. Plaintiff seeks to toll the entire period of time from when she began living with the Maliks in 1996, through her return to Nepal, her coming back to the United States in 2009, and until she finally met with a lawyer referred by Adhikaar in 2012. The Court finds that Plaintiff did not act with reasonable diligence at any time throughout those years to satisfy the first prong of equitable tolling.

Plaintiff testified that she first became aware that she might have been underpaid when

she returned to Nepal in 2008 and her friends asked her about the wages she received. She considered whether it should be excused since she had gotten a green card. Despite knowing this was even a possibility, and recognizing that it is not likely that she would pursue rights she had under U.S. law while she was in Nepal, she nevertheless did not undertake any effort to inquire further about her rights under the law when she did return to the United States in 2009.

When Plaintiff had her first meeting at Adhikaar in New York in 2009, she was told by a staff member that she had been mistreated or suffered an "injustice" by the Maliks. Despite this, Plaintiff took no steps to act on this information, even though Adhikaar, a human rights organization, could give her additional information or refer her to a lawyer. Instead, she did not pursue any efforts to educate herself on her rights because she was "not ready." Equitable tolling requires the party seeking the toll to show that she was "reasonably diligent" in pursuing her rights. Plaintiff's conduct does not meet this criteria. See Hengjin Sun v. China 1221, Inc., 12-CV-7135, 2015 WL 5542919, at *6-7 (S.D.N.Y. August 12, 2015) (no equitable tolling where plaintiffs offered no evidence that they diligently pursued their rights, such as securing counsel or seeking any legal assistance, once they learned of their pay and right to a minimum wage).

In addition to the resources of information and assistance to pursue her rights available to her through Adhikaar, Plaintiff also had access to knowledge, including what a legal wage was, once she began working with the employment agency that helped her obtain the job in Connecticut. The facts here are similar to those in Upadhyay v. Sethi, No. 10-CV-8462, 2012 WL 3100601, at *3-4 (S.D.N.Y. July 31, 2012), where the plaintiff also had access to a human rights organization with various resources, was exposed to friends and others in her similar situation who had knowledge of wage rights, and plaintiff in fact appeared in worker's rights

-7-

documentary. That court found that plaintiff's "rich access to information" would have revealed her legal rights, and undercut any conclusion that plaintiff had been "reasonably diligent" in pursuing her rights. So too here. The Court finds that this Plaintiff was not sufficiently diligent to inquire about and protect her rights when she first learned in 2008 that she may have been underpaid, and throughout the early years of her involvement with Adhikaar, until she finally decided to meet with a lawyer in 2012, before filing this suit in 2013. Equitable tolling is not warranted. See e.g., Kai Yan Lai v. Wai Mon Leung, No. 11-CV-3561, 2012 WL 4472155, at *6 (E.D.N.Y. Aug. 31, 2012) (no reasonable diligence shown and equitable tolling not applied where plaintiff had all the necessary information to seek legal advice but failed to pursue her claim).

        2.      Extraordinary Circumstances

The Court also finds that there are no extraordinary circumstances here to justify equitable tolling. While Plaintiff argues that while living with the Maliks, she did not have access to legal advice, had no significant freedom of movement, was primarily contained to the Malik's house and isolated from others, socially and otherwise, and unable to speak English, these circumstances are not so "extraordinary" that they justify tolling the statute of limitations. While Plaintiff has argued that she was kept alone, isolated, ignorant and tethered to the Malik's house while she lived there, the Court finds that the facts presented at the hearing do not support that argument. Instead, Plaintiff, while unable to speak English, unaware at that time of her rights under U.S. law and reliant on the Malik's for her social life as well as any transportation beyond walking, was able to freely communicate by phone with her family, and was free to leave if she wanted to. Indeed, the time came when Plaintiff wanted to move back to Nepal, and she

did, without any interference from the Maliks. That the Maliks obtained a green card for her belies the argument that Maliks were seeking to enslave her. Thus, the Court finds that the circumstances surrounding her years living with the Maliks are not sufficiently "extraordinary" to warrant equitable tolling.[3] See Upadhyay v. Sethi, No. 10-CV-8462, 2012 WL 3100601, at *4-5 (S.D.N.Y. July 31, 2012) (no "extraordinary circumstances" to warrant equitable tolling in an FLSA case where plaintiff, a domestic worker, had freedom to leave the household and failed to show defendants kept wage information from her).

Furthermore, even if Plaintiff had been subjected to "extraordinary circumstances" while living with the Maliks, those circumstances changed when she left the Maliks in 2008 to return to Nepal, and then returned to the United States on her own accord in 2009. From that time, Plaintiff lived in an apartment in Queens with roommates, obtained a job through an employment agency, and became very familiar with and engaged with Adhikaar, the social justice organization, which specifically addressed the needs of the Nepalese immigrant community and offered various resources to Plaintiff, including English classes, which she took. Clearly, during these years, from 2009 when she first became affiliated with Adhikaar until 2013 when she filed this complaint, Plaintiff was free to come and go, was learning English, and adapting to life in New York with complete freedom, and with numerous resources, including possible legal resources, available to her. It is clear to this Court that even if there had been "extraordinary

---

[3]Defendants' failure to post required wage notices, without more, does not constitute "extraordinary circumstances." Upadhyay, 2012 WL 3100601, at * 5, n. 11 (citations omitted); see also Shu Qin Xu v. Wai Mei Ho, 111 F.Supp.3d 274, 279 (E.D.N.Y. 2016) (failure to post notice insufficient for equitable tolling or every violation would equitably toll).

circumstances" at the Malik's (which there were not), there were no "extraordinary circumstances" in the subsequent years to justify applying equitable tolling. See Vincent v. Wal-Mart Store 3420, No. 10 Civ. 5536 (JFB), 2012 WL 3800833, at *5 (E.D.N.Y. September 4, 2012) (court held evidentiary hearing and determined there was no basis to permit equitable tolling); Wen Liu v. Mount Sinai Sch. of Med., No. 09 Civ. 9663 (RJS), 2013 WL 950761, at *8 (S.D.N.Y. March 12, 2013), aff'd, 559 Fed.Appx. 106 (2d Cir. 2014) (court conducted an evidentiary hearing and found there was no basis to equitably toll plaintiff's claims).

II.     Remaining Claims

In their post-hearing submissions, Defendants renewed their arguments seeking summary judgment on certain claims as time-barred. Since Plaintiff does not get the benefit of equitable tolling, the Court grants summary judgment on Plaintiff's claims that were untimely at the time she filed her lawsuit on May 13, 2014. They are delineated below.

A. Wage Claims

Without the benefit of equitable tolling, Plaintiff's claims under the FLSA, which are governed by a two-year statute of limitations, are time-barred since she stopped working for the Maliks in 2008 and did not file this lawsuit until May 2013.[4] Plaintiff's wage claims under NYLL are subject to a six-year statute of limitations, and are deemed filed as of Plaintiff's filing on September 9, 2012 with the New York State Department of Labor ("DOL"). See NYLL, § 663(3). Therefore Plaintiff's claim for wages before September 9, 2006 are dismissed, and the claims for wages after that date continue.

---

[4]Even if the FLSA violations were "willful" and entitled to a three-year statute of limitations, they are time-barred. See 29 U.S.C. § 255(a).

B. Common Law Claims

Plaintiff also brings common law claims for unjust enrichment/*quantum meruit* (six year statute of limitations)[5], fraud (six year statute of limitations) and conversion (three year statute of limitations). See N.Y. C.P.L.R. § 213; § 214(3). Without equitable tolling, Plaintiff's claims for unjust enrichment/*quantum meruit* and fraud as of May 14, 2007 are timely, and Plaintiff's claim for conversion is time-barred and hereby dismissed.

C.   TVPRA Claim

Finally, Plaintiff also brings a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008, 18 U.S.C. § 1595, which provides a civil remedy to an individual who is a victim of human trafficking and forced labor. In their post-hearing submission, Defendants renewed their summary judgment argument that this claim is untimely.[6] Prior to 2008, a claim under the TVPRA was governed by a four-year statute of limitation. See Cruz v. Maypa, 773 F.3d 138, 143-144 (4th Cir. 2014). On December 23, 2008, Congress amended the statute and created a ten-year statute of limitation, effective June 20, 2009. Cruz, 733 F.3d at 144. Defendants argue that the Court should apply the four-year limitations period that applied when the allegedly violative conduct occurred (which would bar the claim filed in 2013), while Plaintiff argues that the claim should benefit from the ten-year statute of limitation created by Congress in 2008, after Plaintiff left the Maliks, but while her claim was still "live."

---

[5]See Williams-Guillaume v. Bank of America, N.A., 130 A.D.3d 1016, 1017, 14 N.Y.S.3d 466, 469 (2d Dept. 2015) (an unjust enrichment claim is governed by the six-year statute of limitations of CPLR 213(1)); Eisen v. Feder, 307 A.D.2d 817, 818, 763 N.Y.S.2d 279, 280 (1st Dept. 2003) (a six-year statute of limitations applies to quantum meruit actions).

[6]Since Defendants' motion for summary judgment on this claim is directed to its timeliness rather than its merits, the Court will restrict its review to that issue.

Case 2:13-cv-02846-LDW-ARL   Document 119   Filed 06/21/16   Page 12 of 16 PageID #: 2991

Analysis of whether a statute should apply retroactively was addressed by the U.S. Supreme Court case <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244 (1994). There, the Court applied a two-part test, first asking (1) whether the statute expressly provides for the statute's reach; and if not, (2) "'determine[s] whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" See <u>In re Enterprise Mortgage Acceptance Co., LLC Sec. Litig.</u>, 391 F.3d 401, 405-406 (2d Cir. 2004) (quoting <u>Landgraf</u>, 511 U.S. at 280) (discussing the <u>Landgraf</u> test).[7]

In <u>Enterprise</u>, the Second Circuit acknowledged the "special concerns" created by retroactive statutes, stating that "'congressional enactments ... will not be construed to have retroactive effect unless their language requires this result.'" <u>Enterprise</u>, 391 F.3d at 405 (quoting <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); other citations omitted). In reviewing whether the newly legislated statute of limitations for securities claims under Sarbanes-Oxley should be applied retroactively, the Court found that where plaintiff's claims had "expired" prior to the legislation, and there was no clear intent to "revive" stale claims, the newly expanded statute of limitations should not be applied retroactively. <u>Id.</u>, at 391 F.3d 408 ("[i]t also bears noting that the legislative history of Section 804 does not clearly indicate that Congress intended that Section 804 apply retroactively to revive expired securities fraud claims."). The Court continued on to note that since the

---

[7]In <u>Velez v. Sanchez</u>, 693 F.3d 308 (2d Cir. 2012), the Second Circuit applied the <u>Landgraf</u> test to determine that Congress did not intend to retroactively create a civil cause of action under the TVPRA, when the civil cause of action was created with the amendment in 2003. <u>Id.</u>, 693 F.3d at 324.

-12-

legislation did not expressly permit that it apply retroactively, it engaged in the analysis dictated by Landgraf to determine if the retroactive application would impair any rights. It concluded that it did. "In our view, the resurrection of previously time-barred claims has an impermissible retroactive effect. Extending the statute of limitations retroactively 'increase[s] [a defendant's] liability for past conduct,' by increasing the period of time during which a defendant can be sued. This effect is particularly prevalent in the context of claims that have already expired." Id., at 410 (quoting Landgraf, 511 U.S. at 280, 114 S.Ct. 1483). Thus, if a plaintiff's claim had expired before the statute of limitations was expanded, that claim could be not revived.

This is distinguishable from the present case. Here, Plaintiff's claim was not "stale," but "alive" at the time the newly expanded statute of limitations was enacted. Her claim accrued when she left the Malik's home in 2008, and therefore, under the then-existing four-year statute of limitation, she still had a live claim when the TVPRA was amended in 2008 to permit a ten-year statute.

In reviewing whether the amended statute of limitations of the TVPRA should apply, at least one court in this Circuit has ruled that since the plaintiff's claims were "live," meaning could still have been brought, at the time of the amendment, the amendment applied since it did not "impair" rights, or "revive" a claim that had died. Oluoch v. Orina, 101 F.Supp.3d 325, (S.D.N.Y. 2015). In Oluoch, the plaintiff's claims accrued in 2007, when she escaped the house where she allegedly was being held in involuntary servitude. Since "plaintiff's claims were still ... 'alive,' a year later" when the statute of limitations was expanded, "[h]olding defendant to this increased limitations period risks no retrospective effect because it does nothing to expand the legal consequences defendant already faced in 2008. Since the claims were still alive in 2008,

there is no impermissible retroactivity in applying the extended statute of limitations Congress adopted that year." Id., 101 F.Supp.3d at 330-331. Other courts in other circuits have similarly held. See Cruz v.Maypa, 773 F.3d 138, 146 (4th Cir. 2014) ("[w]e therefore hold that applying the TVPRA's extended limitations period to claims that were unexpired at the time of its enactment does not give rise to an impermissible retroactive effect under Landgraf"); Headley v. Church of Scientology Int'l, No. 09-CV-3987, 2009 U.S. Dist. LEXIS 131766, at *19 (C.D. Cal. August 12, 2009) (applying the amended limitations period of the TVPRA since plaintiff's claims "had not expired under the original four-year limitations period when the ten-year statute of limitations ... became effective"); Camayo v. John Peroulis & Sons Sheep, Inc., Nos. 10–772, 11–1132, 2013 WL 3927677, at *2 (D.Colo. July 30, 2013) (permitting the amended limitations since it "merely extended the time in which a plaintiff may assert claims for violations of already-existing rights"). But see Abarca v. Little, 54 F.Supp.3d 1064, 1068-69 (D.Minn. 2014) (did not apply extended statute of limitations retrospectively to claims that had not yet expired when the amendment was passed since that "would increase defendants' liability by exposing them to civil liability when their alleged conduct otherwise would be time-barred.").

In determining whether a new statute of limitations applies retroactively in other contexts, other courts in this Circuits have drawn a distinction between whether the claim at issue is "live" or "expired" at the time of the amendment. These courts have adopted the reasoning that the new statute of limitations will apply retrospectively if the claim was still "alive" at the time the statute was extended, but will not apply if that would revive expired claims. See Goodman v. City of New York, No. 10-CV-5236, 2011 WL 4469513, at *7 (S.D.N.Y. Sept. 26, 2011) (finding it expressly permitted, the court retroactively applied the amended statute, noting it should also

apply for the further reason that no rights would be impaired since it "merely extends the time in which a plaintiff may assert claims for violations of already-existing rights" and defendant could not assert a limitations defense at time of enactment); see also Tully v. County of Nassau, No. 11-CV-2633, 2012 WL 487007, at *11 ( E.D.N.Y. Feb. 14, 2012) (court drew distinction between applying an amended statute to claims that were "live" at the time of the amendment, versus those that were stale, and declined to apply an amendment retroactively to revive stale claims); Coleman & Co. Sec. v. Giaquinto Family Trust, 236 F. Supp. 2d 288, 305 (S.D.N.Y. 2002) (applying amended statute since claims were viable as of the date of the amendment, and therefore amendment does not revive stale claims); cf., Singleton v. Clash, 951 F. Supp. 2d 578, 591 (S.D.N.Y. 2013), aff'd sub nom. S.M. v. Clash, 558 F. App'x 44 (2d Cir. 2014) ("[w]hen claims have expired under an effective statute of limitations, an amendment extending the statute of limitations will not be applied retroactively to revive stale claims unless it is the clear intent of Congress to revive such claims.").

  The Court adopts this reasoning here. Plaintiff's claims were live when the amendment was enacted. Applying the Landgraf test, since the statute does not expressly state, the second prong examines whether applying the statute of limitations retroactively would "impair rights." The Court finds that since Plaintiff's claims were still alive at the time the amended statute of limitations was enacted, it does not impair any parties' rights to apply it retroactively, since it does not revive stale or expired claims. Therefore, the Court denies Defendants' motion seeking summary judgment on Plaintiff's claim under TVPRA on the grounds that it is time-barred.

## CONCLUSION

For the reasons stated above, the Court finds that equitable tolling does not apply to Plaintiff's claims. Plaintiff's FLSA and conversion claims are dismissed. Counsel are directed to provide the Court with three agreeable dates in October 2016 for the trial on Plaintiff's remaining claims.

SO ORDERED.

                                              s/ Leonard D.
                                        LEONARD D. WEXLER
                                        UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
         June 21, 2016